# EXHIBIT E

Case 8:20-cv-00195-CEH-AAS   Document 160-5   Filed 09/03/21   Page 2 of 14 PageID 2846

# Regulatory Notice 11-02

## Know Your Customer and Suitability

### SEC Approves Consolidated FINRA Rules Governing Know-Your-Customer and Suitability Obligations

**Effective Date: October 7, 2011**

#### Executive Summary

The SEC approved FINRA's proposal to adopt rules governing know-your-customer and suitability obligations[1] for the consolidated FINRA rulebook.[2] The new rules are based in part on and replace provisions in the NASD and NYSE rules.

The text of the new rules is set forth in Attachment A. The rules take effect on October 7, 2011.

Questions regarding this *Notice* should be directed to James S. Wrona, Associate Vice President and Associate General Counsel, Office of General Counsel, at (202) 728-8270.

#### Discussion

The know-your-customer and suitability obligations are critical to ensuring investor protection and promoting fair dealing with customers and ethical sales practices. As part of the process of developing the consolidated FINRA rulebook, FINRA proposed and the SEC approved FINRA Rule 2090 (Know Your Customer) and FINRA Rule 2111 (Suitability). The new rules retain the core features of these important obligations and at the same time strengthen, streamline and clarify them.[3] The new rules are discussed separately below.

---

**January 2011**

**Notice Type**
- Consolidated FINRA Rulebook
- Rule Approval

**Suggested Routing**
- Compliance
- Legal
- Senior Management

**Key Topics**
- Know Your Customer
- Suitability

**Referenced Rules & Notices**
- FINRA Rule 2090
- FINRA Rule 2111
- Information Notice 3/12/08
- NASD IM-2210-6
- NASD IM-2310-2
- NASD Rule 2310
- NASD Rule 3110
- NTM 01-23
- NYSE Rule 405
- SEA Rule 17a-3



## Know Your Customer

In general, new FINRA Rule 2090 (Know Your Customer) is modeled after former NYSE Rule 405(1) and requires firms to use "reasonable diligence,"[4] in regard to the opening and maintenance[5] of every account, to know the "essential facts" concerning every customer.[6] The rule explains that "essential facts" are "those required to (a) effectively service the customer's account, (b) act in accordance with any special handling instructions for the account, (c) understand the authority of each person acting on behalf of the customer, and (d) comply with applicable laws, regulations, and rules."[7] The know-your-customer obligation arises at the beginning of the customer-broker relationship and does not depend on whether the broker has made a recommendation. Unlike former NYSE Rule 405, the new rule does not specifically address orders, supervision or account opening—areas that are explicitly covered by other rules.

## Suitability

New FINRA Rule 2111 generally is modeled after former NASD Rule 2310 (Suitability) and requires that a firm or associated person "have a reasonable basis to believe that a recommended transaction or investment strategy involving a security or securities is suitable for the customer, based on the information obtained through the reasonable diligence of the member or associated person to ascertain the customer's investment profile."[8] The rule further explains that a "customer's investment profile includes, but is not limited to, the customer's age, other investments, financial situation and needs, tax status, investment objectives, investment experience, investment time horizon, liquidity needs, risk tolerance, and any other information the customer may disclose to the member or associated person in connection with such recommendation."[9]

The new rule continues to use a broker's "recommendation" as the triggering event for application of the rule and continues to apply a flexible "facts and circumstances" approach to determining what communications constitute such a recommendation. The new rule also applies to recommended investment strategies, clarifies the types of information that brokers must attempt to obtain and analyze, and discusses the three main suitability obligations. Finally, the new rule modifies the institutional-investor exemption in a number of important ways.

### Recommendations

The determination of the existence of a recommendation has always been based on the facts and circumstances of the particular case.[10] That remains true under the new rule. FINRA reiterates, however, that several guiding principles are relevant to determining whether a particular communication could be viewed as a recommendation for purposes of the suitability rule.

For instance, a communication's content, context and presentation are important aspects of the inquiry. The determination of whether a "recommendation" has been made, moreover, is an objective rather than subjective inquiry.[11] An important factor in this regard is whether—given its content, context and manner of presentation—a particular communication from a firm or associated person to a customer reasonably would be viewed as a suggestion that the customer take action or refrain from taking action regarding a security or investment strategy. In addition, the more individually tailored the communication is to a particular customer or customers about a specific security or investment strategy, the more likely the communication will be viewed as a recommendation. Furthermore, a series of actions that may not constitute recommendations when viewed individually may amount to a recommendation when considered in the aggregate. It also makes no difference whether the communication was initiated by a person or a computer software program. These guiding principles, together with numerous litigated decisions and the facts and circumstances of any particular case, inform the determination of whether the communication is a recommendation for purposes of FINRA's suitability rule.

### Strategies

The new rule explicitly applies to recommended investment strategies involving a security or securities.[12] The rule emphasizes that the term "strategy" should be interpreted broadly.[13] The rule is triggered when a firm or associated person recommends a security or strategy regardless of whether the recommendation results in a transaction. Among other things, the term "strategy" would capture a broker's *explicit* recommendation to hold a security or securities.[14] The rule recognizes that customers may rely on firms' and associated persons' investment expertise and knowledge, and it is thus appropriate to hold firms and associated persons responsible for the recommendations that they make to customers, regardless of whether those recommendations result in transactions or generate transaction-based compensation.

FINRA, however, exempted from the new rule's coverage certain categories of educational material—which the strategy language otherwise would cover—as long as such material does not include (standing alone or in combination with other communications) a recommendation of a particular security or securities.[15] FINRA believes that it is important to encourage firms and associated persons to freely provide educational material and services to customers.

### Customer's Investment Profile

The new rule includes an expanded list of explicit types of information that firms and associated persons must attempt to gather and analyze as part of a suitability analysis. The new rule essentially adds age, investment experience, time horizon, liquidity needs and risk tolerance[16] to the existing list (other holdings, financial situation and needs, tax status

and investment objectives).[17] Recognizing that not every factor regarding a "customer's investment profile" will be relevant to every recommendation, the rule provides flexibility concerning the type of information that firms must seek to obtain and analyze.[18] However, because the listed factors generally are relevant (and often crucial) to a suitability analysis, the rule requires firms and associated persons to document with specificity their reasonable basis for believing that a factor is not relevant in order to be relieved of the obligation to seek to obtain information about that factor.[19]

**Main Suitability Obligations**

The new suitability rule lists in one place the three main suitability obligations: reasonable-basis, customer-specific and quantitative suitability.[20]

- Reasonable-basis suitability requires a broker to have a reasonable basis to believe, based on reasonable diligence, that the recommendation is suitable for at least some investors. In general, what constitutes reasonable diligence will vary depending on, among other things, the complexity of and risks associated with the security or investment strategy and the firm's or associated person's familiarity with the security or investment strategy. A firm's or associated person's reasonable diligence must provide the firm or associated person with an understanding of the potential risks and rewards associated with the recommended security or strategy.

- Customer-specific suitability requires that a broker have a reasonable basis to believe that the recommendation is suitable for a particular customer based on that customer's investment profile. As noted above, the new rule requires a broker to attempt to obtain and analyze a broad array of customer-specific factors.

- Quantitative suitability requires a broker who has actual or de facto control over a customer account to have a reasonable basis for believing that a series of recommended transactions, even if suitable when viewed in isolation, are not excessive and unsuitable for the customer when taken together in light of the customer's investment profile. Factors such as turnover rate, cost-equity ratio and use of in-and-out trading in a customer's account may provide a basis for finding that the activity at issue was excessive.

The new rule makes clear that a broker must have a firm understanding of both the product and the customer.[21] It also makes clear that the lack of such an understanding itself violates the suitability rule.[22]

**Institutional-Investor Exemption**

FINRA Rule 2111(b) provides an exemption to customer-specific suitability for recommendations to institutional customers under certain circumstances. The new exemption harmonizes the definition of institutional customer in the suitability rule

with the more common definition of "institutional account" in NASD Rule 3110(c)(4).[23] Beyond the definitional requirements, the exemption's main focus is whether the broker has a reasonable basis to believe the customer is capable of evaluating investment risks independently, both in general and with regard to particular transactions and investment strategies,[24] and whether the institutional customer affirmatively acknowledges that it is exercising independent judgment.[25]

In regard to an institutional investor, a firm that satisfies the conditions of the exemption fulfils its customer-specific obligation,[26] but not its reasonable-basis and quantitative obligations under the suitability rule. FINRA believes that, even when institutional customers are involved, it is crucial that brokers understand the securities they recommend and that those securities are appropriate for at least some investors. FINRA also believes that it is important that a firm not recommend an unsuitable number of transactions in those circumstances where it has control over the account. FINRA emphasizes, however, that quantitative suitability generally would apply only with regard to that portion of an institutional customer's portfolio that the firm controls and only with regard to the firm's recommended transactions.[27]

# Endnotes

1. *See* Securities Exchange Act Release No. 63325 (November 17, 2010), 75 FR 71479 (November 23, 2010) (Order Approving Proposed Rule Change; File No. SR-FINRA-2010-039).

2. The current FINRA rulebook consists of (1) FINRA rules; (2) NASD rules; and (3) rules incorporated from NYSE (NYSE rules). While the NASD rules generally apply to all FINRA member firms, the NYSE rules apply only to those members of FINRA that are also members of the NYSE. The FINRA rules apply to all FINRA member firms, unless such rules have a more limited application by their terms. For more information about the rulebook consolidation process, *see Information Notice, 3/12/08* (Rulebook Consolidation Process).

3. To the extent that past *Notices to Members, Regulatory Notices*, case law, etc., do not conflict with new rule requirements or interpretations thereof, they remain potentially applicable, depending on the facts and circumstances of the particular case.

4. FINRA notes that it replaced the term "due diligence" used in former NYSE Rule 405(1) with the term "reasonable diligence" in new FINRA Rule 2090 for consistency with the language used in new FINRA Rule 2111. FINRA did not intend by such action to impair or adversely affect established case law and other interpretations discussing the diligence that is required to comply with know-your-customer or suitability obligations.

5. A broker-dealer must know its customers not only at account opening but also throughout the life of its relationship with customers in order to, among other things, effectively service and supervise the customers' accounts. Since a broker-dealer's relationship with its customers is dynamic, FINRA does not believe that it can prescribe a period within which broker-dealers must attempt to update this information. As with a customer's investment profile under the suitability rule, a firm should verify the "essential facts" about a customer under the know-your-customer rule at intervals reasonably calculated to prevent and detect any mishandling of a customer's account that might result from the customer's change in circumstances. The reasonableness of a broker-dealer's efforts in this regard will depend on the facts and circumstances of the particular case. Firms should note, however, that SEA Rule 17a-3 requires broker-dealers to, among other things, attempt to update certain account information every 36 months regarding accounts for which the broker-dealers were required to make suitability determinations.

6. FINRA Rule 2090.

7. FINRA Rule 2090.01.

8. FINRA Rule 2111(a). Former NASD Rule 2310 contained interpretative material (IMs) discussing a variety of types of misconduct. Although FINRA eliminated those IMs, most of the types of misconduct that the IMs discussed were either explicitly covered by other rules or incorporated in some form into the new suitability rule. The exception was unauthorized trading, which had been discussed in IM-2310-2. However, it is well-settled that unauthorized trading violates just and equitable principles of trade under FINRA Rule 2010 (previously NASD Rule 2110). *See, e.g., Robert L. Gardner*, 52 S.E.C. 343, 344 n.1 (1995), *aff'd*, 89 F.3d 845 (9th Cir. 1996) (table format); *Keith L. DeSanto*, 52 S.E.C. 316, 317 n.1 (1995), *aff'd*, 101 F.3d 108 (2d Cir. 1996) (table format); Jonathan G. Ornstein, 51 S.E.C. 135, 137 (1992); *Dep't of Enforcement v. Griffith*, No. C01040025, 2006 NASD Discip. LEXIS 30, at *11-12 (NAC December 29, 2006); *Dep't of Enforcement v. Puma*, No. C10000122, 2003

© 2011 FINRA. All rights reserved. FINRA and other trademarks of the Financial Industry Regulatory Authority, Inc. may not be used without permission. *Regulatory Notices* attempt to present information to readers in a format that is easily understandable. However, please be aware that, in case of any misunderstanding, the rule language prevails.

## Endnotes continued

NASD Discip. LEXIS 22, at *12 n.6 (NAC August 11, 2003). The new suitability rule does not alter that conclusion. Unauthorized trading continues to be serious misconduct that violates FINRA Rule 2010.

9    FINRA Rule 2111(a).

10   *See Michael Frederick Siegel*, Securities Exchange Act Release No. 58737, 2008 SEC LEXIS 2459, at *21 (October 6, 2008) (explaining that whether a communication "constitutes a recommendation is a 'facts and circumstances inquiry to be conducted on a case-by-case basis'"), *aff'd in relevant part*, 592 F.3d 147 (D.C. Cir. 2010), *cert. denied*, 2010 U.S. LEXIS 4340 (May 24, 2010). FINRA has stated that "defining the term 'recommendation' is unnecessary and would raise many complex issues in the absence of specific facts of a particular case." Securities Exchange Act Release No. 37588, 1996 SEC LEXIS 2285, at *29 (August 20, 1996), 61 FR 44100, 44107 (August 27, 1996) (Notice of Filing and Order Granting Accelerated Approval of NASD's Interpretation of Its Suitability Rule).

11   FINRA has repeatedly explained that a broker cannot avoid suitability obligations through a disclaimer where—given its content, context and presentation—the particular communication reasonably would be viewed as a recommendation. *See Notice to Members 01-23* (April 2001). FINRA Rule 2111.02, moreover, explicitly states that a firm or associated person "cannot disclaim any responsibilities under the suitability rule." In the same vein, it is well-settled that a "broker's recommendations must be consistent with his customer's best interests" and are "not suitable merely because the customer acquiesces in [them]." *Dane S. Faber*, Securities Exchange Act Release No. 49216, 2004 SEC LEXIS 277, at *23-24 (February 10, 2004); *see also Dep't of Enforcement v. Bendetsen*, No. C01020025, 2004 NASD Discip. LEXIS 13, at *12 (NAC August 9, 2004) ("[A] broker's recommendations must serve his client's best interests and the test for whether a broker's recommendations are suitable is not whether the client acquiesced in them, but whether the broker's recommendations were consistent with the client's financial situation and needs").

12   *See* FINRA Rules 2111(a) and 2111.03.

13   *Id.*

14   *Id.* The new rule does not, however, broaden the scope of *implicit* recommendations. In limited circumstances, FINRA and the SEC have recognized that implicit recommendations can trigger suitability obligations. For example, FINRA and the SEC have held that associated persons who effect transactions on a customer's behalf without informing the customer have implicitly recommended those transactions, thereby triggering application of the suitability rule. *See, e.g., Rafael Pinchas*, 54 S.E.C. 331, 341 n.22 (1999) ("Transactions that were not specifically authorized by a client but were executed on the client's behalf are considered to have been implicitly recommended within the meaning of the NASD rules."); *Paul C. Kettler*, 51 S.E.C. 30, 32 n.11 (1992) (stating that transactions a broker effects for a discretionary account are recommended). Although such holdings continue to act as precedent regarding those issues, FINRA notes that nothing in the new rule is intended to change the longstanding application of the suitability rule on a recommendation-by-recommendation basis. The new rule would not apply, for instance, to *implicit* recommendations to hold securities that are transferred into an account.

15   *See* FINRA Rule 2111.03.

## Endnotes continued

16. During the rulemaking process, some commenters argued that factors such as a customer's investment experience, time horizon and risk tolerance are ones to be considered when reviewing a customer's portfolio as a whole, not the individual trades. According to those commenters, requiring consideration of such factors on a trade-by-trade basis would prevent customers from creating a diverse portfolio made up of securities with different levels of liquidity, risk and time horizons. FINRA reiterates that a recommendation-by-recommendation analysis and consideration of a customer's investment portfolio are not mutually exclusive concepts. Although suitability is a recommendation-by-recommendation analysis, FINRA Rule 2111 explicitly permits the suitability analysis to be performed within the context of the customer's other investments. In fact, the rule requires (as did the previous suitability rule) firms and associated persons to make reasonable efforts to gather and analyze information about a customer's other investments as part of the suitability review. Moreover, the new rule explicitly covers recommended investment strategies.

17. *See* FINRA Rule 2111(a).

18. *See* FINRA Rule 2111.04.

19. *Id.*

20. *See* FINRA Rule 2111.05.

21. *See* FINRA Rule 2111(a); FINRA Rule 2111.04; FINRA Rule 2111.05(a).

22. *See* FINRA Rules 2111.04 and 2111.05(a).

23. *See* FINRA Rule 2111(b). FINRA is proposing to adopt NASD Rule 3110(c)(4) as FINRA Rule 4512(c), without material change. *See* Securities Exchange Act Release No. 63181 (October 26, 2010), 75 FR 67155 (November 1, 2010) (Notice of Filing Proposed Rule Change; File No. SR-FINRA-2010-052).

24. *See* FINRA Rule 2111(b). FINRA reiterates that, in some cases, the broker may conclude that the customer is not capable of making independent investment decisions in general. In other cases, the institutional customer may have general capability, but may not be able to understand a particular type of instrument or its risk. If a customer is either generally not capable of evaluating investment risk or lacks sufficient capability to evaluate the particular product, the scope of a broker's customer-specific obligations under the suitability rule would not be diminished by the fact that the broker was dealing with an institutional customer. However, the fact that a customer initially needed help understanding a potential investment need not necessarily imply that the customer did not ultimately develop an understanding and make an independent decision.

25. FINRA Rule 2111(b).

26. FINRA emphasizes that the institutional-customer exemption applies only if all of the conditions in Rule 2111(b) are satisfied. It is not sufficient, for example, that an institutional customer affirmatively indicates that it is exercising independent judgment in evaluating recommendations. The institutional customer also must meet the definitional criteria and the broker must have a reasonable basis to believe that the institutional customer is capable of evaluating investment risks independently, both in general and with regard to particular transactions and investment strategies.

27. It is axiomatic that the suitability rule applies only to recommended transactions. *See, e.g., Dep't*

## Endnotes continued

of *Enforcement v. Medeck*, No. E9B2003033701, 2009 FINRA Discip. LEXIS 7, at *46 (July 30, 2009) (explaining that transactions that were not recommended could not be used to inflate the cost-to-equity ratio and the turnover rate). Case law also has long established that quantitative suitability "occurs when a registered representative has control over trading in an account and the level of activity in that account is inconsistent with the customer's objectives and financial situation." *Harry Gliksman*, 54 S.E.C. 471, 475 (1999), *aff'd*, 24 F. App'x 702 (9th Cir. 2001); *see also Pinchas*, 54 S.E.C. at 337 (same). In general, the control element "is satisfied if the broker has either discretionary authority or de facto control over the account. De facto control is established when the client routinely follows the broker's advice 'because the customer is unable to evaluate the broker's recommendations and to exercise independent judgment.'" *Medeck*, 2009 FINRA Discip. LEXIS 7, at *34 (citations omitted).

In *Pryor, McClendon, Counts & Co.*, Securities Exchange Act Release No. 45402, 2002 SEC LEXIS 284 (February 6, 2002), the SEC analyzed allegations of churning by focusing on that portion of the city of Atlanta's portfolio that the broker-dealer respondent controlled and those transactions that the respondent recommended. *Id.* at *4, *15-16, *20-23. The SEC also held that, for purposes of churning, the respondent controlled the portion of Atlanta's portfolio at issue because the respondent engaged in a scheme to defraud Atlanta with the city's investment officer, who had authority to trade Atlanta's securities portfolio. *Id.* at *20-21 & n.10 (citing *Smith v. Petrou*, 705 F. Supp. 183, 187 (S.D.N.Y. 1989)).

## Attachment A

Below is the text of the new FINRA rules.

\* \* \* \* \*

### 2000. DUTIES AND CONFLICTS

\* \* \* \* \*

### 2090. Know Your Customer

Every member shall use reasonable diligence, in regard to the opening and maintenance of every account, to know (and retain) the essential facts concerning every customer and concerning the authority of each person acting on behalf of such customer.

• • • **Supplementary Material:** ------------------

**.01 Essential Facts.** For purposes of this Rule, facts "essential" to "knowing the customer" are those required to (a) effectively service the customer's account, (b) act in accordance with any special handling instructions for the account, (c) understand the authority of each person acting on behalf of the customer, and (d) comply with applicable laws, regulations, and rules.

\* \* \* \* \*

### 2100. TRANSACTIONS WITH CUSTOMERS

### 2110. Recommendations

### 2111. Suitability

(a) A member or an associated person must have a reasonable basis to believe that a recommended transaction or investment strategy involving a security or securities is suitable for the customer, based on the information obtained through the reasonable diligence of the member or associated person to ascertain the customer's investment profile. A customer's investment profile includes, but is not limited to, the customer's age, other investments, financial situation and needs, tax status, investment objectives, investment experience, investment time horizon, liquidity needs, risk tolerance, and any other information the customer may disclose to the member or associated person in connection with such recommendation.

(b) A member or associated person fulfills the customer-specific suitability obligation for an institutional account, as defined in NASD Rule 3110(c)(4), if (1) the member or associated person has a reasonable basis to believe that the institutional customer is capable of evaluating investment risks independently, both in general and with regard to particular transactions and investment strategies involving a security or securities and (2) the institutional customer affirmatively indicates that it is exercising independent judgment in evaluating the member's or associated person's recommendations. Where an institutional customer has delegated decisionmaking authority to an agent, such as an investment adviser or a bank trust department, these factors shall be applied to the agent.

• • • **Supplementary Material:** ------------------

**.01 General Principles.** Implicit in all member and associated person relationships with customers and others is the fundamental responsibility for fair dealing. Sales efforts must therefore be undertaken only on a basis that can be judged as being within the ethical standards of FINRA's rules, with particular emphasis on the requirement to deal fairly with the public. The suitability rule is fundamental to fair dealing and is intended to promote ethical sales practices and high standards of professional conduct.

**.02 Disclaimers.** A member or associated person cannot disclaim any responsibilities under the suitability rule.

**.03 Recommended Strategies.** The phrase "investment strategy involving a security or securities" used in this Rule is to be interpreted broadly and would include, among other things, an explicit recommendation to hold a security or securities. However, the following communications are excluded from the coverage of Rule 2111 as long as they do not include (standing alone or in combination with other communications) a recommendation of a particular security or securities:

(a) General financial and investment information, including (i) basic investment concepts, such as risk and return, diversification, dollar cost averaging, compounded return, and tax deferred investment, (ii) historic differences in the return of asset classes (e.g., equities, bonds, or cash) based on standard market indices, (iii) effects of inflation, (iv) estimates of future retirement income needs, and (v) assessment of a customer's investment profile;

(b) Descriptive information about an employer-sponsored retirement or benefit plan, participation in the plan, the benefits of plan participation, and the investment options available under the plan;

(c) Asset allocation models that are (i) based on generally accepted investment theory, (ii) accompanied by disclosures of all material facts and assumptions that may affect a reasonable investor's assessment of the asset allocation model or any report generated by such model, and (iii) in compliance with NASD IM-2210-6 (Requirements for the Use of Investment Analysis Tools) if the asset allocation model is an "investment analysis tool" covered by NASD IM-2210-6; and

(d) Interactive investment materials that incorporate the above.

**.04 Customer's Investment Profile.** A member or associated person shall make a recommendation covered by this Rule only if, among other things, the member or associated person has sufficient information about the customer to have a reasonable basis to believe that the recommendation is suitable for that customer. The factors delineated in Rule 2111(a) regarding a customer's investment profile generally are relevant to a determination regarding whether a recommendation is suitable for a particular customer, although the level of importance of each factor may vary depending on the facts and circumstances of the particular case. A member or associated person shall use reasonable diligence to obtain and analyze all of the factors delineated in Rule 2111(a) unless the member or associated person has a reasonable basis to believe, documented with specificity, that one or more of the factors are not relevant components of a customer's investment profile in light of the facts and circumstances of the particular case.

**.05 Components of Suitability Obligations.** Rule 2111 is composed of three main obligations: reasonable-basis suitability, customer-specific suitability, and quantitative suitability.

(a) The reasonable-basis obligation requires a member or associated person to have a reasonable basis to believe, based on reasonable diligence, that the recommendation is suitable for at least some investors. In general, what constitutes reasonable diligence will vary depending on, among other things, the complexity of and risks associated with the security or investment strategy and the member's or associated person's familiarity with the security or investment strategy. A member's or associated person's reasonable diligence must provide the member or associated person with an understanding of the potential risks and rewards associated with the recommended security or strategy. The lack of such an understanding when recommending a security or strategy violates the suitability rule.

(b) The customer-specific obligation requires that a member or associated person have a reasonable basis to believe that the recommendation is suitable for a particular customer based on that customer's investment profile, as delineated in Rule 2111(a).

(c) Quantitative suitability requires a member or associated person who has actual or de facto control over a customer account to have a reasonable basis for believing that a series of recommended transactions, even if suitable when viewed in isolation, are not excessive and unsuitable for the customer when taken together in light of the customer's investment profile, as delineated in Rule 2111(a). No single test defines excessive activity, but factors such as the turnover rate, the cost-equity ratio, and the use of in-and-out trading in a customer's account may provide a basis for a finding that a member or associated person has violated the quantitative suitability obligation.

**.06 Customer's Financial Ability.** Rule 2111 prohibits a member or associated person from recommending a transaction or investment strategy involving a security or securities or the continuing purchase of a security or securities or use of an investment strategy involving a security or securities unless the member or associated person has a reasonable basis to believe that the customer has the financial ability to meet such a commitment.

**.07 Institutional Investor Exemption.** Rule 2111(b) provides an exemption to customer-specific suitability regarding institutional investors if the conditions delineated in that paragraph are satisfied. With respect to having to indicate affirmatively that it is exercising independent judgment in evaluating the member's or associated person's recommendations, an institutional customer may indicate that it is exercising independent judgment on a trade-by-trade basis, on an asset-class-by-asset-class basis, or in terms of all potential transactions for its account.

\* \* \* \* \*