# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

KIMBERLY NGUYEN, on behalf of
herself and all others similarly situated,

      Plaintiff,

v.                                  Case No. 8:20-cv-195-CEH-AAS

RAYMOND JAMES & ASSOCIATES, INC.,

      Defendant.

_____/

**DECLARATION OF DAX A. SEALE**

Pursuant to 28 U.S.C. § 1746, the undersigned declares as follows:

1.      My name is Dax A. Seale and I am currently a financial advisor with Raymond James & Associates, Inc. ("RJA" or "Raymond James"). I am over 18 years of age and have personal knowledge of the statements made in this declaration.

2.      I reside in Dallas, Texas. I graduated from the University of Texas in 1996 with a degree in economics. In 2009, I joined Edward Jones to pursue a career as a financial advisor. I hold a Series 7 securities license and Series 63 license, and I am also licensed to sell certain insurance products in Texas. I am a Certified Financial Planner (CFP), Chartered Life Underwriter (CLU), and Accredited Asset Management Specialist (AAMS).

3.      I am familiar with Kimberly Nguyen, the Plaintiff in this action ("Ms. Nguyen" or "Plaintiff"). For several years after her husband passed away in December 2014, I served as financial advisor for Ms. Nguyen.

4.      While at Edward Jones, in or around 2011, I became the financial advisor for the Plaintiff's husband, Richard Le.  I had only a professional relationship with Mr. Le, not a social relationship.

5.      While I was financial advisor for Mr. Le at Edward Jones, he may have held one or more accounts jointly with his wife, but Mr. Le made all the investment decisions with respect to all of the Edward Jones accounts that he and/or his wife held.

6.      Mr. Le became afflicted with ALS and ultimately passed away in or around December of 2014.  For a year or so before his death, his wife needed to speak for him over the phone because his voice was weak.  I would have phone conversations with Mr. Le and Ms. Nguyen together on the phone in which Ms. Nguyen would essentially serve as a go-between, repeating to me what Mr. Le was communicating and wanted done with their accounts.   Ms. Nguyen did not begin making any investment decisions until after her husband passed away.

7.      To my knowledge, Ms. Nguyen had never been the decision-maker on any investment accounts prior to her husband's death.

8.      After her husband's death, Ms. Nguyen decided to roll over her husband's 401(k) account on which she was the beneficiary into a beneficiary IRA.  I performed a suitability analysis and discussed with Ms. Nguyen the Edward Jones IRA Advisory Solutions account, which was a managed account.  We discussed the annual asset-based fees charged, and how a managed account worked, including that the assets would be selected, monitored, and rebalanced by Edward Jones, and she would not be required to select any specific securities or make rebalancing or trading

2

decisions.  Ms. Nguyen understood and agreed that the managed Advisory Solutions IRA account at Edward Jones made sense for her, and she opened it with roll over funds from her husband's 401(k) account.

**Plaintiff Moves Her Accounts to RJA**

9.     In or around July of 2015, I moved from Edward Jones and became a financial advisor at Raymond James.

10.    As a financial advisor at Raymond James, my role would include talking to my clients and becoming familiar with my clients' financial situation, understanding the different options and investment solutions offered by RJA, doing a suitability analysis, and helping my clients decide which investment options made sense and were consistent with their financial goals and risk tolerance.  I would also provide financial planning services to my clients who had managed accounts as a value added benefit.

11.    In or around July of 2015, I contacted Ms. Nguyen to let her know that I had left Edward Jones for Raymond James.

12.    Ms. Nguyen asked me for my contact information, told me that she wanted to move her accounts to Raymond James, and sent me her most recent Edward Jones account statements dated June 26, 2015.[1]  At that time, Ms. Nguyen had four accounts at Edward Jones: (1) a beneficiary IRA Advisory Solutions managed account, (2) a 529 college savings account for one of her two children, (3) a variable

---

[1] A copy of the June 26, 2015 Edward Jones statements that Ms. Nguyen sent me are attached to this declaration as Exhibit 1.

universal life insurance policy, and (4) a commission-based brokerage account containing some bonds and mutual funds purchased by her husband.

13.     As noted, Ms. Nguyen decided to move her accounts to Raymond James so she could continue to work with me as her financial advisor.

14.     On or about July 22, 2015, Ms. Nguyen opened a Freedom Account at Raymond James to replace her Edward Jones beneficiary IRA Advisory Solutions account (the "2015 Freedom Account") and transferred assets from that IRA at Edward Jones to fund the purchase of securities in this 2015 Freedom Account.  I fully explained the Freedom Account and Freedom investment program to Ms. Nguyen, the annual asset-based fees charged, and the benefits of the account, and I performed a suitability analysis to ensure that the 2015 Freedom Account was suitable for Ms. Nguyen and concluded that it was.  She agreed as well and opened the 2015 Freedom Account.

15.     In 2015, Ms. Nguyen also transferred her other three accounts from Edward Jones to RJA, consisting of a 529 college savings account, a life insurance account, and the commission-based brokerage account that contained a bond and mutual funds purchased by her husband (the "Commission Account").  Before she transferred any of her assets into RJA accounts, I performed a suitability analysis and concluded that the accounts were suitable in light of Ms. Nguyen's specific investment needs, account type, goals, and objectives, consistent with RJA's internal policies addressing suitability.

4

**Plaintiff's 2016 Freedom Account and Suitability Analysis**

16.    In December of 2015, I prepared a Financial Plan for Ms. Nguyen and discussed it with her (the "Financial Plan").[2]  The Financial Plan is also known as a GPM (Goal Planning & Monitoring) Plan.  Ms. Nguyen's Financial Plan incorporated information regarding her financial goals, time frame for meeting those goals, her need for diversification, net worth, income, a detailed review of her current investment assets and other assets, insurance policies, anticipated social security benefits, risk assessment, projections of possible investment results, and probabilities of success.

17.    During our financial planning discussions at this time, we discussed the issue of rebalancing in the Commission Account, which contained American Funds mutual funds, Lord Abbett mutual funds, and a tax-free municipal bond.  Before Mr. Le passed away, he would rebalance the account holding these securities with new money that he would use to add to the existing A-share mutual fund holdings in order to rebalance the account.  After Mr. Le passed away, however, Ms. Nguyen was not generating enough cash flow to add to the account to rebalance without making any sells.  Ms. Nguyen and I discussed various options, including keeping the assets within the two existing fund companies (American and Lord Abbett A-shares) and manually rebalancing (*i.e.*, selling existing shares of mutual funds whose percentage of the account had grown too much and using the proceeds to buy additional shares of the mutual funds whose percentage had fallen too much, to be in line with her risk

---

[2] A copy of the Financial Plan is attached to this declaration as Exhibit 2.

tolerance).   We also discussed moving to a more diversified and managed program where the decision-making was handled by professional investment managers, by investing in the Freedom program through a new Freedom Account, in a Hybrid strategy.

18.     I analyzed the suitability of various options for the Commission Account. The Commission Account itself, which had been opened by Ms. Nguyen's husband as a self-directed account for himself and his risk tolerance, was no longer a good fit for Ms. Nguyen and her risk tolerance.  I concluded that a better option for Ms. Nguyen, and one that was certainly suitable, was to sell the mutual funds in the Commission Account and use the proceeds to fund a Freedom Account with a Hybrid strategy.  I considered Ms. Nguyen's specific investment needs, appropriate account type, costs, her goals and investment objectives, and time line.  I also considered other factors such as her risk tolerance, net worth, annual income, age, other investments held outside Raymond James, limited investment experience and inability to make investment decisions, liquidity needs, and tax considerations.  I felt that I had a full understanding of her financial situation and goals, having recently completed her Financial Plan.

19.     In January of 2016, Ms. Nguyen was familiar with the Freedom Account platform, its fee structure, and how it functioned and was managed, as she had opened the 2015 Freedom Account for her beneficiary IRA in July of 2015.  Nevertheless, prior to opening the 2016 Freedom Account, we discussed again the structure, costs, and benefits of the Freedom Account, including that the Freedom program was professionally managed by an investment committee.  We reviewed how the Freedom

Hybrid platform utilized several different money managers and included both active and passive investments to further reduce portfolio risk.  We discussed the tradeoffs of active and passive funds as well as the underlying cost of each as Ms. Nguyen was very cost conscious.   We also discussed additional benefits of the Freedom Account including professional account oversight, selection of securities, monitoring of risk, determining and monitoring asset allocation, periodic rebalancing consistent with investment strategy, due diligence regarding funds and fund managers, and the overall benefit from the fact that RJA, through its AMS division, assumes all investment duties and exercises sole investment authority over the assets in the account, so Ms. Nguyen would not have to make decisions to buy or sell any specific securities.

20.     I also discussed with Ms. Nguyen the fact that if she opened a Freedom Account with assets from the Commission Account, she would incur a tax loss that she could use against future gains.  This is a widely used strategy known as tax loss harvesting.  We also discussed the annual fee for the Freedom Account, which she was already aware of due to her existing 2015 Freedom Account, and she agreed to the fee.

21.     After several weeks of her own due diligence and research, Ms. Nguyen decided to move forward with selling all assets in her Commission Account, except her tax exempt bond, and using those funds to open her 2016 Freedom Account.[3]  On

---

[3] When opening the 2016 Freedom Account, the bond that Ms. Nguyen had wanted to keep was accidentally sold.  Ms. Nguyen was upset and wanted the bond back.  RJA

or about January 29, 2016, she opened the 2016 Freedom Account. She seemed very satisfied with the decision and recognized that the Freedom Account would relieve her of the anxiety of worrying about having to make trading decisions, including rebalancing her account.

22.     The suitability review that I did in connection with Ms. Nguyen's 2016 Freedom Account was consistent with RJA's internal policies, which required that financial advisors perform a suitability analysis prior to recommending that a client invest in a Freedom Account. I have never recommended a Freedom Account for any client without first doing a suitability analysis and having a complete discussion with the client around costs, features, and benefits of the Freedom program. Additionally, I have never opened a Freedom Account for a client without having the client instruct me to do so.

23.     I spent a lot of time talking to Ms. Nguyen, more than a typical client, to ensure that all her questions were answered. She tended to ask a lot of questions and took a long time to make decisions, and in many cases she simply could not make a decision. She suffered from what I would call "analysis paralysis." I thought the 2016 Freedom Account was a perfect fit for her in part because the management of the account would be done by a professional investment committee and she would not need to make rebalancing or other investment decisions with respect to assets in the

---

rectified the situation by repurchasing the same bond for her and absorbed a loss to do so.

account.   Before opening the 2016 Freedom Account, we both agreed it was appropriate and suitable.

### Agreements and Suitability Documentation

24.   In order to open the 2016 Freedom Account, Ms. Nguyen needed to enter into two agreements with RJA, both of which required suitability information.   I collected the suitability information set forth in the "Account Suitability" section of the Account Information and Client Agreement (the "Client Agreement") that Ms. Nguyen signed on January 29, 2016.[4]  This section of the Client Agreement requires information such as annual income, net worth, investment experience with equities, bonds, options/futures, mutual funds, annuities, and margin trading, primary investment objective and risk tolerance, secondary investment objective and risk tolerance, and primary and secondary time horizons.

25.   In order to open the 2016 Freedom Account, Ms. Nguyen also entered into and signed on January 29, 2016 a Freedom Investment Management Agreement (the "Freedom Agreement").[5]  I collected the information necessary to complete the Freedom Agreement, which also included suitability information such as annual income, net worth, investment experience with different types of investments (equities, bonds, options/futures, mutual funds, annuities, and margin trading), primary investment objective and risk tolerance, secondary investment objective and risk

---

[4] A copy of the Client Agreement is attached hereto as Exhibit 3.

[5] A copy of the Freedom Agreement is attached hereto as Exhibit 4.

tolerance, primary and secondary time horizons, and whether any significant withdrawals would be anticipated in the next 1-3 years.

26.     In the Freedom Agreement, Ms. Nguyen stated that her primary objective was growth with a medium risk tolerance, and she instructed that the Freedom Account be funded by securities from the Commission Account.  She also selected "Balanced with Growth (Hybrid)" as her investment Strategy for the Freedom Account.

27.     RJA's compliance policies and procedures require that a financial advisor conduct a suitability analysis prior to recommending a Freedom Account to a client. RJA's compliance policies provide that the financial advisor has the primary responsibility for ensuring that investment management account products are suitable for a client's financial situation.  As part of RJA's procedures, both the Client Agreement and Freedom Agreement must be signed by the Branch Manager, who also is charged with a second level review of suitability.

28.     The Client Agreement, Freedom Agreement, and Financial Plan are all documentation showing that the necessary information for a suitability review was collected and completed in connection with the 2016 Freedom Account opened by Ms. Nguyen.  No other documentation was required.

29.     Beginning with the December 2015 Financial Plan, I conducted a review of Ms. Nguyen's financial situation at least annually.  Based on my review, I typically compiled an annual summary of relevant information in a document titled "Kim's Financial Plan," which I personally reviewed with Ms. Nguyen each year.  I used this

10

global review of Ms. Nguyen's portfolio, among other information I received from Ms. Nguyen and from reviewing her accounts, to assess the ongoing suitability of each of her RJA accounts regularly from July of 2015 through 2018.

30.     Between our annual meetings, I contacted Ms. Nguyen from time to time to check in regarding her ongoing objectives and the performance of her investments.

31.     I believed that the strategy of opening a Freedom Account was well-suited for Ms. Nguyen's financial situation in January of 2016, offering significant diversification among different professionally-selected mutual funds in a portfolio that was monitored and rebalanced as necessary.  I maintained that belief throughout the time Ms. Nguyen held her 2016 Freedom Account with RJA.  Even in hindsight, my assessment has not changed.  Ms. Nguyen's 2016 Freedom Account was a suitable, fee-based platform that offered a cost-effective approach to active management, geared toward her financial goals, and was particularly appropriate for her given her lack of investment experience and inability to make decisions at the time.

32.     I understand that claims are being made in this lawsuit that the 2016 Freedom Account was not suitable for Ms. Nguyen because there was low trading activity in her Commission Account.  If this is the claim, it makes no sense.  Just the opposite is true.  Given her facts and circumstances as I explained above, the fact that there was low trading in Ms. Nguyen's Commission Account was an indicator of the reasons why the Commission Account was not a good fit, and the Freedom Account was an excellent fit and was perfectly suitable.  There was low trading in the Commission Account because she had virtually no investment experience, she could

11

not make decisions, and she did not have new money to rebalance or diversify the account.

**Plaintiff's Objectives Change**

33.     In 2018, Ms. Nguyen emailed me with questions about the total fees paid for the Freedom Account.  She began expressing to me that she had gained enough investment experience over the prior three years that she could select and manage investments on her own.  She asked if she could remove the existing assets from the Freedom Account and eliminate the annual fee of approximately 1.3%.  Ultimately, when it appeared that her objectives had changed, that she was no longer interested in professional management, but was simply looking for a way to hold securities at the cheapest cost, I advised her that the cheapest option would likely be to move the assets to Ameritrade or a similar firm where she could manage the securities herself in an arrangement where she would be charged for her buys and sells.  In October of 2018, Ms. Nguyen decided to move the assets in her Freedom Accounts to a self-directed account at Vanguard.

34.     Ms. Nguyen later made a complaint against me.   Other than Ms. Nguyen, I have not had any other client complaints made against me, and I have never had anyone complain that I had failed to do an appropriate suitability analysis.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 19, 2021.

_____
DAX A. SEALE

# EXHIBIT 1

# Edward Jones
## MAKING SENSE OF INVESTING

Account Holder(s) Richard V Le
Account Number XXX-XXXXX28-1-5
**Custodian** Edward Jones Trust Company for your Traditional IRA
**Financial Advisor** Dax A. Seale, 214-750-3672
9400 N Central Expressway, Suite 1309, Dallas, TX 75231

**Statement Date** May 30 - Jun 26, 2015

Page 1 of 3

## Edward Jones Trust Company for your Traditional IRA
Edward Jones Trust Co As Cust
FBO Richard V Le    IRA
C/O Kimberly Nguyen

## Happy Fourth of July
Between the backyard barbecues and firework displays this Independence Day, we hope you'll take a moment to reflect on our great nation. After nearly 240 years, the United States remains a symbol of freedom throughout the world. We salute all those who fought for this freedom and those who serve in the U.S. Armed Forces. Happy Independence Day!

## Account Value

# $471,678.29

| | |
|---|---|
| 1 Month Ago | $0.00 |
| 1 Year Ago | $0.00 |
| 3 Years Ago | $0.00 |
| 5 Years Ago | $0.00 |

## Value Summary

| | This Period | This Year |
|---|---|---|
| Beginning value | $0.00 | $0.00 |
| Assets added to account | 472,618.27 | 472,618.27 |
| Income | 1,051.84 | 1,051.84 |
| Assets withdrawn from account | 0.00 | 0.00 |
| Fees and charges | 0.00 | 0.00 |
| Change in value | -1,991.82 | -1,991.82 |
| **Ending Value** | **$471,678.29** | |

## Asset Details (as of Jun 26, 2015)

Advisory Solutions Fund Model

| | Current Yield/Rate | Beginning Balance | Deposits | Withdrawals | Ending Balance |
|---|---|---|---|---|---|
| Retirement Money Market | 0.01%* | $0.00 | $472,618.79 | -$472,611.82 | $6.97 |

* The average yield on the money market fund for the past seven days.

| Exchange Traded & Closed End Funds | Price | Quantity | Amount Invested Since Inception | Amount Withdrawn Since Inception | Value |
|---|---|---|---|---|---|
| iShares Core US Aggregate Bond | 108.21 | 306 | 33,148.58 | — | 33,112.26 |
| iShares MSCI EAFE ETF | 65.74 | 355 | 23,717.55 | — | 23,337.70 |
| iShares Russ 1000 Growth ETF | 100.80 | 469 | 47,373.69 | — | 47,275.20 |
| iShares Russ 1000 Value ETF | 105.01 | 583 | 61,584.21 | — | 61,220.83 |
| Vanguard Ttl BD Market ETF | 80.93 | 409 | 33,129.94 | — | 33,100.37 |

| Mutual Funds | Price | Quantity | Amount Invested Since Inception | Amount Withdrawn Since Inception | Value |
|---|---|---|---|---|---|
| Artisan INTL Value Fd Adv Cl | 36.59 | 645.998 | 23,630.59 | — | 23,637.07 |
| Artisan Mid Cap Val Fd Adv Cl | 25.16 | 374.791 | 9,452.24 | — | 9,429.74 |
| Columbia Select Lrge Cap Gr | 18.65 | 1,023.908 | 18,904.47 | — | 19,095.88 |
| Delaware US Growth | 28.98 | 658.463 | 18,904.47 | — | 19,082.26 |
| Franklin Mutual Shares Cl Z | 30.84 | 764.002 | 23,630.59 | — | 23,561.82 |

RJA_(NGUYEN)_011826



**Edward Jones**
MAKING SENSE OF INVESTING

Account Holder(s) Richard V.
Account Number ███████28-1-5
**Custodian** Edward Jones Trust Company for your Traditional IRA
**Financial Advisor** Dax A. Seale, 214-750-3672
9400 N Central Expressway, Suite 1309, Dallas, TX 75231

**Statement Date** May 30 - Jun 26, 2015

**Page** 2 of 3

## Asset Details (continued)

| Mutual Funds | Price | Quantity | Amount Invested Since Inception | Amount Withdrawn Since Inception | Value |
|---|---|---|---|---|---|
| Fundamental Investors | 53.61 | 351.714 | 18,904.47 | — | 18,855.39 |
| Harbor International | 71.97 | 523.597 | 37,808.95 | — | 37,683.28 |
| JP Morgan Fed Money Mkt | 1.00 | 8,995.24 | — | — | 8,995.24 |
| Morgan Stanley Inst MC Growth | 40.89 | 573.558 | 23,630.59 | — | 23,452.79 |
| Neuberger Berman Genesis | 60.27 | 393.909 | 23,630.59 | — | 23,740.90 |
| Oppenheimer INTL Growth | 38.60 | 856.624 | 33,082.83 | — | 33,065.69 |
| T. Rowe Price INTL Discovery | 57.84 | 245.853 | 14,178.35 | — | 14,220.14 |
| T. Rowe Price New Income | 9.43 | 1,994.142 | 18,904.47 | — | 18,804.76 |
| **Total Account Value** | | | | | **$471,678.29** |

## Retirement Summary

| | This Period | Cumulative |
|---|---|---|
| 2015 Contributions | $0.00 | $0.00 |
| 2014 Contributions | 0.00 | 0.00 |
| Transfers Received | 472,618.27 | 472,618.27 |

## Investment and Other Activity by Date

| Date | Description | Quantity | Amount |
|---|---|---|---|
| 6/10 | Transfer from 3058139316 | | $472,611.82 |
| 6/16 | Close Out Redemption Dividend on Retirement Money Market | | 0.52 |
| 6/16 | Sell JP Morgan Fed Money Mkt @ 1.00 | -457 | 457.00 |
| 6/16 | Buy JP Morgan Fed Money Mkt @ 1.00 | 9,452.24 | -9,452.24 |
| 6/16 | Buy Artisan INTL Value Fd Adv Cl @ 36.58 | 645.998 | -23,630.59 |
| 6/16 | Buy Artisan Mid Cap Val Fd Adv Cl @ 25.22 | 374.791 | -9,452.24 |
| 6/16 | Buy Columbia Select Lrge Cap Gr @ 19.48 | 970.455 | -18,904.47 |
| 6/16 | Buy Delaware US Growth @ 28.71 | 658.463 | -18,904.47 |
| 6/16 | Buy Fundamental Investors @ 53.89 | 350.797 | -18,904.47 |
| 6/16 | Buy Franklin Mutual Shares Cl Z @ 30.93 | 764.002 | -23,630.59 |
| 6/16 | Buy iShares Russ 1000 Value ETF @ 105.6333 | 583 | -61,584.21 |
| 6/16 | Buy iShares Russ 1000 Growth ETF @ 101.01 | 469 | -47,373.69 |
| 6/16 | Buy iShares MSCI EAFE ETF @ 66.81 | 355 | -23,717.55 |
| 6/16 | Buy iShares Core US Aggregate Bond @ 108.3287 | 306 | -33,148.58 |
| 6/16 | Buy Harbor International @ 72.21 | 523.597 | -37,808.95 |
| 6/16 | Buy Morgan Stanley Inst MC Growth @ 41.20 | 573.558 | -23,630.59 |



**Edward Jones**
MAKING SENSE OF INVESTING

**Account Holder(s)** Richard V.
**Account Number** ___428-1-5
**Custodian** Edward Jones Trust Company for your Traditional IRA
**Financial Advisor** Dax A. Seale, 214-750-3672
9400 N Central Expressway, Suite 1309, Dallas, TX 75231

**Statement Date** May 30 - Jun 26, 2015

**Page** 3 of 3

## Investment and Other Activity by Date (continued)

| Date | Description | Quantity | Amount |
|------|-------------|---------:|-------:|
| 6/16 | Buy Neuberger Berman Genesis @ 59.99 | 393.909 | -23,630.59 |
| 6/16 | Buy Oppenheimer INTL Growth @ 38.62 | 856.624 | -33,082.83 |
| 6/16 | Buy T. Rowe Price New Income @ 9.48 | 1,994.142 | -18,904.47 |
| 6/16 | Buy T. Rowe Price INTL Discovery @ 57.67 | 245.853 | -14,178.35 |
| 6/16 | Buy Vanguard Ttl BD Market ETF @ 81.0023 | 409 | -33,129.94 |
| 6/18 | Transfer from 3058139316 | | 6.45 |
| 6/18 | Dividend on Fundamental Investors on 350.797 Shares @ 0.139 | | 49.08 |
| 6/18 | Reinvestment into Fundamental Investors @ 53.51 | 0.917 | -49.08 |
| 6/19 | Long Term Capital Gain on Columbia Select Lrge Cap Gr on 970.455 Shares @ 0.717 | | 696.63 |
| 6/19 | Short Term Capital Gain on Columbia Select Lrge Cap Gr on 970.455 Shares @ 0.314 | | 305.61 |
| 6/19 | Reinvestment into Columbia Select Lrge Cap Gr @ 18.75 | 16.299 | -305.61 |
| 6/19 | Reinvestment into Columbia Select Lrge Cap Gr @ 18.75 | 37.154 | -696.63 |

## Retirement Money Market Detail by Date

**Beginning Balance on May 30** $0.00

| Date | Transaction | Description | Deposits | Withdrawals | Balance |
|------|-------------|-------------|---------:|------------:|--------:|
| 6/11 | Deposit | | 472,611.82 | | $472,611.82 |
| 6/16 | Withdrawal | | | -472,611.82 | $0.00 |
| 6/18 | Deposit | | 0.52 | | $0.52 |
| 6/19 | Deposit | | 6.45 | | $6.97 |
| **Total** | | | **$472,618.79** | **-$472,611.82** | |

**Ending Balance on Jun 26** $6.97

**IRA Account Statements -** For those IRA accounts in which Edward Jones Trust Company is serving as the custodian of the assets, this Edward Jones brokerage statement is also being provided by Edward Jones Trust Company as its custodial account statement. No other account statement will be provided by Edward Jones Trust Company for the period of time reflected on this statement.

RJA_(NGUYEN)_011828

# Edward Jones
MAKING SENSE OF INVESTING

**About Edward Jones**

Edward D. Jones & Co., L.P. is dually registered with the Securities and Exchange Commission (SEC) as a broker-dealer and an investment adviser. Edward Jones is also a member of FINRA.

**Statement of Financial Condition** — Edward Jones' statement of financial condition is available for your personal review:

- at your local branch office
- at www.edwardjones.com/en_US/company/index.html
- by mail upon written request

**About Your Account**

**Account Information** — Your Account Agreement contains the complete conditions that govern your account. Please contact your financial advisor if you have any changes to your financial situation, contact information or investment objectives.

**Account Safety** — Please review your statement carefully. If you believe there are errors on your account, you must notify us promptly of your concerns. You may either contact our Client Relations department or your financial advisor. You should re-confirm any oral communication by sending us a letter within 30 days to protect your rights, including your rights under the Securities Investor Protection Act (SIPA).

**Errors or Questions about your Electronic Transfers** — Contact Client Relations at (800) 441-2357.

**Complaints about Your Account** — If you have a complaint please call (800) 441-2357 or send a letter to Edward Jones, Attn: Complaints Dept., 1245 JJ Kelley Memorial Dr., St. Louis, MO 63131.

**Ratings and Recommendations** — Edward Jones research opinions, Standard & Poor's, Moody's and Fitch ratings may be shown for certain securities. Ratings or recommendations should not be considered an indication of future performance.

**Withholding on Distributions or Withdrawals** — Federal law requires Edward Jones to withhold income tax on distribution(s) from your retirement accounts and other plans unless you elect not to have withholding apply. You may elect a percentage to be withheld from your distribution or not to have the withholding apply by signing and dating the appropriate form and returning it to the address specified on the form. Your election will remain in effect until you change or revoke it by returning another signed and dated form. If you do not return the form by the date your distributions are scheduled to begin, Federal income tax will be withheld. If you do not have enough income tax withheld from your distributions, you may need to pay estimated tax. You may incur penalties if the amounts withheld and your estimated tax payments are not equal to the tax you owe. State withholding, if applicable, is subject to the state's withholding requirements.

**Fees and Charges** — The "Fees and charges" amount shown in your Value Summary includes all activity fees, except dividend reinvestment fees.

**Fair Market Value for Individual Retirement Accounts** Your fair market value as of December 31st will be reported to the IRS as required by law.

**Rights to Your Money Market Fund, Bank Deposit and Free Credit Balances** — Your free credit balances are payable on demand. You may require us to liquidate your bank deposit or money market fund balance. We will then disburse the proceeds to you or place them in your securities account. Your instructions must be made during normal business hours and are subject to terms and conditions of the Account Agreement.

**Important disclosures and other information relating to your account(s)** are available at www.edwardjones.com/disclosures.

 **Go Green!** Did you know you can receive your statements and other documents online instead of on paper? Visit www.edwardjones.com/edelivery for more information.

## Contact Information

| Client Relations | | Online Access | Other Contacts |
|---|---|---|---|
| ☎ Toll Free Phone 800-441-2357 | Monday-Friday 7am-7pm CST | 🖰 Online Account Access www.edwardjones.com/access | ☎ Edward Jones Personal MasterCard® 866-874-6711 |
| ✉ 201 Progress Parkway Maryland Heights, MO 63043 | | ☎ Edward Jones Online Support 800-441-5203 | ☎ Edward Jones Business MasterCard® 866-874-6712 |
| | | | ☎ Edward Jones Visa Debit Card 888-289-6635 |

S1EDJR01 rev 03-15-RJ

RJA_(NGUYEN)_011829

# EdwardJones
MAKING SENSE OF INVESTING

Account Holder(s) Kimberly Nguyen
Account Number ___ __ __628-1-5
Account Type 529 College Savings Plan
Financial Advisor Dax A. Seale, 214-750-3672
9400 N Central Expressway, Suite 1309, Dallas, TX 75231

Statement Date May 30 - Jun 26, 2015

Page 1 of 2

## 529 College Savings Plan
VCSP/CollegeAmerica
Kimberly Nguyen Owner
FBO Milan Olivia Le

## Like Us on Facebook

Edward Jones is happy to be part of the Facebook community. Visit our page at www.facebook.com/edwardjones for links to market commentary, informative articles, "Edward Jones Perspective" videos and much more. Like us on Facebook today.

## Account Value

# $79,097.15

| | |
|---|---|
| 1 Month Ago | $0.00 |
| 1 Year Ago | $0.00 |
| 3 Years Ago | $0.00 |
| 5 Years Ago | $0.00 |

## Value Summary

| | This Period | This Year |
|---|---|---|
| Beginning value | $0.00 | $0.00 |
| Assets added to account | 78,866.76 | 78,866.76 |
| Income | 1,327.26 | 1,327.26 |
| Assets withdrawn from account | 0.00 | 0.00 |
| Fees and charges | 0.00 | 0.00 |
| Change in value | -1,096.87 | -1,096.87 |
| **Ending Value** | **$79,097.15** | |

## Asset Details (as of Jun 26, 2015)
additional details at www.edwardjones.com/access

| Mutual Funds | Price | Quantity | Amount Invested Since Inception | Amount Withdrawn Since Inception | Value |
|---|---|---|---|---|---|
| AMCAP Fund Cl A-529 | 28.54 | 1,223.465 | — | — | **$34,917.69** |
| Capital Wrld Grth & Incm A-529 | 47.80 | 273.26 | — | — | **13,061.83** |
| Fundamental Invs Fd Cl A-529 | 53.57 | 580.878 | — | — | **31,117.63** |
| **Total Account Value** | | | | | **$79,097.15** |

## 529 Plan Summary
additional details at www.edwardjones.com/access

| | This Period | YTD |
|---|---|---|
| Contributions | $— | $— |
| Distributions | — | — |
| Lifetime Contributions less Distributions | 37,000.00 | |

## Investment and Other Activity by Date

| Date | Description | Quantity | Amount |
|---|---|---|---|
| 6/12 | Transfer AMCAP Fund Cl A-529 3051422818 | 1,183.879 | |
| 6/12 | Transfer Capital Wrld Grth & Incm A-529 3051422818 | 270.921 | |

RJA_(NGUYEN)_011830



**Edward Jones**
MAKING SENSE OF INVESTING

Account Holder(s) Kimberly Nguyen
**Account Number** ██ ██ 628-1-5
**Account Type** 529 College Savings Plan
**Financial Advisor** Dax A. Seale, 214-750-3672
9400 N Central Expressway, Suite 1309, Dallas, TX 75231

**Statement Date** May 30 - Jun 26, 2015

**Page** 2 of 2

## Investment and Other Activity by Date (continued)

| Date | Description | Quantity | Amount |
|------|-------------|----------|--------|
| 6/12 | Transfer Fundamental Invs Fd Cl A-529 3051422818 | 579.389 | |
| 6/18 | Dividend on Capital Wrld Grth & Incm A-529 on 270.921 Shares @ 0.41 | | 111.13 |
| 6/18 | Reinvestment into Capital Wrld Grth & Incm A-529 @ 47.51 | 2.339 | -111.13 |
| 6/18 | Dividend on Fundamental Invs Fd Cl A-529 on 579.389 Shares @ 0.137 | | 79.61 |
| 6/18 | Reinvestment into Fundamental Invs Fd Cl A-529 @ 53.47 | 1.489 | -79.61 |
| 6/22 | Long Term Capital Gain on AMCAP Fund Cl A-529 on 1,183.879 Shares @ 0.96 | | 1,136.52 |
| 6/22 | Reinvestment into AMCAP Fund Cl A-529 @ 28.71 | 39.586 | -1,136.52 |

RJA_(NGUYEN)_011831



Portfolio for Kimberly Nguyen

**Financial Advisor** Dax A. Seale, 214-750-3672
9400 N Central Expressway, Suite 1309, Dallas, TX 75231

**Statement Period** May 30 - Jun 26, 2015

**Page** i of ii

KIMBERLY NGUYEN
915 SUMMERWOOD LANE
GARLAND TX 75044-3222

## Happy Fourth of July

Between the backyard barbecues and firework displays this Independence Day, we hope you'll take a moment to reflect on our great nation. After nearly 240 years, the United States remains a symbol of freedom throughout the world. We salute all those who fought for this freedom and those who serve in the U.S. Armed Forces. Happy Independence Day!

# Portfolio Summary

## Total Portfolio Value

# $1,053,114.11

| | |
|---|---|
| 1 Month Ago | $444,165.36 |
| 1 Year Ago | $408,033.97 |
| 3 Years Ago | $280,898.92 |
| 5 Years Ago | $252,165.75 |

## Need a Helping Hand?

Do you have questions regarding your client statement? Do you need help completing Edward Jones paperwork? If so, call your local branch office administrator. He or she can help you with a variety of tasks, including answering questions about dividends and stock certificates; updating the name, address or telephone number associated with your account; providing market quotes; handling deposits and check requests; and answering noninvestment questions. So keep his or her name and phone number handy.

## Overview of Accounts

| Accounts | Account Holder | Account Number | Value 1 Year Ago | Current Value |
|---|---|---|---|---|
| Single Account | Kimberly Nguyen | 621-1-3 | $247,068.08 | $320,215.82 |
| Single Account | Kimberly Nguyen | 597-1-3 | $160,965.89 | $182,122.85 |
| 529 College Savings Plan | Kimberly Nguyen | 628-1-5 | $0.00 | $79,097.15 |
| Individual Retirement Account Advisory Solutions Fund Model | Richard V Le | 428-1-5 | $0.00 | $471,678.29 |
| **Total Accounts** | | | **$408,033.97** | **$1,053,114.11** |

Although account information is provided on this page, it does not guarantee an actual statement was produced. Refer to your account statement for the exact registration and more specific details regarding each account.

## Overview of Other Products and Services

| Loans and Credit | Account Number | Balance | Approved Credit | Available Credit | Interest Rate |
|---|---|---|---|---|---|
| Amount of money you can borrow for Kimberly Nguyen | 21-1-3 | $0.00 | $138,625* | $138,625 | 3.50% |

201 Progress Parkway
Maryland Heights, MO 63043-3042

www.edwardjones.com
Member SIPC



**Edward Jones**
MAKING SENSE OF INVESTING

**Financial Advisor** Dax A. Seale, 214-750-3672
9400 N Central Expressway, Suite 1309, Dallas, TX 75231

**Statement Period** May 30 - Jun 26, 2015

**Page** ii of ii

## Overview of Other Products and Services (continued)

| Insurance Protection | Policy Number | Death Benefit | | | |
|---|---|---|---|---|---|
| Lincoln Life Insurance for Kimberly Nguyen | ▉▉▉37 | $260,400.00 | | | |
| Protective Life Insurance for Kimberly Nguyen | ▉▉▉487 | $617,048.32 | | | |

\* Your approved credit is not a commitment to loan funds. It is based on the value of your investment account which could change daily. The amount you may be eligible to borrow may differ from your approved credit. Borrowing against securities has its risks and is not appropriate for everyone. If the value of your collateral declines, you may be required to deposit cash or additional securities, or the securities in your account may be sold to meet the margin call. A minimum account value is required if you have loan features on your account. Your interest will begin to accrue from the date of the loan and be charged to the account. Your interest rate will vary depending on the assets under care of your Edward Jones Relationship Pricing Group. For more information on how your interest rate is calculated, contact your financial advisor or please visit: www.edwardjones.com/disclosures/marginloans

Important disclosures; such as Statement of Financial Condition, Conditions that Govern Your Account, Account Safety, Errors, Complaints, Withholding, Free Credit Balance, Fair Market Value or Terminology; relating to your account(s) are available on the last page of this package or at www.edwardjones.com/statementdisclosures.



**Account Type** Single
**Financial Advisor** Dax A. Seale, 214-750-3672
9400 N Central Expressway, Suite 1309, Dallas, TX 75231

**Statement Date** May 30 - Jun 26, 2015

**Page** 1 of 2

## Single Account
Kimberly Nguyen

## Putting Your Team in Place

Your financial advisor works closely with you to identify your needs, make recommendations and track your progress, but he or she is only part of the team. The key members of your team include your financial advisor and branch office administrator, your legal and tax professionals, and the Edward Jones headquarters. We are here to help, so don't hesitate to call on us for help with any of your investment needs.

### Account Value

# $320,215.82

| | |
|---|---|
| 1 Month Ago | $262,256.31 |
| 1 Year Ago | $247,068.08 |
| 3 Years Ago | $192,269.98 |
| 5 Years Ago | $197,689.36 |

### Value Summary

| | This Period | This Year |
|---|---|---|
| Beginning value | $262,256.31 | $254,464.68 |
| Assets added to account | 0.00 | 0.00 |
| Income | 1,339.42 | 2,557.33 |
| Assets withdrawn from account | 0.00 | 0.00 |
| Fees and charges | 0.00 | 0.00 |
| Change in value | -3,379.91 | 3,193.81 |
| Ending value | 260,215.82 | 260,215.82 |
| + Assets held outside of Edward Jones | 60,000.00 | 60,000.00 |
| **Total Account Value** | **$320,215.82** | |

### Rate of Return

| Your Personal Rate of Return for Assets Held at Edward Jones | This Quarter | Year to Date | Last 12 Months | 3 Years Annualized | 5 Years Annualized |
|---|---|---|---|---|---|
| | 0.30% | 2.63% | 5.81% | 11.28% | 10.35% |

Your Personal Rate of Return is as of June 19, 2015.

**Your Personal Rate of Return:** Your Personal Rate of Return measures the investment performance of your account. It incorporates the timing of your additions and withdrawals and reflects commissions and fees paid. Reviewing Your Personal Rate of Return is important to help ensure you're on track to achieving your financial goals.

For additional information, contact your financial advisor or please visit www.edwardjones.com/rateofreturn.

### Asset Details (as of Jun 26, 2015)

additional details at www.edwardjones.com/access

| | | | | | Balance |
|---|---|---|---|---|---|
| Cash | | | | | $0.10 |

201 Progress Parkway
Maryland Heights, MO 63043-3042

www.edwardjones.com
Member SIPC

RJA_(NGUYEN)_011834



**Edward Jones**
MAKING SENSE OF INVESTING

Account Holder(s) Kimberly Nguyen
Account Number ████ ████ 621-1-3
Account Type Single
Financial Advisor Dax A. Seale, 214-750-3672
9400 N Central Expressway, Suite 1309, Dallas, TX 75231

Statement Date May 30 - Jun 26, 2015

Page 2 of 2

## Asset Details (continued)

| Federally Tax Exempt Municipal Bonds | Maturity Date | Maturity Value | Amount Invested Since Inception | Amount Withdrawn Since Inception | Value |
|---|---|---|---|---|---|

Interest received on Federally Tax Exempt Municipal Bonds is generally exempt from federal income tax. However, income may be subject to federal alternative minimum tax (AMT) and state taxes. Consult with your qualified tax professional about your situation.

| | | | | | |
|---|---|---|---|---|---|
| Santa Ana CA Uni Sch Dist GO 0.00% | 8/1/2035 | 135,000.00 | 24,817.95 | — | 55,502.55 |

| Mutual Funds | Price | Quantity | Amount Invested Since Inception | Amount Withdrawn Since Inception | Value |
|---|---|---|---|---|---|
| Amern High Incm Muni BD Fd A | 15.38 | 247.918 | 2,500.00 | — | 3,812.98 |
| Capital Income Builder Fund A | 59.71 | 1,220.536 | 52,460.84 | — | 72,878.20 |
| Capital World Grw & Inc Fund A | 47.94 | 1,696.072 | 61,264.08 | -120.00 | 81,309.69 |
| Europacific Growth Fund Cl A | 51.76 | 94.075 | 3,000.00 | — | 4,869.32 |
| Lord Abbett Affiliated Fd Cl A | 16.34 | 1,103.122 | 10,030.74 | — | 18,025.01 |
| Lord Abbett Fundamental Equ A | 13.77 | 1,187.109 | 7,000.00 | — | 16,346.49 |
| Lord Abbett Mid Cap Stock Cl A | 26.95 | 79.662 | 1,225.34 | — | 2,146.89 |
| Tax Exempt Bond Fd Amer Cl A | 12.91 | 412.439 | 5,162.63 | — | 5,324.59 |

| Insurance (Held at the Insurance Company) | Value as of | Purchase Date | | Policy Value | Surrender Value |
|---|---|---|---|---|---|
| Lincoln Life Insurance Lincoln Moneyguard II Policy # 000000M27937 | 6/25/2015 | 6/22/2015 | | $55,692.27 | 60,000.00 |

**Total Account Value** — **$320,215.82**

## Investment and Other Activity by Date

| Date | Description | Quantity | Amount |
|---|---|---|---|
| 6/01 | Dividend on Amern High Incm Muni BD Fd A on 247.058 Shares at Daily Accrual Rate | | $13.32 |
| 6/01 | Reinvestment into Amern High Incm Muni BD Fd A @ 15.49 | 0.86 | -13.32 |
| 6/01 | Dividend on Tax Exempt Bond Fd Amer Cl A on 411.301 Shares at Daily Accrual Rate | | 14.77 |
| 6/01 | Reinvestment into Tax Exempt Bond Fd Amer Cl A @ 12.98 | 1.138 | -14.77 |
| 6/18 | Dividend on Capital World Grw & Inc Fund A on 1,681.253 Shares @ 0.42 | | 706.13 |
| 6/18 | Reinvestment into Capital World Grw & Inc Fund A @ 47.65 | 14.819 | -706.13 |
| 6/18 | Dividend on Capital Income Builder Fund A on 1,210.399 Shares @ 0.50 | | 605.20 |
| 6/18 | Reinvestment into Capital Income Builder Fund A @ 59.70 | 10.137 | -605.20 |

RJA_(NGUYEN)_011835



**Edward Jones**
MAKING SENSE OF INVESTING

Account Holder(s) Kimberly Nguyen
Account Number XXX-XX597-1-3
Account Type Single
Financial Advisor Dax A. Seale, 214-750-3672
9400 N Central Expressway, Suite 1309, Dallas, TX 75231

**Statement Date** May 30 - Jun 26, 2015

Page 1 of 2

## Single Account
Kimberly Nguyen

## Declare Your Financial Independence

This Independence Day, declare your own financial freedom. Begin by spending less and saving and investing more. Saving even a small amount regularly can help make a difference in your long-term future. Next, take a look at your lifestyle. Be ruthless when it comes to breaking bad spending habits and paying down debt. Honing smart spending and saving habits and reviewing your portfolio regularly can help you on your way to celebrating your own financial freedom.

### Account Value

# $182,122.85

| | |
|---|---|
| 1 Month Ago | $181,909.05 |
| 1 Year Ago | $160,965.89 |
| 3 Years Ago | $88,628.94 |
| 5 Years Ago | $54,476.39 |

### Value Summary

| | This Period | This Year |
|---|---|---|
| Beginning value | $1,004.53 | $1,004.53 |
| Assets added to account | 1,000.00 | 6,000.00 |
| Income | 0.00 | 0.00 |
| Assets withdrawn from account | -1,000.00 | -6,000.00 |
| Fees and charges | 0.00 | 0.00 |
| Change in value | 0.00 | 0.00 |
| Ending value | 1,004.53 | 1,004.53 |
| + Assets held outside of Edward Jones | 181,118.32 | 181,118.32 |
| **Total Account Value** | **$182,122.85** | |

### Rate of Return

| Your Personal Rate of Return for Assets Held at Edward Jones | This Quarter | Year to Date | Last 12 Months | 3 Years Annualized | 5 Years Annualized |
|---|---|---|---|---|---|
| | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |

Your Personal Rate of Return is as of June 19, 2015.

**Your Personal Rate of Return:** Your Personal Rate of Return measures the investment performance of your account. It incorporates the timing of your additions and withdrawals and reflects commissions and fees paid. Reviewing Your Personal Rate of Return is important to help ensure you're on track to achieving your financial goals.

For additional information, contact your financial advisor or please visit www.edwardjones.com/rateofreturn.

### Asset Details (as of Jun 26, 2015)

additional details at www.edwardjones.com/access

| | | | | | Balance |
|---|---|---|---|---|---|
| Cash | | | | | $1,004.53 |

201 Progress Parkway
Maryland Heights, MO 63043-3042

www.edwardjones.com
Member SIPC

RJA_(NGUYEN)_011836



**MAKING SENSE OF INVESTING**

Account Holder(s) Kimberly Nguyen
**Account Number** 597-1-3
**Account Type** Single
**Financial Advisor** Dax A. Seale, 214-750-3672
9400 N Central Expressway, Suite 1309, Dallas, TX 75231

**Statement Date** May 30 - Jun 26, 2015

**Page** 2 of 2

## Asset Details (continued)

| Insurance (Held at the Insurance Company) | Value as of | Purchase Date | | Policy Value | Surrender Value |
|---|---|---|---|---|---|
| Protective Life Insurance Flexible Premium Var Unvl Life Policy # 487 | 6/25/2015 | 5/26/2004 | | $181,118.32 | 181,118.32 |
| **Total Account Value** | | | | | **$182,122.85** |

## Investment and Other Activity by Date

| Date | Description | Quantity | Amount |
|---|---|---|---|
| 6/03 | Electronic Payment to Protective Life | | -$1,000.00 |
| 6/25 | Electronic Transfer from Bank of America, N.A. | | 1,000.00 |

RJA_(NGUYEN)_011837

# EXHIBIT 2

## Kim's Financial Plan

## Kimberly Nguyen

December 07, 2015



Prepared by:

**Dax A. Seale CFP®, CLU®, AAMS®**

Raymond James
2001 Ross Avenue
Suite 4500
Dallas, TX 75201
(214) 965-7634 | DAX.SEALE@RAYMONDJAMES.COM
http://sealewealth.com/

Raymond James & Associates, Inc. member New York Stock Exchange/SIPC.

RJA_(NGUYEN)_010943

# Table Of Contents

**IMPORTANT DISCLOSURE INFORMATION**                1 - 5

**Executive Summary**
Executive Summary                                   6 - 9

**Summary of Goals and Resources**
Personal Information and Summary of Financial Goals    10
Current Financial Goals Graph                         11
Net Worth Summary - All Resources                     12
Resources Summary                                     13

**Risk and Portfolio Information**
Risk Assessment                                       14

**Results**
Results - Current and Recommended                  15 - 16
Glossary                                           17 - 20

RJA_(NGUYEN)_010944

# IMPORTANT DISCLOSURE INFORMATION

IMPORTANT: The projections or other information generated by Goal Planning & Monitoring regarding the likelihood of various investment outcomes are hypothetical in nature, do not reflect actual investment results, and are not guarantees of future results.

The return assumptions in Goal Planning & Monitoring are not reflective of any specific product, and do not include any fees or expenses that may be incurred by investing in specific products. The actual returns of a specific product may be more or less than the returns used in Goal Planning & Monitoring.  It is not possible to directly invest in an index. Financial forecasts, rates of return, risk, inflation, and other assumptions may be used as the basis for illustrations. They should not be considered a guarantee of future performance or a guarantee of achieving overall financial objectives.  Past performance is not a guarantee or a predictor of future results of either the indices or any particular investment.

Goal Planning & Monitoring results may vary with each use and over time.

**Goal Planning & Monitoring Assumptions and Limitations**

**Information Provided by You**

Information that you provided about your assets, financial goals, and personal situation are key assumptions for the calculations and projections in this Report.  Please review the Report sections titled "Personal Information and Summary of Financial Goals", "Current Portfolio Allocation", and "Tax and Inflation Options" to verify the accuracy of these assumptions.  If any of the assumptions are incorrect, you should notify your financial advisor.  Even small changes in assumptions can have a substantial impact on the results shown in this Report.  The information provided by you should be reviewed periodically and updated when either the information or your circumstances change.

All asset and net worth information included in this Report was provided by you or your designated agents, and is not a substitute for the information contained in the official account statements provided to you by custodians. The current asset data and values contained in those account statements should be used to update the asset information included in this Report, as necessary.

**Assumptions and Limitations**

Goal Planning & Monitoring offers several methods of calculating results, each of which provides one outcome from a wide range of possible outcomes.  All results in this Report are hypothetical in nature, do not reflect actual investment results, and are not guarantees of future results.  All results use simplifying assumptions that do not completely or accurately reflect your specific circumstances.  No Plan or Report has the ability to accurately predict the future.  As investment returns, inflation, taxes, and other economic conditions vary from the Goal Planning & Monitoring assumptions, your actual results will vary (perhaps significantly) from those presented in this Report.

All Goal Planning & Monitoring calculations use asset class returns, not returns of actual investments.  The projected return assumptions used in this Report are estimates based on average annual returns for each asset class. The portfolio returns are calculated by weighting individual return assumptions for each asset class according to your portfolio allocation.  The portfolio returns may have been modified by including adjustments to the total return and the inflation rate.  The portfolio returns assume reinvestment of interest and dividends at net asset value without taxes, and also assume that the portfolio has been rebalanced to reflect the initial recommendation.  No portfolio rebalancing costs, including taxes, if applicable, are deducted from the portfolio value.  No portfolio allocation eliminates risk or guarantees investment results.

Goal Planning & Monitoring does not provide recommendations for any products or securities.

Prepared for : Kimberly Nguyen
12/07/2015

Company: Raymond James

Prepared by: Dax Seale CFP®, CLU®, AAMS®
Page 1 of 20

RJA_(NGUYEN)_010945

# IMPORTANT DISCLOSURE INFORMATION

| Asset Class | Projected Return Assumption |
|---|---|
| Cash & Cash Alternatives | 1.00% |
| U.S. Large Cap Blend | 6.64% |
| U.S. Large Cap Value | 6.64% |
| U.S. Large Cap Growth | 6.64% |
| U.S. Mid Cap Equity | 7.20% |
| U.S. Small Cap Equity | 8.19% |
| Non-U.S. Developed Market Equity | 7.85% |
| Non-U.S. Emerging Market Equity | 9.34% |
| Global Equity Strategies | 7.76% |
| Equity Sector Strategies | 6.64% |
| Real Estate | 5.94% |
| Investment Grade Long Maturity Fixed Income | 3.12% |
| Investment Grade Intermediate Maturity Fixed Inc | 3.57% |
| Investment Grade Short Maturity Fixed Income | 2.96% |
| Non-Investment Grade Fixed Income | 5.14% |
| Global Fixed Income Strategies | 3.54% |
| Multi-Sector Fixed Income Strategies | 4.74% |
| Alternative Strategies | 4.43% |
| Commodities | 4.12% |
| Private Market Strategies | 9.07% |
| Allocation Strategies (Equity Weighted) | 6.29% |
| Allocation Strategies (Fixed Income Weighted) | 4.83% |
| World Allocation Strategies | 5.91% |
| AMS Conservative Strategies | 5.15% |
| AMS Moderate Conservative Strategies | 5.91% |
| AMS Moderate Strategies | 6.62% |
| AMS Moderate Aggressive Strategies | 7.02% |
| Equity - Non-classified | 7.00% |
| Fixed Income - Non-classified | 3.00% |

# IMPORTANT DISCLOSURE INFORMATION

**Risks Inherent in Investing**

Investing in fixed income securities involves interest rate risk, credit risk, and inflation risk. Interest rate risk is the possibility that bond prices will decrease because of an interest rate increase. When interest rates rise, bond prices and the values of fixed income securities fall. When interest rates fall, bond prices and the values of fixed income securities rise. Credit risk is the risk that a company will not be able to pay its debts, including the interest on its bonds. This risk is higher with non-investment grade fixed income securities. Inflation risk is the possibility that the interest paid on an investment in bonds will be lower than the inflation rate, decreasing purchasing power.

Cash alternatives typically include money market securities and U.S. treasury bills. Investing in such cash alternatives involves inflation risk. In addition, investments in money market securities may involve credit risk and a risk of principal loss. Because money market securities are neither insured nor guaranteed by the Federal Deposit Insurance Corporation or any other government agency, there is no guarantee the value of your investment will be maintained at $1.00 per share. U.S. Treasury bills are subject to market risk if sold prior to maturity. Market risk is the possibility that the value, when sold, might be less than the purchase price.

Investing in stock securities involves volatility risk, market risk, business risk, and industry risk. The prices of most stocks fluctuate. Volatility risk is the chance that the value of a stock will fall. Market risk is chance that the prices of all stocks will fall due to conditions in the economic environment. Business risk is the chance that a specific company's stock will fall because of issues affecting it. Industry risk is the chance that a set of factors particular to an industry group will adversely affect stock prices within the industry. (See "Asset Class – Stocks" in the Glossary section of this Important Disclosure Information for a summary of the relative potential volatility of different types of stocks.)

International investing involves additional risks including, but not limited to, changes in currency exchange rates, differences in accounting and taxation policies, and political or economic instabilities that can increase or decrease returns.

Commodities are generally considered speculative because of the significant potential for investment loss. Commodities are volatile investments and should only form a small part of a diversified portfolio. There may be sharp price fluctuations even during periods when prices overall are rising.

**Report Is a Snapshot and Does Not Provide Legal, Tax, or Accounting Advice**

This Report provides a snapshot of your current financial position and can help you to focus on your financial resources and goals, and to create a plan of action. Because the results are calculated over many years, small changes can create large differences in future results. You should use this Report to help you focus on the factors that are most important to you. This Report does not provide legal, tax, or accounting advice. Before making decisions with legal, tax, or accounting ramifications, you should consult appropriate professionals for advice that is specific to your situation.

This information is provided for your convenience, but should not be used as a substitute for your account's monthly statements and trade confirmations. It has been gathered from information provided by you and other sources believed to be reliable.

**Goal Planning & Monitoring Methodology**

Goal Planning & Monitoring offers several methods of calculating results, each of which provides one outcome from a wide range of possible outcomes. The methods used are: "Average Returns," "Bad Timing," "Class Sensitivity," and "Monte Carlo Simulations."

**Results Using Average Returns**

The Results Using Average Returns are calculated using one average return for your pre-retirement period and one average return for your post-retirement period. Average Returns are a simplifying assumption. In the real world, investment returns can (and often do) vary widely from year to year and vary widely from a long-term average return.

**Results with Bad Timing**

Results with Bad Timing are calculated by using low returns in one or two years, and average returns for all remaining years of the Plan. For most Plans, the worst time for low returns is when you begin taking substantial withdrawals from your portfolio. The Results with Bad Timing assume that you earn a low return in the year(s) you select and then an Adjusted Average Return in all other years. This Adjusted Average Return is calculated so that the average return of the Results with Bad Timing is equal to the return(s) used in calculating the Results Using Average Returns. This allows you to compare two results with the same overall average return, where one (the Results with Bad Timing) has low returns in one or two years.

The default for the first year of low returns is two standard deviations less than the average return, and the default for the second year is one standard deviation less than the average return.

# IMPORTANT DISCLOSURE INFORMATION

**Results Using Class Sensitivity**

The Results Using Class Sensitivity are calculated by using different return assumptions for one or more asset classes during the years you select. These results show how your Plan would be affected if the annual returns for one or more asset classes were different than the average returns for a specified period in your Plan.

**Results Using Monte Carlo Simulations**

Monte Carlo simulations are used to show how variations in rates of return each year can affect your results. A Monte Carlo simulation calculates the results of your Plan by running it many times, each time using a different sequence of returns. Some sequences of returns will give you better results, and some will give you worse results. These multiple trials provide a range of possible results, some successful (you would have met all your goals) and some unsuccessful (you would not have met all your goals). The percentage of trials that were successful is the probability that your Plan, with all its underlying assumptions, could be successful. In Goal Planning & Monitoring, this is the Probability of Success. Analogously, the percentage of trials that were unsuccessful is the Probability of Failure. The Results Using Monte Carlo Simulations indicate the likelihood that an event may occur as well as the likelihood that it may not occur. In analyzing this information, please note that the analysis does not take into account actual market conditions, which may severely affect the outcome of your goals over the long-term.

**Goal Planning & Monitoring Presentation of Results**

The Results Using Average Returns, Bad Timing, and Class Sensitivity display the results using an "Estimated % of Goal Funded" and a "Safety Margin."

**Estimated % of Goal Funded**

For each Goal, the "Estimated % of Goal Funded" is the sum of the assets used to fund the Goal divided by the sum of the Goal's expenses. All values are in current dollars. A result of 100% or more does not guarantee that you will reach a Goal, nor does a result under 100% guarantee that you will not. Rather, this information is meant to identify possible shortfalls in this Plan, and is not a guarantee that a certain percentage of your Goals will be funded. The percentage reflects a projection of the total cost of the Goal that was actually funded based upon all the assumptions that are included in this Plan, and assumes that you execute all aspects of the Plan as you have indicated.

**Safety Margin**

The Safety Margin is the estimated value of your assets at the end of this Plan, based on all the assumptions included in this Report. Only you can determine if that Safety Margin is sufficient for your needs.

**Bear Market Loss and Bear Market Test**

The Bear Market Loss shows how a portfolio would have been impacted during the worst bear market since the Great Depression. Depending on the composition of the portfolio, the worst bear market is either the "Great Recession" or the "Bond Bear Market."

The Great Recession, from November 2007 through February 2009, was the worst bear market for stocks since the Great Depression. In Goal Planning & Monitoring, the Great Recession Return is the rate of return, during the Great Recession, for a portfolio comprised of cash, bonds, stocks, and alternatives, with an asset mix equivalent to the portfolio referenced.

The Bond Bear Market, from July 1979 through February 1980, was the worst bear market for bonds since the Great Depression. In Goal Planning & Monitoring, the Bond Bear Market Return is the rate of return, for the Bond Bear Market period, for a portfolio comprised of cash, bonds, stocks, and alternatives, with an asset mix equivalent to the portfolio referenced.

The Bear Market Loss shows: 1) either the Great Recession Return or the Bond Bear Market Return, whichever is lower, and 2) the potential loss, if you had been invested in this cash-bond-stock-alternative portfolio during the period with the lower return. In general, most portfolios with a stock allocation of 20% or more have a lower Great Recession Return, and most portfolios with a combined cash and bond allocation of 80% or more have a lower Bond Bear Market Return.

The Bear Market Test, included in the Stress Tests, examines the impact on your Plan results if an identical Great Recession or Bond Bear Market, whichever would be worse, occurred this year. The Bear Market Test shows the likelihood that you could fund your Needs, Wants and Wishes after experiencing such an event.

---

# IMPORTANT DISCLOSURE INFORMATION

Even though you are using projected returns for all other Goal Planning & Monitoring results, the Bear Market Loss and Bear Market Test use returns calculated from historical indices. These results are calculated using only three asset classes – Cash, Bonds, and Stocks. Alternative asset classes (e.g., real estate, commodities) are included in the Stocks asset class. The indices and the resulting returns for the Great Recession and the Bond Bear Market are:

| Asset Class | Index | Great Recession Return 11/2007 – 02/2009 | Bond Bear Market Return 07/1979 – 02/1980 |
|---|---|---|---|
| Cash | Ibbotson U.S. 30-day Treasury Bills | 2.31% | 7.08% |
| Bond | Ibbotson Intermediate-Term Government Bonds – Total Return | '5.61% | -8.89% |
| Stock | S&P 500 - Total Return | -50.95% | 14.61% |
| Alternative | HFRI FOF: Diversified* S&P GSCI Commodity - Total Return** | -19.87% N/A | N/A 23.21% |

*Hedge Fund Research Indices Fund of Funds

**S&P GSCI was formerly the Goldman Sachs Commodity Index

Because the Bear Market Loss and Bear Market Test use the returns from asset class indices rather than the returns of actual investments, they do not represent the performance for any specific portfolio, and are not a guarantee of minimum or maximum levels of losses or gains for any portfolio. The actual performance of your portfolio may differ substantially from those shown in the Great Recession Return, the Bond Bear Market Return, the Bear Market Loss, and the Bear Market Test.

**Goal Planning & Monitoring Risk Assessment**

The Goal Planning & Monitoring Risk Assessment highlights some – but not all – of the trade-offs you might consider when deciding how to invest your money. This approach does not provide a comprehensive, psychometrically-based, or scientifically-validated profile of your risk tolerance, loss tolerance, or risk capacity, and is provided for informational purposes only.

Goal Planning & Monitoring uses your risk score to select a risk-based portfolio on the Target Band page. This risk-based portfolio selection is provided for informational purposes only, and you should consider it to be a starting point for conversations with your advisor. It is your responsibility to select the Target Portfolio you want Goal Planning & Monitoring to use. The selection of your Target Portfolio, and other investment decisions, should be made by you, after discussions with your advisor and, if needed, other financial and/or legal professionals.

# Executive Summary

RJA_(NGUYEN)_010950

# Executive Summary

| Reaching Your Goals | Status |
|---|---|

**Probability of Success**





93%

Above Confidence Zone

| Net Worth | |
|---|---|
| Assets | $2,624,222 |
| Liabilities | $0 |
| **Net Worth** | **$2,624,222** |

**Results**

If you implement the following suggestions, there is a 93% likelihood of funding all of the Financial Goals in your Plan.

**Goals**

Maintain your Total Goal Spending at $1,728,000

Kimberly retires at age 65, in the year 2039.

| Goal | Amount | Changes |
|---|---|---|
| **Needs** | | |
| 10 Retirement - Living Expense | | |
| Retired | $48,000 | |

**Concentrated Positions**

You have a Concentrated Position in the single securities as shown below.  You should consider the additional risk this creates and the potential benefits (and associated costs) of diversifying these positions.

| Security Symbol | $ Value | % of Portfolio |
|---|---|---|
| AAPL | $900,000 | 55 |

**See Important Disclosure Information section in this Report for explanations of assumptions, limitations, methodologies, and a glossary.**

| Prepared for : Kimberly Nguyen | Company: Raymond James | Prepared by: Dax Seale CFP®, CLU®, AAMS® |
|---|---|---|
| 12/07/2015 | | Page 6 of 20 |

# Executive Summary

| Risk Management | Status |
|---|---|

**Life**

Consider a review of your life insurance to determine if you have adequate coverage.

| Estate | Status |
|---|---|

**Estate Strategies**

Consider reviewing your beneficiary designations anc estate planning documents (Will, Power of Attorney, Medical Directive, etc.) to make sure they are aligned with your plan.

| Banking | Status |
|---|---|

**Cash Management**

Managing spending and savings effectively is a key component of a successful plan. A review of debt, such as credit cards and mortgages, as well as spending and savings accounts can help to ensure that you are getting the most from your money and not paying too much in unnecessary interest or fees.

| Social Security | Status |
|---|---|

**Personal Information**

Your Full Retirement Age (FRA) is the age that you would receive 100% of your Primary Insurance Amount (PIA). Depending on the year you were born, your FRA is between 65-67 years old. Taking benefits before or after your FRA will decrease or increase the amount you receive, respectively.

Kimberly's FRA is 67 and 0 months in 2041.

Your Primary Insurance Amount (PIA) is the benefit you would receive if you began benefits at your Full Retirement Age (FRA). It is calculated from the earnings on which you paid Social Security taxes, throughout your life.

Kimberly's estimated annual PIA is $27,406

**Strategy Information**

Kimberly files a normal application at 67 in 2041.

Using this strategy, your household's total lifetime benefits would be $931,790 in today's dollars.

---

**See Important Disclosure Information section in this Report for explanations of assumptions, limitations, methodologies, and a glossary.**

# Executive Summary

| Investment Policy | Status |
|---|---|

**Roles and Responsibilities**

You have selected Dax A. Seale CFP®, CLU®, AAMS® to assist in the managing and implementation of your investment portfolio.  The primary responsibilities of your financial advisor are:

- Prepare and maintain this Goal Planning & Monitoring (GPM) plan ("The Plan") which includes:

    *A risk/return profile of the target portfolio

    *Time horizons of your goals for the portfolio

    *A schedule of your liquidity needs to fund your goals

- Prudently recommend investment options within the Target Portfolios

- Avoid conflicts of interest and prohibited transactions

- Monitor and review your portfolio in accordance with the Plan

- Communicate fees and investment expenses

**Clients**

Any successful relationship depends upon personal commitment, regular and open communication and informed decision making. Your primary responsibilities are:

- Be forthcoming about your current financial situation, as well as your goals (Needs, Wants & Wishes) as reflected in the Plan.

- Read and carefully review all trade confirmations and account statements for accuracy and promptly report any errors

- Read carefully any investment literature, prospectuses and/or other offering documents, when applicable, prior to making investment decisions and purchases.

- Understand the total of all fees & commissions given the specific investment services provided.

- Report changes in your financial and personal circumstances in a timely manner to assure that all relevant factors are reflected in your Plan.

- Understand all investments have some degree of risk and it is possible to lose money on any investment.

- Understand that any results contained in your Goal Planning & Monitoring plan are based upon assumptions and can significantly change either positively or negatively based upon any changes to the assumptions

**See Important Disclosure Information section in this Report for explanations of assumptions, limitations, methodologies, and a glossary.**

Prepared for : Kimberly Nguyen

12/07/2015

Company: Raymond James

Prepared by: Dax Seale CFP®, CLU®, AAMS®

Page 8 of 20

RJA_(NGUYEN)_010953

## Executive Summary

**Monitoring**

The percentage weighting to each asset class within the portfolio will vary over time relative to the Target Portfolio.   The percentage weighting within each asset class will be allowed to vary within a reasonable range depending on market conditions.

**See Important Disclosure Information section in this Report for explanations of assumptions, limitations, methodologies, and a glossary.**

Prepared for : Kimberly Nguyen                                  Company: Raymond James                              Prepared by: Dax Seale CFP®, CLU®, AAMS®

12/07/2015                                                                                                                                                            Page 9 of 20

RJA_(NGUYEN)_010954

## Summary of Goals and Resources



RJA_(NGUYEN)_010955

# Personal Information and Summary of Financial Goals

**Kimberly Nguyen**



| | Needs | | |
|---|---|---|---|
| **10** | **Retirement - Living Expense** | | |
| | Kimberly<br>Retired (2039-2074) | | 65 / 2039<br>$48,000<br>Base Inflation Rate plus 0.80% (3.00%) |

| Personal Information | Participant Name | Date of Birth | Age | Relationship |
|---|---|---|---|---|
| **Kimberly** | ▋ | ▋2009 | 6 | Child |
| Female - born ▋/1974, age 41 | ▋ | ▋2007 | 8 | Child |
| Business Owner - $80,000 | | | | |

Single, US Citizen living in TX

• This section lists the Personal and Financial Goal information you provided, which will
be used to create your Report. It is important that it is accurate and complete.

---

**See Important Disclosure Information section in this Report for explanations of assumptions, limitations, methodologies, and a glossary.**

# Current Financial Goals Graph

This graph shows the annual costs for your Financial Goals, as you have specified.  Because these costs will be used to create your Plan, it is important that they are accurate and complete. All amounts are in after-tax, future dollars.





Retirement - Living Expense

See Important Disclosure Information section in this Report for explanations of assumptions, limitations, methodologies, and a glossary.

RJA_(NGUYEN)_010957

## Net Worth Summary - All Resources

This is your Net Worth Summary as of 12/07/2015. Your Net Worth is the difference between what you own (your Assets) and what you owe (your Liabilities). To get an accurate Net Worth statement, make certain you have entered all of your Assets and Liabilities.



| Investment Assets | $1,726,222 |
| Other Assets        + | $898,000 |
| Total Assets | $2,624,222 |
| Total Liabilities    - | $0 |
| Net Worth | $2,624,222 |

| Description | Total |
|---|---|
| **Investment Assets** | |
| Individual Retirement Accounts | $455,416 |
| Taxable and/or Tax-Free Accounts | $1,193,041 |
| College Saving Plans | $77,765 |
| Total Investment Assets: | $1,726,222 |
| **Other Assets** | |
| Home and Personal Assets | $400,000 |
| Business and Property | $250,000 |
| Cash Value Life | $80,000 |
| 529 Savings Plan | $168,000 |
| Total Other Assets: | $898,000 |
| **Net Worth:** | **$2,624,222** |

---

**See Important Disclosure Information section in this Report for explanations of assumptions, limitations, methodologies, and a glossary.**

Prepared for : Kimberly Nguyen
12/07/2015

Company: Raymond James

Prepared by: Dax Seale CFP®, CLU®, AAMS®
Page 12 of 20
RJA_(NGUYEN)_010958

# Resources Summary

**Investment Assets**

| Description | Owner | Current Value | Additions | Assign to Goal |
|---|---|---|---|---|
| Account | Kimberly | $935,000 | | Fund All Goals |
| Kimberly IRA Freedom - xxxx1926 | Kimberly | $455,416 | | Fund All Goals |
| Kimberly Nguyen - xxxx3418 | Kimberly | $258,041 | | Fund All Goals |
| Kimberly Nguyen 529 ████████ Le - xxxx3442 | Kimberly | $77,765 | | Not Used In Plan |

|  | **Total Investment Assets :** | **$1,726,222** | | |

**Other Assets**

| Description | Owner | Current Value | Future Value | Assign to Goal |
|---|---|---|---|---|
| Home | Kimberly | $400,000 | | Not Funding Goals |
| MGM Condo - Vegas | Kimberly | $250,000 | | Fund All Goals |
| Lincoln MoneyGuard | Kimberly | $80,000 | | Not Funding Goals |
| Vanguard 529 | Kimberly | $168,000 | | Not Funding Goals |

|  | **Total of Other Assets :** | **$898,000** | | |

**Insurance Policies**

| Description | Owner | Insured | Beneficiary | Annual Premium | Cash Value | Death Benefit | Premium Paid |
|---|---|---|---|---|---|---|---|
| **Cash Value Life Insurance Policies Summary (included in Assets)** | | | | | | | |
| Lincoln MoneyGuard Universal Life | Kimberly | Kimberly | Estate - 100% | | $80,000 | $100,000 | |

|  |  |  |  |  | **Total Death Benefit of All Policies :** | **$100,000** | |

If the assets include a Variable Life Investment Asset, the value shown for this policy in the Premium column reflects only the assumed annual increase in the cash value of the insurance policy and not the total premium.

**Social Security**

| Description | Value | Assign to Goal |
|---|---|---|
| Social Security | Kimberly will file a normal application at age 67. She will receive $27,406 in retirement benefits at age 67. | Fund All Goals |

**See Important Disclosure Information section in this Report for explanations of assumptions, limitations, methodologies, and a glossary.**

Prepared for : Kimberly Nguyen
12/07/2015

Company: Raymond James

Prepared by: Dax Seale CFP®, CLU®, AAMS®
Page 13 of 20
RJA_(NGUYEN)_010959

# Risk and Portfolio Information



RJA_(NGUYEN)_010960

## Risk Assessment

| Portfolio Appropriate for Score | Compare Me to my Group | Bear Market Loss |
|---|---|---|
| Balanced w/ Growth | Female Under Age 50 | Balanced w/ Growth |





☐ Cash: 2%
■ Bond: 15%
■ Stock: 78%
☐ Alternative: 5%

Average Return: 6.44%

**You are a Higher than Average Risk-Taker**

| | |
|---|---|
| Portfolio Value | $1,648,457 |
| Great Recession Return from November 2007 through February 2009 | -38% |
| Potential loss of Portfolio Value | -$626,414 |

You selected a Risk Score of 60.

• The Bell Curve above shows the normal distribution of risk scores for your group. The average score is 52.

• Your Score indicates that you are a Higher than Average Risk-Taker (scores 58-67) as compared to other Investors of similar age.

• Your Score corresponds to a Balanced w/ Growth Portfolio with 83% Stock (includes Alternative).

• You know that the Balanced w/ Growth Portfolio you selected had a -38% return during the Great Recession and are willing to accept the risk that you could experience a similar or worse result.

**See Important Disclosure Information section in this Report for explanations of assumptions, limitations, methodologies, and a glossary.**

## Results



RJA_(NGUYEN)_010962

## Results - Current and Recommended

| Results | Current Scenario | | Recommended Scenario | |
|---|---|---|---|---|
| | Average Return | Bad Timing | Average Return | Bad Timing |
| **Estimated % of Goals Funded** | 100% | 100% | 100% | 100% |
| **Likelihood of Funding All Goals** | Probability of Success | | Probability of Success | |



Your Confidence Zone: 70% - 90%

88% In Confidence Zone

93% Above Confidence Zone

| | Current Scenario | What If 1 | Changes In Value |
|---|---|---|---|
| **Retirement** | | | |
| **Retirement Age** | | | |
| Kimberly | 65 in 2039 | 65 in 2039 | |
| **Planning Age** | | | |
| Kimberly | 100 in 2074 | 100 in 2074 | |
| **Goals** | | | |
| **Needs** | | | |
| Retirement – Living Expense Retired | $48,000 | $48,000 | |
| **Total Spending for Life of Plan** | **$1,728,000** | **$1,728,000** | |
| **Savings** | | | |
| **Total Savings This Year** | **$0** | **$0** | |

See Important Disclosure Information section in this Report for explanations of assumptions, limitations, methodologies, and a glossary.

# Results - Current and Recommended

| | Current Scenario | What If 1 | Changes In Value |
|---|---|---|---|
| ◉ Portfolios | | | |
| **Allocation Before Retirement** | **Current** | **Balanced w/ Growth** | **13% Less Stock** |
| Percent Stock | 91% | 78% | |
| Total Return | 6.49% | 6.44% | |
| Standard Deviation | 15.96% | 14.34% | |
| Great Recession Return 11/07 - 2/09 | -45% | -38% | |
| Bond Bear Market Return 7/79 - 2/80 | 13% | 11% | |
| **Allocation During Retirement** | **Current** | **Balanced w/ Growth** | **13% Less Stock** |
| Percent Stock | 91% | 78% | |
| Total Return | 6.49% | 6.44% | |
| Standard Deviation | 15.96% | 14.34% | |
| Great Recession Return 11/07 - 2/09 | -45% | -38% | |
| Bond Bear Market Return 7/79 - 2/80 | 13% | 11% | |
| **Inflation** | **2.20%** | **2.20%** | |
| 📊 Investments | | | |
| **Total Investment Portfolio** | **$1,648,457** | **$1,648,457** | |
| **Total Investment Assets** | **$1,648,457** | **$1,648,457** | |
| 📊 Social Security | | | |
| **Social Security Strategy** | **At FRA** | **At FRA** | |
| **Kimberly** | | | |
| Filing Method | Normal | Normal | |
| Age to File Application | 67 | 67 | |
| Age Retirement Benefits Begin | 67 | 67 | |
| First Year Benefit | $27,406 | $27,406 | |

**See Important Disclosure Information section in this Report for explanations of assumptions, limitations, methodologies, and a glossary.**

# Glossary

**Asset Allocation**

Asset Allocation is the process of determining what portions of your portfolio holdings are to be invested in the various asset classes.

**Asset Class**

Asset Class is a standard term that broadly defines a category of investments. The three basic asset classes are Cash, Bonds, and Stocks. Bonds and Stocks are often further subdivided into more narrowly defined classes. Some of the most common asset classes are defined below.

### Cash and Cash Alternatives

Cash typically includes bank accounts or certificates of deposit, which are insured by the Federal Deposit Insurance Corporation up to a limit per account. Cash Alternatives typically include money market securities, U.S. treasury bills, and other investments that are readily convertible to cash, have a stable market value, and a very short-term maturity. U.S. Treasury bills are backed by the full faith and credit of the U.S. Government and, when held to maturity, provide safety of principal. (See the "Risks Inherent in Investing" section in this Important Disclosure Information for a summary of the risks associated with investing in cash alternatives.)

### Commodities

A commodity is food, metal, or another fixed physical substance that investors buy or sell, usually via futures contracts, and generally traded in very large quantities.

### Bonds

Bonds are either domestic (U.S.) or global debt securities issued by either private corporations or governments. (See the "Risks Inherent in Investing" section in this Important Disclosure Information for a summary of the risks associated with investing in bonds. Bonds are also called "fixed income securities.")

Domestic government bonds are backed by the full faith and credit of the U.S. Government and have superior liquidity and, when held to maturity, safety of principal. Domestic corporate bonds carry the credit risk of their issuers and thus usually offer additional yield. Domestic government and corporate bonds can be sub-divided based upon their term to maturity. Short-term bonds have an approximate term to maturity of 1 to 5 years; intermediate-term bonds have an approximate term to maturity of 5 to 10 years; and, long-term bonds have an approximate term to maturity greater than 10 years.

### Stocks

Stocks are equity securities of domestic and foreign corporations. (See the "Risks Inherent in Investing" section in this Important Disclosure Information for a summary of the risks associated with investing in stocks.)

Domestic stocks are equity securities of U.S. corporations. Domestic stocks are often sub-divided based upon the market capitalization of the company (the market value of the company's stock). "Large cap" stocks are from larger companies, "mid cap" from the middle range of companies, and "small cap" from smaller, perhaps newer, companies. Generally, small cap stocks experience greater market volatility than stocks of companies with larger capitalization. Small cap stocks are generally those from companies whose capitalization is less than $500 million, mid cap stocks those between $500 million and $5 billion, and large cap over $5 billion.

Large cap, mid cap and small cap may be further sub-divided into "growth" and "value" categories. Growth companies are those with an orientation towards growth, often characterized by commonly used metrics such as higher price-to-book and price-to-earnings ratios. Analogously, value companies are those with an orientation towards value, often characterized by commonly used metrics such as lower price-to-book and price-to-earnings ratios.

International stocks are equity securities from foreign corporations. International stocks are often sub-divided into those from "developed" countries and those from "emerging markets." The emerging markets are in less developed countries with emerging economies that may be characterized by lower income per capita, less developed infrastructure and nascent capital markets. These "emerging markets" usually are less economically and politically stable than the "developed markets." Investing in international stocks involves special risks, among which include foreign exchange volatility and risks of investing under different tax, regulatory and accounting standards.

**Asset Mix**

Asset Mix is the combination of asset classes within a portfolio, and is usually expressed as a percentage for each asset class.

**Bear Market Loss**

The Bear Market Loss shows how a portfolio would have been impacted during the Great Recession (November 2007 through February 2009) or the Bond Bear Market (July 1979 through February 1980). The Bear Market Loss shows: 1) either the Great Recession Return or the Bond Bear Market Return, whichever is lower, and 2) the potential loss, if you had been invested in this cash-bond-stock-alternative portfolio during the period with the lower return. See Great Recession Return and Bond Bear Market Return.

# Glossary

**Bear Market Test**

The Bear Market Test, included in the Stress Tests, examines the impact on your Plan results if a Bear Market Loss occurred this year. The Bear Market Test shows the likelihood that you could fund your Needs, Wants and Wishes after experiencing such an event. See Bear Market Loss.

**Bond Bear Market Return**

The Bond Bear Market Return is the rate of return for a cash-bond-stock-alternative portfolio during the Bond Bear Market (July 1979 through February 1980), the worst bear market for bonds since the Great Depression. Goal Planning & Monitoring shows a Bond Bear Market Return for your Current, Risk-based, and Target Portfolios, calculated using historical returns of four broad-based asset class indices. See Great Recession Return.

**Bypass Trust**

An estate planning device used to pass down assets after death without subjecting them to the estate tax.

**Cash Receipt Schedule**

A Cash Receipt Schedule consists of one or more years of future after-tax amounts received from the anticipated sale of an Other Asset, exercising of Stock Options grants, or proceeds from Restricted Stock grants.

**Concentrated Position**

A Concentrated Position is when your portfolio contains a significant amount (as a percentage of the total portfolio value) in individual stock or bonds. Concentrated Positions have the potential to increase the risk of your portfolio.

**Confidence Zone**

See Monte Carlo Confidence Zone.

**Current Dollars**

The Results of Goal Planning & Monitoring calculations are in Future Dollars. To help you compare dollar amounts in different years, we also express the Results in Current Dollars, calculated by discounting the Future Dollars by the sequence of inflation rates used in the Plan.

**Current Portfolio**

Your Current Portfolio is comprised of all the investment assets you currently own (or a subset of your assets, based on the information you provided for this Plan), categorized by Asset Class and Asset Mix.

**Fund All Goals**

Fund All Goals is one of two ways for your assets and retirement income to be used to fund your goals. The other is Earmark, which means that an asset or retirement income is assigned to one or more goals, and will be used only for those goals. Fund All Goals means that the asset or income is not earmarked to fund specific goals, and can be used to fund any goal, as needed in the calculations.

**Future Dollars**

Future Dollars are inflated dollars. The Results of Goal Planning & Monitoring calculations are in Future Dollars. To help you compare dollar amounts in different years, we discount the Future Dollar amounts by the inflation rates used in the calculations and display the Results in the equivalent Current Dollars.

**Great Recession Return**

The Great Recession Return is the rate of return for a cash-bond-stock-alternative portfolio during the Great Recession (November 2007 through February 2009), the worst bear market for stocks since the Great Depression. Goal Planning & Monitoring shows a Great Recession Return for your Current, Risk-based, and Target Portfolios, calculated using historical returns of four broad-based asset class indices. See Bond Bear Market Return.

**Inflation Rate**

Inflation is the percentage increase in the cost of goods and services for a specified time period. A historical measure of inflation is the Consumer Price Index (CPI). In Goal Planning & Monitoring, the Inflation Rate is selected by your advisor, and can be adjusted in different scenarios.

**Irrevocable Life Insurance Trust**

An irrevocable trust set up with a life insurance policy as the asset, allowing the grantor of the policy to exempt the asset away from his or her taxable estate.

**Liquidity**

Liquidity is the ease with which an investment can be converted into cash.

**Monte Carlo Confidence Zone**

The Monte Carlo Confidence Zone is the range of probabilities that you (and/or your advisor) have selected as your target range for the Monte Carlo Probability of Success in your Plan. The Confidence Zone reflects the Monte Carlo Probabilities of Success with which you would be comfortable, based upon your Plan, your specific time horizon, risk profile, and other factors unique to you.

Prepared for : Kimberly Nguyen
12/07/2015
Company: Raymond James
Prepared by: Dax Seale CFP®, CLU®, AAMS®
Page 18 of 20
RJA_(NGUYEN)_010966

# Glossary

**Monte Carlo Probability of Success / Probability of Failure**

The Monte Carlo Probability of Success is the percentage of trials of your Plan that were successful. If a Monte Carlo simulation runs your Plan 10,000 times, and if 6,000 of those runs are successful (i.e., all your goals are funded and you have at least $1 of Safety Margin), then the Probability of Success for that Plan, with all its underlying assumptions, would be 60%, and the Probability of Failure would be 40%.

**Monte Carlo Simulations**

Monte Carlo simulations are used to show how variations in rates of return each year can affect your results. A Monte Carlo simulation calculates the results of your Plan by running it many times, each time using a different sequence of returns. Some sequences of returns will give you better results, and some will give you worse results. These multiple trials provide a range of possible results, some successful (you would have met all your goals) and some unsuccessful (you would not have met all your goals).

**Needs / Wants / Wishes**

In Goal Planning & Monitoring, you choose an importance level from 10 to 1 (where 10 is the highest) for each of your financial goals. Then, the importance levels are divided into three groups: Needs, Wants, and Wishes. Needs are the goals that you consider necessary for your lifestyle, and are the goals that you must fulfill. Wants are the goals that you would really like to fulfill, but could live without. Wishes are the "dream goals" that you would like to fund, although you won't be too dissatisfied if you can't fund them. In Goal Planning & Monitoring, Needs are your most important goals, then Wants, then Wishes.

**Portfolio Set**

A Portfolio Set is a group of portfolios that provides a range of risk and return strategies for different investors.

**Portfolio Total Return**

A Portfolio Total Return is determined by weighting the return assumption for each Asset Class according to the Asset Mix.

**Probability of Success / Probability of Failure**

See Monte Carlo Probability of Success / Probability of Failure.

**Real Return**

The Real Return is the Total Return of your portfolio minus the Inflation Rate.

**Recommended Scenario**

The Recommended Scenario is the scenario selected by your advisor to be shown on the Results page, in Play Zone, and in the Presentation.

**Retirement Start Date**

For married couples, retirement in Goal Planning & Monitoring begins when both the client and spouse are retired. For single, divorced, or widowed clients, retirement begins when the client retires.

**Risk**

Risk is the chance that the actual return of an investment, asset class, or portfolio will be different from its expected or average return.

**Risk-based Portfolio**

The risk-based portfolio is the Model Portfolio associated with the risk score you selected.

**Safety Margin**

The Safety Margin is the hypothetical portfolio value at the end of the Plan. A Safety Margin of zero indicates the portfolio was depleted before the Plan ended.

**Standard Deviation**

Standard Deviation is a statistical measure of the volatility of an investment, an asset class, or a portfolio. It measures the degree by which an actual return might vary from the average return, or mean. Typically, the higher the standard deviation, the higher the potential risk of the investment, asset class, or portfolio.

**Star Track**

Star Track provides a summary of your Plan results over time, using a bar graph. Each bar shows the Monte Carlo Probability of Success for your Recommended Scenario, on the date specified, compared to the Monte Carlo Probability of Success for a scenario using all Target values.

**Target Band**

The Target Band is the portfolio(s) that could be appropriate for you, based upon the risk-based portfolio.

**Target Goal Amount**

The Target Goal Amount is the amount you would expect to spend, or the amount you would like to spend, for each financial goal.

# Glossary

**Target Portfolio**

Target Portfolio is the portfolio you have selected based upon your financial goals and your risk tolerance.

**Target Retirement Age**

Target Retirement Age is the age at which you would like to retire.

**Target Savings Amount**

In the Resources section of Goal Planning & Monitoring, you enter the current annual additions being made to your investment assets. The total of these additions is your Target Savings Amount.

**Time Horizon**

Time Horizon is the period from now until the time the assets in this portfolio will begin to be used.

**Total Return**

Total Return is an assumed, hypothetical growth rate for a specified time period. The Total Return is either (1) the Portfolio Total Return or (2) as entered by you or your advisor. Also see "Real Return."

**Wants**

See "Needs / Wants / Wishes".

**Willingness**

In Goal Planning & Monitoring, in addition to specifying Target Goal Amounts, a Target Savings Amount, and Target Retirement Ages, you also specify a Willingness to adjust these Target values. The Willingness choices are Very Willing, Somewhat Willing, Slightly Willing, and Not at All.

**Wishes**

See "Needs / Wants / Wishes".

RJA_(NGUYEN)_010968

## Plan Delivery Acknowledgement

This plan should be reviewed periodically to ensure that the decisions made continue to be appropriate, particularly if there are changes in family circumstances including, but not limited to an inheritance, birth of a child, death of a family member, or material change in incomes or expenses.

I (Kimberly Nguyen) have reviewed and accept the information contained within this plan and understand the assumptions associated with it. I believe that all information provided by me is complete and accurate to the best of my knowledge. I recognize that performance is not guaranteed and that all future projections are included simply as a tool for decision making and do not represent a forecast of my financial future.

Your advisor (Dax Seale CFP®, CLU®, AAMS®) will review this plan with you on a periodic basis to determine whether your stated goals and assumptions in this plan are still relevant. It is not expected that the plan will change frequently. In particular, short-term changes in the financial markets should not generally require adjustments to the plan. It is your obligation to notify all interested parties of any material changes that would alter the objectives of this plan. If all interested parties are not notified of any material changes, then the current plan document would become invalid.


_____
Client signature & date


_____
Advisor signature & date


_____
Delivery Date


**Notes**

We have prepared this plan based on information provided by you. We have not attempted to verify the accuracy or completeness of this information. As the future cannot be forecast with certainty, actual results will vary from these projections. It is possible that these variations may be material. The degree of uncertainty normally increases with the length of the future period covered.

Financial Advisor :     Dax Seale CFP®, CLU®, AAMS®


Plan Name : Kim's Financial Plan
Report Name : Kim's Financial Plan                                                                        12/07/2015

RJA_(NGUYEN)_010969

EXHIBIT 3

# Account Information and Client Agreement

## RAYMOND JAMES
### & ASSOCIATES, INC.
Member New York Stock Exchange/SIPC

**New Accounts**
**Service Center**
*eSign* / Scan / Fax

| 0 1 2 1 2 | REDACTED 6318 |
|---|---|
| Form # | Account # |

| REDACTED | REDACTED | |
|---|---|---|
| Branch # | FA # | Speed Dial # |

● **Open New Account**    ○ **Update Existing Account**

---

## Account Type and Registration

**Type** (Select one)   ○ Capital Access Account   ● Standard Account   ○ Direct Account

**Registration** (Select one below)

| | | | |
|---|---|---|---|
| ● Individual | ○ Tenants in Common | ○ LLC | ○ Trust |
| ○ Joint (WROS) | ○ Partnership | ○ Unincorporated Assoc. | ○ Estate |
| ○ Joint Tenants by Entirety | ○ Proprietorship | ○ UTMA/UGMA | ○ Guardianship |
| ○ Community Property | ○ Corporation | ○ Qualified Plan | ○ 529 Plan |
| ○ Other _____ | | | |

**Margin Requested** (If Yes, Initials Required)   ● No   ○ Yes

(Subject to Approval)

*JKN* ____ Client 1 Initials   _____ Client 2 Initials
_____ Client 3 Initials   _____ Client 4 Initials

---

## Account Information

**Complete Account Title:**

Kimberly Nguyen

**Relationship Link Name** (Branch Use Only):

**Related Accounts** (Branch Use Only):

---

## Account Owner 1 Information *(Tax Reporting Holder)*

| | Tenants in Common |
|---|---|
| Kimberly  Nguyen | % |

First Name, Middle Initial, Last Name **OR** Entity Name (Trust, Corporation)

Citizenship Status (**Select one below**):
● US Citizen   ○ Resident Alien   ○ Non-Resident Alien (W-8 Required)

Marital Status (**Select one below**):
○ Married   ● Single

| REDACTED | REDACTED | REDACTED |
|---|---|---|
| S.S. # (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) **OR** Tax ID # (55-5555555) | Date of Birth (MM-DD-YYYY) | E-mail Address |

○ Driver's License #  **OR**  ○ Passport ID # (optional)   Expiration Date   State/Country

| REDACTED | REDACTED | REDACTED |
|---|---|---|
| Mailing Address (If PO Box/APO/FPO, provide a physical address below) | City | State   Zip |

Legal Address   City   State   Zip

| REDACTED | REDACTED | |
|---|---|---|
| Name of Employer   ○ Retired  ○ Unemployed | Occupation (**most recent, if retired**) | |

REDACTED

Home Phone Number   Cell Phone Number   Work Phone Number

---

REDACTED **6318**

Account #

## Account Owner 2 Information

|  | Tenants in Common |
|---|---|
|  | % |

First Name, Middle Initial, Last Name **OR** Entity Name (Trust, Corporation)

Citizenship Status (**Select one below**):
○ US Citizen   ○ Resident Alien   ○ Non-Resident Alien (W-8 Required)

Marital Status (**Select one below**):
○ Married   ○ Single

S.S. # (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) **OR** Tax ID # (55-5555555)    Date of Birth (MM-DD-YYYY)    E-mail Address

○ Driver's License #  **OR**  ○ Passport ID # (optional)    Expiration Date    State/Country

Mailing Address (If PO Box/APO/FPO, provide a physical address below)    City    State    Zip

Legal Address    City    State    Zip

Name of Employer    ○ Retired   ○ Unemployed    Occupation (**most recent, if retired**)

Home Phone Number    Cell Phone Number    Work Phone Number

## Account Suitability

### Account Financial Information

**Combined Annual Income**
○ $0-$19,999
○ $20,000-$50,000
◉ $50,001-$100,000
○ $100,001-$200,000
○ $200,001-$500,000
○ $500,001-$1,000,000
○ Over $1,000,000

**Combined Net Worth**
*Excluding Personal Residence(s)*
○ $0-$19,999
○ $20,000-$50,000
○ $50,001-$100,000
○ $100,001-$250,000
○ $250,001-$500,000
○ $500,001-$1,000,000
◉ $1,000,001-$5,000,000
○ Over $5,000,000

### Investment Experience

*Provide your experience, if any, with the following investment types*

|  | None | Limited | Moderate | Extensive |
|---|---|---|---|---|
| **Equities** | ○ | ◉ | ○ | ○ |
| **Bonds** | ○ | ◉ | ○ | ○ |
| **Options/Futures** | ◉ | ○ | ○ | ○ |
| **Mutual Funds** | ○ | ◉ | ○ | ○ |
| **Annuities** | ◉ | ○ | ○ | ○ |
| **Margin Trading** | ◉ | ○ | ○ | ○ |

### Primary Objective and Associated Risk Tolerance

*Select only one Objective and Associated Risk Tolerance*

| Objective | Risk Tolerance | | |
|---|---|---|---|
| **Capital Preservation** | ○ Low | | |
| **Income** | ○ Low | ○ Medium | ○ High |
| **Growth** | | ◉ Medium | ○ High |
| **Speculation** | | | ○ High |

**Primary Time Horizon**
○ < 5 years    ○ 5 - 10 years    ◉ > 10 years

### Secondary Objective and Associated Risk Tolerance

*Select only one Objective and Associated Risk Tolerance*

| Objective | Risk Tolerance | | |
|---|---|---|---|
| **Capital Preservation** | ○ Low | | |
| **Income** | ○ Low | ◉ Medium | ○ High |
| **Growth** | | ○ Medium | ○ High |
| **Speculation** | | | ○ High |

**Secondary Time Horizon**
○ < 5 years    ○ 5 - 10 years    ◉ > 10 years

REDACTED **6318**
Account #

---

## Account Instructions  *(Please select one of the following options from each category below.)*

**Securities & Stock Dividend**

◉ Hold to Street Name / From Account

○ Direct Registration Service

**Cash Dividend**

◉ Hold in Account

○ Mail Check to address of record

○ Hold Principal
  Mail Dividends / Interest

**Funds / Cash Sweep**

○ Raymond James Bank Deposit Program (RJBDP)

◉ Raymond James Bank Deposit Program (RJBDP) with Client Interest Program (CIP)

○ Client Interest Program (CIP)

○ Eagle Class of JPMorgan Prime Money Market Fund (Receipt of prospectus acknowledged)

○ Raymond James Bank Deposit Program (RJBDP) with Eagle Class of JPMorgan
  Government Money Market Fund (Receipt of prospectus acknowledged)

○ Eagle Class of JPMorgan Tax Free Money Market Fund (Receipt of prospectus
  acknowledged)

○ Raymond James Bank, N.A. with Check Writing (With RPS approval only - Separate
  application required)

### Cost Basis Accounting Methods

| | Equities, Bonds & Options | Regulated Investment Companies (average cost eligible) | |
| --- | --- | --- | --- |
| | | Open-end mutual funds | Closed-end mutual funds, UITs, ETFs & Others |
| First in, First out | ◉ | ◉ | ◉ |
| Last in, First out | ○ | ○ | ○ |
| High cost in, First out | ○ | ○ | ○ |
| Minimum Tax | ○ | ○ | ○ |
| Average Cost | **N/A** | ○ | ○ |

---

## Tax Certification

**Tax Classification:** ◉ Individual/Sole Proprietor    ○ C-Corporation    ○ S-Corporation    ○ Partnership
*(required)*    ○ LLC C-Corporation    ○ LLC S-Corporation    ○ LLC Partnership    ○ Trust/Estate
○ Other _____

**Exemptions:**    Exempt payee code (if any): _____    Exemption from FATCA reporting code (if any): _____

**Under penalties of perjury I certify that:**

1) The number shown on this agreement is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and

2) I am not subject to backup withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3) I am a U.S. citizen or other U.S. person (as defined by IRS code), and

4) The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification Instructions: You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the agreement, but you must provide your correct TIN.**

---

## Capital Access Details *(Complete this section only if Capital Access Account is selected on Page 1.)*

**Type** (Select one):  ○ Capital Access    ○ Capital Access Premium

### Account Identification and Security

Information provided in this section will be used to protect you and the assets held in your Capital Access Account. You may be asked the following question when you call with inquiries about your account or for identification when transacting purchases with your VISA® Platinum debit card. All card holders will need this information; keep your account identification and security information in a safe place.

**Security Key** _____    (minimum of 3 characters/maximum of 8)

---

REDACTED 6318

Account #

## Capital Access Details

## Additional Card Holders (Listed on Account Registration)

Print Name *(if different from Legal Name)*
_____
(maximum of 21 characters, including spaces)

Print Name *(if different from Legal Name)*
_____
(maximum of 21 characters, including spaces)

## Additional Card Holders (Card Holder Only)

**For additional card holders not listed on the account registration:** I understand and agree to the terms and conditions in the Capital Access Account Agreement. I also understand that my authority is limited to the use of the Capital Access VISA® Platinum debit card.

Print Name _____  Social Security # _____

Print Card Name *(if different from above)* _____
(maximum of 21 characters, including spaces)

| Authorized VISA® Platinum debit cardholder signature | Date |
|---|---|
|  |  |

Print Name _____  Social Security # _____

Print Card Name *(if different from above)* _____
(maximum of 21 characters, including spaces)

| Authorized VISA® Platinum debit cardholder signature | Date |
|---|---|
|  |  |

## For Company or Trust

Double Embossed *(Optional)*
_____
(maximum of 21 characters, including spaces)

## Power of Attorney for Capital Access Features ONLY

I understand and agree to the terms and conditions in the Capital Access Account Agreement. A completed POA document is required, must include the signature of the Attorney-in-Fact and be accepted before authorization will take effect.

Print Name _____  Social Security # _____

| Authorized Attorney-in-Fact Signature | Date |
|---|---|
|  |  |

## Check Information

**Check Imprint:**
*(Information appears in upper left corner of check)*

**Shipping Method:**
○ Regular                    ○ Express Delivery
(5-7 business days)          (except weekends)

**(maximum of 35 characters per line)**

*Additional charges apply for Express shipping. No charge for Regular Delivery.*

**Alternate Shipping Address:**

Check Type _____

Check Design _____

*Wallet, Private Design checks are provided at no charge. Additional check types and designs are available for an additional fee.*

City _____  State _____  Zip _____

Country _____

# of Checks _____  Starting Check # _____
(501-9999)

Phone # _____

REDACTED **6318**
Account #

## Client Acknowledgments and Signatures

| Account Owner 1 | | Account Owner 2 | | |
|---|---|---|---|---|
| ○ I am   ● I am not | | ○ I am   ○ I am not | | an associate person or related to an associate person within the Raymond James Financial Group. Specify to whom and relationship: |
| ○ I am   ● I am not | | ○ I am   ○ I am not | | an employee of or related to an employee of any exchange or a member firm of any exchange or member of the Financial Industry Regulatory Authority (FINRA), or an officer of a bank, trust company, or insurance company. Employees/related person employer: |
| | | | | in the position of: _____ |
| ○ I am   ● I am not | | ○ I am   ○ I am not | | a director, corporate officer, or a 10% shareholder of a publicly traded company. Indicate the name of the company and relationship: |
| ○ You may   ● You may not | | ○ You may   ○ You may not | | disclose my name, address and security position to requesting companies in which I hold securities under rule 14b-1(c) of the Securities and Exchange Commission. |

**By signing below, I acknowledge that I have received, read, understand, and agree to abide by all the terms and conditions set forth in the Client Agreement and Raymond James Capital Access Account Agreement incorporated herein by this reference. I also recognize that this Agreement contains a predispute arbitration clause located on page 9, paragraph 10 and other provisions affecting my rights.**

### ***I have received the Client Agreement for my records.***

**Raymond James & Associates, Inc. is affiliated with Raymond James Bank, N.A. Unless otherwise specified, products purchased from or held at Raymond James & Associates Inc., are not insured by the FDIC, are not deposits or other obligations of Raymond James Bank, N.A., are not guaranteed by Raymond James Bank, N.A., and are subject to investment risks, including possible loss of the principal invested.**

*The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.*

| Account Owner 1 Signature | Date | Account Owner 3 Signature (if applicable) | Date |
|---|---|---|---|
| *DocuSigned by:* Kimberly [signature] | 1/29/2016 | | |
| Account Owner 2 Signature (if applicable) | Date | Account Owner 4 Signature (if applicable) | Date |
| | | | |
| Financial Advisor Signature | Date | Branch Manager Signature | Date |
| *DocuSigned by:* Dax Seale | 1/29/2016 | *DocuSigned by:* Paul Elger | 1/29/2016 |
| 114A3EA2DA8F460... | | 5761997399AC4B4... | |



**RAYMOND JAMES**
& A S S O C I A T E S , I N C .
Member New York Stock Exchange/SIPC

# Client Agreement

I/we acknowledge and agree that my/our relationship with Raymond James & Associates, Inc. is governed by the provisions of this agreement. Throughout this agreement, "I", "me", "we", "us", "my" and "our" refer to the undersigned and any other actual or beneficial owner of property in this account. "You", "your", "the Firm" and "Raymond James" refer to Raymond James & Associates, Inc. and the introducing broker, if applicable. The terms "property" and "securities" mean securities of all kinds, monies, options and all other property dealt in by brokerage firms.

**Applicable Regulations**
(a) I understand and agree that every transaction in my account is subject to the rules or customs in effect at the time of the transaction which, by the terms of the rule or custom, applies to the transaction. These rules or customs include state and federal laws, rules and regulations established by state or federal agencies, the Constitution, rules, customs and usages of the applicable exchange, association, market or clearinghouse or customs and usages of individuals transacting business on the applicable exchange, market or clearinghouse.

(b) If this agreement is incompatible with any rule or custom, or if a rule or custom is changed, this agreement will be automatically modified to conform to the rule or custom. The modification of this agreement shall not affect any of its other provisions.

**Trading Authorizations**
I understand that you do not provide any warranty as to the availability, accuracy, completeness, timeliness, correct sequencing of suitability for the particular purpose of any market data provided to my advisors or to me.

**Orders for Delivery and Settlement**
(a) I will designate each order to sell as a "short" sell order or a "long" sell order. A "short" sale means the sale of a security not owned by me. You may, at your sole discretion and without prior notice to me, cover any short sale in my account. I understand that "cover" means the purchase, at the market price, of securities that were previously sold short. When I designate a sale as "long", I am promising to you that I own the security and promising that, if the security is not in your possession when I place the sale order, I will deliver the security to you by the settlement date. If I fail to deliver the security to you by the settlement date, you may purchase the security, at the market price, for my account and hold me responsible for any loss, commission and/or fees.

(b) When I order the purchase of a security, I will make payment to you on or before the settlement date. If I fail to make payment by the settlement date for securities purchased, I authorize you to, at your sole discretion and without notice to me, sell the purchased security or any other securities in my accounts to satisfy the debt and I understand that I will be solely responsible for any resulting loss. Alternatively, if I fail to pay for a security purchased by me by the settlement date, I understand that my account can be charged a late fee.

**Fees and Charges**
I understand that I will be charged commissions for my orders to buy or sell securities and/or other fees and I understand that your commission and fee rates may be changed with thirty (30) days written notice. I agree to pay the commission and/or fees at the rates in effect at the time. If you must take action against me to collect any outstanding balances or for any other reason relating to my account(s), I agree to pay all costs, including attorney's fees, to do so.

In addition, any fees or expenses for legal and/or accounting services, both internal and external, rendered to Raymond James and Associates, or one of its affiliated entities, in connection with my account shall be charged to and paid by me or charged to and deducted from my account.

**Loans and Collateral**
This section applies only to margin, Capital Access Accounts, or if there is a deficit in your account. (a) You may make a loan to me at any time and in any amount you choose, and I understand that any transaction or event resulting in a negative balance in my account acts as a request from me to you for a loan. I understand that you are not obligated to make any loan to me and you may alter the collateral requirements or conditions for loans at any time with or without prior notice to me. I agree to pay interest on any loan or account balance at the rate specified in your Statement of Credit Terms, a copy of which will be sent to me. I understand that from time to time you may change your Statement of Credit Terms, including the interest rate, and I agree to be bound by any revision from its effective date. For purposes of this agreement the legal and statutory rate of interest shall be the rate specified in your Statement of Credit Terms.

(b) As collateral for all loans or any balance due on my account and subject to applicable law, I grant you a security interest in all property held by you or in any of my accounts (which accounts shall each constitute a securities account), whether the property is in your possession now or comes to be in the future. If it is necessary for you to enforce your security interest by the sale of my property, including but not limited to, certificated and uncertificated securities, commercial paper, corporate debt obligations, mutual funds, U.S. government, agency, state, and municipal obligations, documents, instruments, general intangibles, deposit accounts, and cash, including any of the foregoing held in book entry form, any securities entitlements, any interests in the entries on the books of any securities intermediaries, and any other investment property and financial assets held therein, and any certificates evidencing any of the foregoing together with all renewals, additions, replacements, substitutions, conversions, splits, reductions, subscription rights, dividends, cash warrants, options, distributions of any kind, increases, or profits, and any and all proceeds of any of the

foregoing, and you may select which property is to be sold and at what time and price it will be sold and I will not hold you liable for your decisions.

(c) I understand that when I have a loan with you the property in my account or held by you may be used by you as security (either separately or together with other property) for loans you have or may incur in the future with third parties.

(d) I understand that any loan or any balance due on my account is payable on your demand, and you may demand payment of the full amount of any loan or balance due on my account at any time. If any dividend, interest, distribution or similar payment is made to my account, you are authorized to apply the payment to any balance due in my account but not obligated.

(e) I understand that if a cash debit is generated in my account, and I have margin, you are authorized to cover all or a portion of the cash debit by increasing the debit in my margin account.

(f) I understand that my securities may be loaned out to you or loaned out to others.

**Callable Securities**
The allocation procedures of callable securities may be accessed at http://www.raymondjames.com or will be provided as a hard copy upon request.

**Authorization: Accuracy of Reports**
(a) You are authorized to act on oral instructions concerning my account and you are not liable for acting on any false oral instructions if the instructions reasonably appeared to you to be genuine. I authorize you to electronically record any and all conversations between me (or my representative) and you.

(b) I will notify you of any error in a confirmation of order within 4 days of when it is mailed to me. I will notify you of any error in a statement within 10 days of when it is mailed to me. If I do not give you written notification of an error in the time specified above, then I accept the confirmation or statement as correct and I will not later claim the confirmation or statement is incorrect or the transactions shown were unauthorized. I understand that all mail will be sent to the address shown on my New Account Agreement and I will be responsible for receiving mail at that address, unless I give you written notice of a change in address. Clients who elect dividend reinvestments (DRIP) or who establish mutual fund periodic payment plans such as Periodic Investment Plans (PIP), Systematic Withdrawal Plans (SWP) or Periodic Exchange Plan (PEP) through Raymond James will not receive trade confirmations when the transaction is executed. I will instead receive confirmation of the transactions on my monthly statement. I understand that Raymond James reserves the right to determine what securities are available for the DRIP and that if there are any material changes to the overall dividend reinvestment program, Raymond James will notify me.  If I wish to make changes to my DRIP election, I understand those changes must be made at least two business days prior to the dividend payment date and that any changes made after that time will be applied to the next dividend payment.  I understand that when I exit a position on which I have elected the DRIP, the DRIP feature is automatically removed, but can be restated by contacting my financial advisor.  I may contact my financial advisor to obtain transaction details as early as one business day after my transaction occurs pursuant to my DRIP election. By signing the Account Information and Client Agreement, I am authorizing my financial advisor to take my verbal instructions.

(c) During the period I maintain an account with you or thereafter, you are authorized to obtain credit reports on me from any credit reporting agency, at your expense. If you request me to do so, I will sign a separate authorization allowing the release of credit information to you.

**Authorization to Liquidate Account and Collateral**
Upon the death of any of us, or if you otherwise feel it is necessary you may cancel any unexecuted order and you may also purchase securities to cover the sale of securities or sell securities to satisfy any debt. The decision to cancel an order or buy or sell securities in my account is solely at your discretion and the sale or purchase may be performed in any manner you feel reasonable. Each of our estate(s) and each survivor will be liable to you for the full amount of any debt or loss resulting from the completion of transactions initiated prior to your receipt of a written notice of death or incurred in the liquidation of the account or in the adjustment of interests of the respective parties. Any debt or lien assessed against the account following the death of any of us shall be charged fully against the interests of the survivor(s) and the estate of the decedent. This section does not release the decedent's estate from any liability provided in the agreement.

**Introduced Accounts**
I agree that if you are acting as a clearing broker for transactions on my account, you are not responsible for the conduct, representations or recommendations of the introducing broker or its agents.

If you are carrying the account of the undersigned as clearing broker by arrangement with another broker through whose courtesy the account of the undersigned has been introduced to you, then until receipt from the undersigned of written notice to the contrary, **you may accept from such other broker, without inquiry or investigation by you (a) orders for the purchase or sale in said account of securities** and other property on margin or otherwise, **and (b) any other instructions concerning said account.** You shall not be responsible or liable for any acts or omissions of such other broker or its employees.

**Joint Accounts**
(a) If this is a Joint Account, we agree that each of us has the authority to act on behalf of all account owners to: order any transaction involving the account, including transactions that result in a negative account balance; receive any property in the account, including cash withdrawals; receive any communications concerning the account including confirmations and statements; and make or agree to any changes in the account or this agreement, including closing the account. You are not required to verify with other account owners the authority for any instructions received from one of us and you do not need to give notice of any transaction to any owner who did not order the transaction. Each and every account owner shall be individually liable for the full amount of any loan or balance due on this account.

(b) If one of us dies, the survivor(s) will give you immediate written notice of the death of any of us.

**Binding on Successors**
I understand and agree that this agreement will be binding on my successors (including my executor, heirs or assignees) and I will notify any successor of the agreement's provisions.

**Waiver and Modification**
I understand that your failure to exercise any right granted by this agreement or to insist on my strict compliance with any obligation under this agreement will not be considered a waiver of that right or obligation. I also understand if you furnish me with notice on one occasion, you are not obligated to provide me with notice in the future. I understand that no provision of this agreement can be waived or modified unless it is done in writing and signed by your Treasurer, Corporate Counsel or Compliance Director. I further understand that you may modify and amend this agreement upon thirty (30) days written notice to me, and my acceptance of such amendment will be deemed effective by my continued use of the services of the account.

**Severability**
If any provision of this agreement is deemed to be unenforceable for any reason, this will not affect the validity and enforceability of any other provision of this agreement.

**Termination**
You have the right to terminate any of my accounts, including multiple owner account(s), at any time by notice to me.

**Unclaimed Property**
In the event of the abandonment of this account, Raymond James will initiate an escheatment process in accordance with the applicable laws.

**Uncashed Client Checks**
Client checks that are not cashed within 120 days of issuance (90 days for standard check age plus 30 days hold period) will be redeposited to the originating client account, unless said check is for a de minimus amount (currently $20). If the amount is less than the de minimus amount, the uncashed funds are placed in payable account for potential escheatment. This policy remains in effect and notification is hereby provided in accordance with interpretative guidance under Securities Exchange Act Rule 17AD-17.

**Raymond James Cash Sweep Programs**
AMENDMENTS TO THE RAYMOND JAMES BANK CASH SWEEP PROGRAMS - Raymond James may modify or amend the terms of the Cash Sweeps Programs at any time in its sole discretion by providing 30 days notice to you, except in the instances further described in the document titled *Your Rights and Responsibilities as a Raymond James Client*, which is available online at http://www.rjf.com/billofrights/index.htm.

Uninvested cash balances in my account(s) can earn income through several options including: Raymond James Bank Deposit Program (RJBDP), Client Interest Program (CIP), Eagle Class of JPMorgan Prime Money Market Fund, Eagle Class of JPMorgan Government Money Market Fund, and Eagle Class of JPMorgan Tax Free Money Market Fund. All of these options, including their terms and conditions, are further described in the document titled *Your Rights and Responsibilities as a Raymond James Client*, which is available online at http://www.rjf.com/billofrights/index.htm. If I choose RJBDP I acknowledge that (i) I am solely responsible to monitor the total amount of deposits I have at each Bank in order to determine the extent of FDIC insurance coverage available to me, and (ii) Raymond James is not responsible for any insured or uninsured portion of my deposits at any of the Banks.

**Extraordinary Events**
You shall not be liable for losses caused directly or indirectly by any condition not within your exclusive control, including government restrictions, exchange or market rulings, suspension of trading, war, strikes or extreme market volatility or trading volumes.

**Restrictions**
You may, in your sole discretion, prohibit or restrict trading of securities, substitution of securities, or disbursements in any of my accounts.

**Choice of Law**
This agreement and any accounts opened hereunder shall be construed, interpreted and the rights of the parties shall be determined in accordance with the internal laws of the State of Florida (without referencing Choice of Law provisions of Florida or any other state).

**My Representations**
I represent that I am of the age of majority according to the laws of my state of residence. I further represent that I am not an employee of any exchange or a member firm of any exchange or member of the Financial Industry Regulatory Authority. ("FINRA"), or of a bank, trust company or insurance company unless I notify you to that effect. If I become so employed, I agree to notify you promptly. I also represent that no persons other than those signing this agreement have an interest in the account.

**Right to an Attorney**
(a) I understand that when I sign the Client Agreement, this Client Agreement becomes a legally binding contract between you and me. I also understand that this document may alter the rights I might have and may create responsibilities I might otherwise not have had.

(b) I understand that I may, if I wish, consult with an attorney before I sign the Client Agreement and enter into this agreement. In connection with entering into this agreement, you are representing your interests, and not mine. Therefore, to the extent I do not understand any provision of this agreement or its effect, I understand that I should seek the independent advice of an attorney.

**Mutual Fund Networking**
Networking is an automated communication system used to transmit information between the mutual fund and the broker/dealer, allowing us to reflect fund records on the client brokerage statement. All mutual fund positions will automatically be networked, if eligible, unless we receive written instructions from you specifically stating otherwise.

**Payment for Order Flow**
(a) Raymond James may, from time to time, receive payment for order flow. Order flow payment is compensation received as an incentive to direct transactions to various markets. This compensation is received in a number of ways, including direct cash payment ranging from a fraction of a cent to 2.5 cents per share, estimated to equal approximately $1.0 million annually. In certain instances, reduced transaction fees are provided by various exchanges. While there is no actual agreement, oral or written, Raymond James believes that it is receiving business from specialists at various exchanges as a result of the transaction volume directed to them. Additionally, Raymond James acts as a market maker in a number of Over-The-Counter (OTC) securities. As a result of orders directed to these various markets, trading profits or losses may be generated.

(b) New York Stock Exchange (NYSE) Rule 108(a) allows a specialist to trade on parity with orders in the crowd when the specialist is establishing or increasing its position, as long as floor brokers representing orders in the crowd do not object to such practice. If we or our organization object to a specialist trading on parity with our order to establish or increase its position, the specialist would be obligated to honor such a request and refrain from trading on parity. Please note that we may object to a specialist trading on parity with our order by communicating our objection to our Raymond James representative. Unless we inform you otherwise, Raymond James will handle our orders as if we have no objection to the specialist trading on parity with our order.

(c) Raymond James' policy is to direct orders, based upon a number of factors and absent specific routing instructions from us, to the market center where it believes that the customer receives the best execution. The potential for receipt of order flow payment, or trading profits, is not a factor in this decision. Raymond James believes, based upon prior experience, that Raymond James' order routing practice provides opportunity for the orders to be executed at prices better than national best bid or best offer.

(d) Raymond James' ongoing review of the markets used allows Raymond James to keep Raymond James' commissions competitive, in addition to ensuring the best execution services for Raymond James' clients.

**Arbitration Disclosures**

**This Agreement contains a predispute arbitration clause. By signing an arbitration agreement the parties agree as follows:**

**(1) All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**

**(2) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**

**(3) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.**

**(4) The arbitrators do not have to explain their reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.**

**(5) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**

**(6) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.**

**(7) The rules of arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.**

**No person shall bring a putative or certified class action to arbitration, nor seek to enforce any predispute arbitration agreement against any person who has initiated in court a putative class action or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (i) the class certification is denied or (ii) the class is decertified or (iii) the client is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.**

### Arbitration and Dispute Resolution
(a) Any dispute or controversy, either arising in the future or in existence now, between me and you (including your officers, directors, employees or agents and the introducing broker, if applicable) will be resolved by arbitration conducted before the Financial Industry Regulatory Authority (FINRA), subject to the jurisdiction of the Securities and Exchange Commission (SEC) pursuant to the FINRA Arbitration Code, and in accordance with the Federal Arbitration Act (Title 9 of the United States Code).

(b) A court of competent jurisdiction may enter judgment based on the award rendered by the arbitrators.

(c) Nothing in this agreement shall be deemed to limit or waive the application of any relevant state or federal statute of limitation, repose or other time bar.

### Business Continuity Planning - Disclosure Statement
Raymond James has established the Business Continuity Planning (BCP) Department, a dedicated team of professionals that oversees the Firm's business continuity management strategy. The BCP Department works closely with business units and the Information Technology Department to employ a standardized framework for building, maintaining, and testing business continuity plans. The plans are created using an all hazards approach, including baseline requirements and strategies that address incidents of varying scope. Plans are designed to allow for continued operations of critical business functions, which include providing clients with prompt access to their funds and securities.

### Incident Management
A Corporate Crisis Management Team (CCMT) comprised of senior management representing key areas of the Firm has been established to manage incidents that might impact the Firm's associates and clients. The CCMT will assess and direct the Firm's response to an incident, ensuring the safety and security of all associates and continuity of critical processes. As part of the overall BCP strategy, Raymond James maintains geographically dispersed operational locations to diminish risks posed by local and regional disruptions. In the event of an emergency at the home office, local staff is available at off-site locations to continue production work.

### Technology and Data Recovery
Raymond James employs a dual data center strategy in which critical client data and systems are replicated to an alternate location ensuring accessibility. In addition, data retention and backup procedures are in place, including tape backup and offsite storage, offering a tertiary layer of data accessibility should the need arise. It is the Firm's goal to recover from an event requiring a processing switch to the alternate site within 12 hours or less. Due to the unpredictable nature of events causing significant business disruptions, the Firm cannot guarantee that systems will always be available or recoverable after such events.

### Contacting Raymond James
Clients can obtain information regarding the status of their accounts and access to their funds and securities by contacting their financial advisor. If their financial advisor is unavailable, clients can contact Client Services at 1-800-647-7378. Up-to-date information regarding the operating status of the Firm can be obtained from http://www.raymondjames.com.

The Firm's business continuity plans are subject to modification. The BCP Disclosure Statement, including any updates or amendments, is available at http://www.raymondjames.com/business_continuity_planning.htm. Hard copies can be obtained upon request by contacting your Raymond James representative.

## Electronic Fund Transfers

In addition to the provisions of the Client Agreement, the below are applicable to electronic fund transfers ("EFTs") that credit or debit my account and that are subject to Regulation E, the Electronic Fund Transfer Act.   For purposes of these disclosures, Raymond James' business days are Monday through Friday, excluding holidays. For EFTs related to a Capital Access Account, I will refer to my Raymond James Capital Access Account Agreement and Raymond James Capital Access Account Check & VISA® Platinum Card Agreement.

I may arrange to have deposits made to my account or funds transferred into my account and may also arrange to have charges made to my account or funds transferred out of my account.  I also agree that payment for transfers may be made solely by reference to the account number of the recipient and that Raymond James is not obligated to determine whether a discrepancy exists between the name and the account number shown on the transfer information.  If a preauthorized EFT is rejected for insufficient funds, I may be charged a $20.00 fee. If Raymond James does not complete a transfer to or from my account on time or in the correct amount according to Raymond James' agreement with me, Raymond James will be liable for my losses or damages. However, there are some exceptions. Raymond James will not be liable, for instance, (i) if, through no fault of Raymond James, I do not have enough money in my account to make the transfer; (ii) if circumstances beyond Raymond James' control (such as fire or flood) prevent the transfer, despite reasonable precautions that Raymond James has taken; or (iii) there may be other exceptions stated in Raymond James agreement with me. Additionally, Raymond James will not be responsible or liable for any consequential, incidental, exemplary, special, punitive, or indirect damages I may suffer as a result of Raymond James' failure to complete a transfer to or from my accounts on time or in the correct amount, or any funds that are otherwise improperly transferred.

### Preauthorized EFTs

If I have instructed Raymond James to make regular EFTs out of my account, I may stop such payments by contacting my financial advisor, writing to Raymond James at the address located on my account statement, or contacting Client Services at 800-647-7378 no later than three business days before the scheduled date of the EFT. Failure to provide correct and complete information may make it impossible for Raymond James to stop the scheduled transaction.  If I instruct Raymond James to discontinue the scheduled EFT and provide correct and complete information at least three business days or more before the transfer is scheduled and Raymond James fails to stop such payment, Raymond James may be liable for my damages.  Raymond James may require that written confirmation of a verbal stop payment be provided to it within fourteen (14) days of the date of any telephone stop-payment order.

### Unauthorized EFTs

Raymond James will make available to me an account statement provided there is account activity (if there is no account activity, a statement will be available quarterly). I am responsible for reviewing this statement each month and notifying Raymond James immediately if there are any unauthorized EFTs. Raymond James must hear from me no later than sixty (60) days after Raymond James sends me the first statement on which the error or problem appears. I could lose the entire value of my account, including my available margin, through any unauthorized transfer, so it is important that I notify you immediately if I see an unauthorized EFT in my account activity. If I tell Raymond James within two (2) business days after I discover the unauthorized use, my liability is no more than $50.00 should someone access my account without my permission. If I do not notify Raymond James within (2) business days after I learn of such loss or theft, and Raymond James can prove that it could have prevented unauthorized use if I had told it, I could be liable for as much as $500.00. If my monthly statement contains EFTs that I did not authorize, I must notify Raymond James at once. If I do not notify Raymond James within sixty (60) days after the statement was sent to me, I may lose any amount transferred without my authorization after the sixty (60) days, if Raymond James can prove that it could have prevented someone from taking the money if I had told you in time. I am responsible for reviewing my monthly statements and safeguarding my account information.  If a good reason, such as a long trip or hospital stay, kept me from telling Raymond James, it may extend the time periods reasonably.

### EFT Error Resolution

If I notice an error or have a question about my EFT, I will call or write to Raymond James as soon as I can using the telephone number or address located on my account statement, or contact my financial advisor if I think my statement is incorrect or if I need more information about a transfer listed on the statement. Raymond James must hear from me no later than sixty (60) days after Raymond James sent the first statement on which the problem or error appeared.  I understand I must provide Raymond James with: (i) my name and account number (if any); (ii) a description of the error or the transfer I am unsure about, and explain as clearly as I can why I believe it is an error or why I need more information; and (iii) the dollar amount of the suspected error. If I tell Raymond James orally, it may require that I send the Firm my complaint or question in writing within ten (10) business days. If Raymond James does not receive my written complaint or question within ten (10) business days, Raymond James may not credit my account.

Raymond James will determine whether an error occurred within ten (10) business days after it hears from me and will correct any error promptly. If Raymond James needs more time, however, it may take up to forty-five (45) days to investigate my complaint or question. For errors involving new accounts, point-of-sale, or foreign-initiated transactions, Raymond James may take up to ninety (90) days to investigate my complaint or question. For new accounts, Raymond James may take up to twenty (20) business days to credit my account for the amount I think is in error. Raymond James will tell me the results within three (3) business days after

completing its investigation. If Raymond James decides that there was no error, it will send me a written explanation. I may ask for copies of the documents that Raymond James used in its investigation.

**EFT Disclosure of Information**
Raymond James may disclose information to third parties about my account or the transfers I make: (i) where it is necessary for completing transfers; (ii) in order to verify the existence or condition of my account for a third party, such as a credit bureau or merchant; (iii) in order to comply with laws, regulations, government or regulatory agency or court orders; (iv) if I give Raymond James my written permission; or (v) as otherwise disclosed in Raymond James' privacy policy.

**Important Information About Procedures for Opening a New Account**
To assist the government in its efforts to fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account, or who has the ability to transact, control, influence or manage the account, whether directly or indirectly. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license, other government-issued photo identification, or other identifying documents. If you are opening an account on behalf of an entity, we will also ask for the entity's legal name, address, tax identification number and other information that will allow us to identify it. We may also ask for copies of business licenses or other documents to evidence the existence and good standing of the entity.

## Raymond James Capital Access Account Agreement

This agreement, including the terms and conditions provided by the Raymond James Capital Access Account Check & VISA® Platinum Card Agreement and its accompanying financial services, sets forth the terms and conditions governing the relationship between Raymond James and its affiliates and the person(s) signing this document (hereinafter referred to as "the client").

Upon opening a Capital Access Account, Raymond James may provide the client with personalized checks and the client may apply for a Capital Access VISA Platinum debit card (the "Card") issued through Raymond James Bank, N.A. A Personal Identification Number ("PIN") will be available to the client for use in conjunction with accessing the Capital Access Account.

In return for these and other services, the client understands and agrees to pay certain fees, including an annual Capital Access Account membership fee. All fees will automatically be charged to the client's account. The client further understands that any additional features selected could incur additional costs.

The client agrees to write checks on a Raymond James Capital Access Account maintained at the Banking Vendor and may use these checks only in conjunction with his or her Capital Access Account and only amounts within authorized limits. The client also understands that Raymond James may reasonably withhold access to his or her funds until it is satisfied that checks placed into the client's account have been collected. Raymond James may satisfy amounts that are owed by the client in connection with his or her Capital Access Account in the following order of priority: from available Client Interest Program ("CIP"), Raymond James Bank Deposit Program (RJBDP), Eagle Class of JPMorgan Prime Money Market Fund, Eagle Class of JPMorgan Government Money Market Fund, or Eagle Class of JPMorgan Tax Free Money Market Fund, if any, held in the account, and should these sources prove insufficient, from a margin loan to the client within the available margin loan value of securities in the client's account (provided this option was chosen and the account was approved for margin). Moreover, the client authorizes the Banking Vendor to honor checks (a) bearing only one signature and (b) bearing a signature with an approved name, a middle initial or a name deleted or added if the Banking Vendor otherwise reasonably believes the signature to be authorized.

The client understands that the Card will allow card transactions to the "Authorization Limit" as defined in the Raymond James Capital Access Account Check & VISA Platinum Card Agreement. The client agrees to have sufficient available assets to make payment in full for card transactions as they become available and understands that if he or she has insufficient available assets the card may be suspended or canceled. The client also agrees that the use of any card in connection with his or her Capital Access Account will also be governed by the terms and conditions contained in the Raymond James Capital Access Account Check & VISA Platinum Card Agreement that they will receive after the Card application is accepted by Raymond James Bank, N.A. and the Banking Vendor.

The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy clients and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**Account Description**
The Capital Access Account integrates a conventional securities account with a cash management account, which provides a VISA Platinum debit card and check writing services. As part of that account, cash balances awaiting investment will earn interest daily in one or more of the following options: Raymond James Bank Deposit Program (RJBDP), Client Interest Program (CIP), Eagle Class of JPMorgan Prime Money Market Fund, Eagle Class of JPMorgan Government Money Market Fund and Eagle Class of JPMorgan Tax Free Money Market Fund.

REDACTED

**Termination of a Capital Access Account**
The client's participation in the Capital Access Account, or any feature offered in connection with the account, may be terminated at any time by Raymond James or the client. The client, however, shall remain responsible for authorized charges arising before or after termination.

**Credit Reports**
The client authorizes Raymond James to request a consumer report about him or her from a reporting agency for the purposes of considering the application in the Capital Access Account, reviewing or collecting any account opened for the client, or for any other legitimate business purpose. Upon the client's written request, Raymond James will inform the client of the name and address of each consumer-reporting agency from which it obtained a consumer report, if any, in connection with the client's application or accounts.

**Liability**
The client agrees that he or she will be personally liable for, and will indemnify Raymond James, Raymond James Bank, N.A. and the Banking Vendor, against any losses in connection with any and all Capital Access transactions (including securities transactions, use of the check writing privilege, the Card and the line of credit), effected by any person signing the Capital Access Account Application or any person to whom the client gives written authority to use his or her Capital Access Account.  The client also agrees that he or she will be personally liable for, and will indemnify Raymond James, Raymond James Bank, N.A. and the Banking Vendor, against any losses in connection with the use of signature stamps, preprinted check stock with laser signature, or any other form of facsimile signature.

The client also agrees that no card(s) or checks issued in connection with his or her Capital Access Account can be used directly to purchase securities or any other products or services available through Raymond James or our correspondents.

The client shall at all times be liable for the payment of any amount advanced, any debit balance or other obligations owing in any of his or her accounts with Raymond James, and the client shall be liable to Raymond James for any deficiency remaining in such account(s) in the event of a liquidation thereof, in whole or in part, by the client or Raymond James. The client shall make payments of any such debit balance, obligation, money deficiency, indebtedness, including interest and commissions, upon demand, and any costs of collection, including attorney's fees. It is further understood that Raymond James may request from any service provider or their successor, copies of checks, and/or Visa or Bill Payment drafts processed from the client's Capital Access Account.

**Additional Terms and Conditions**
The client hereby requests Raymond James to open cash, margin and/or short accounts, the Banking Vendor to issue the checks and Raymond James Bank, N.A. to issue the VISA Platinum debit card(s) in the name(s) set forth on this application. The client agrees to be bound by the terms and conditions of the aforesaid account as currently in effect and as amended from time to time.

**For Joint Accounts:** This application is made by both clients, as signed, and if approved, account terms and conditions will apply to both clients and both will be jointly and individually liable for any amounts due at any time. Both clients will be bound by their instructions regarding their account, checks or VISA Platinum debit card(s), if applicable, given either jointly or individually.

Raymond James Bank, N.A. and the Banking Vendor reserve all of its rights in connection with the issuance, processing or termination of VISA Platinum debit card(s) and checks.

**For Uniform Transfers to Minors Act (UTMA) and Uniform Gifts to Minors Act (UGMA):** The Custodian certifies that any and all transactions effectuated and instructions given on the UTMA or UGMA Account will be in full compliance with the Uniform Transfers to Minors Act or Uniform Gifts to Minors Act.  Applicable law authorizes the Custodian to make distributions or transfers of the UTMA or UGMA Account funds, by check, debit card, credit card, or other means (including account-to-account transfer(s)) to and for the benefit of the minor.  Raymond James shall have no responsibility to assure the proper application of UTMA or UGMA Account funds, securities or other assets by the Custodian.

The Custodian shall indemnify and defend Raymond James against any liability, loss, damages (including punitive damages), claim, settlement payment, cost and expense, interest, award judgement, diminution in value, fine, fee, and penalty, or other charge (including reasonable attorney's fees) arising out of or relating to the following: (i) the act or omission of Raymond James pursuant to the instructions provided by the Custodian and/or the authorization in this Raymond James Capital Access Account Agreement; (ii) any misrepresentation or breach of this Raymond James Capital Access Account Agreement or (iii) this Raymond James Capital Access Account Agreement and the trasactions contemplated by it. This indemnity survives the termination of this Raymond James Capital Access Account Agreement and the closing of the UTMA or UGMA Account.

| FACTS | WHAT DOES RAYMOND JAMES DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|

| | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security number and investment experience<br>• Assets and income<br>• Account balances and account transactions<br><br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
|---|---|

| | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Raymond James chooses to share; and whether you can limit this sharing. |
|---|---|

| | | |
|---|---|---|
| **For our everyday business purposes —** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes —** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes —** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes —** information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you** | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

| | Call 800-647-7378 or go to www.raymondjames.com |
|---|---|

REDACTED

| | |
|---|---|
| **Who is providing this notice?** | See the Raymond James U.S. legal entities noted below. |

| | |
|---|---|
| **How does Raymond James protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.  For more information, please visit raymondjames.com/privacy_security |
| **How does Raymond James collect my personal information?** | We collect your personal information, for example, when you:<br>• open an account or perform transactions<br>• make a wire transfer or tell us where to send money<br>• tell us about your investment or retirement portfolio<br>We also collect your personal information from others such as credit bureaus, affiliates and other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only:<br>• sharing for affiliates' everyday business purposes — information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Our affiliates include companies with a Raymond James or an Eagle name.</I>* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Raymond James does not share with nonaffiliates so they can market to you.* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies to provide or market financial products or services to you.<br>• *Our joint marketing partners may include banks and credit unions.* |

Financial advisors may change brokerage and/or investment advisory firms, and the nonpublic personal information collected by us and your advisor may be provided to the new firm so your advisor can continue to service your account(s). If you do not want your financial advisor to take or receive this information, please call 800-647-7378 to opt out of this sharing. Opt-in states, such as California and Vermont and others, require your affirmative consent to share your nonpublic information with the financial advisor or the new firm, and in those states you must give your written consent before the advisor can take or receive your nonpublic information. You can withdraw this consent at any time by contacting 800-647-7378.

**Vermont**: In accordance with Vermont law, we will not share information about Vermont residents with companies outside of our corporate family, except as permitted by law, such as with your consent, to service your accounts or to other financial institutions with which we have joint marketing agreements. We will not share information about your creditworthiness within our corporate family except with your authorization or consent, but we may share information about our transactions or experiences with you within our corporate family without your consent.

**California**: In accordance with California law, we will not share information we collect about you with companies outside of Raymond James, unless the law allows. For example, we may share information with your consent, to service your accounts, or to provide your rewards/benefits. We will limit sharing among our companies to the extent required by California law.

**Nevada**: In accordance with Nevada law, if you would like to be placed on our Internal Do Not Call List, please call 800-647-7378. For more information, you may contact ClientService@RaymondJames.com or Raymond James Client Services, 880 Carillon Parkway, St. Petersburg, FL 33716, or the Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101. Phone number: 1-702-486-3132; email: BCPINFO@ag.state.nv.us.

Raymond James Financial, Inc., Raymond James & Associates, Inc., Raymond James Financial Services, Inc., Raymond James Financial Service Advisors, Inc., Eagle Asset Management, Inc., Eagle Fund Distributors, Inc., Eagle Family of Funds, Eagle Fund Services, Inc., and Raymond James Insurance Group, Inc. This notice does not apply to Raymond James Bank, N.A., and Raymond James Trust, N.A., as these affiliates deliver their own privacy notices.

# EXHIBIT 4



REDACTED
6318
Account #



**Freedom Investment Management Agreement**

**RAYMOND JAMES®**
FREEDOM ACCOUNT

Asset Management Services
Service Center
e.Sign✎ Scan or Fax

| 01452 | | Kimberly Nguyen | |
|---|---|---|---|
| Form # | | Client Name | |
| REDACTED | | REDACTED | 1508 |
| Branch # | FA # | | Speed Dial # |

The undersigned party ("Client(s)") hereby retains Raymond James & Associates, Inc., ("RJA"), a registered broker/dealer and investment adviser, to establish an account(s) in the Freedom Program (the "Program") and to provide investment advisory, brokerage and other services in accordance with the terms and conditions set forth in this agreement ("Agreement"). Client acknowledges that the services provided under this Agreement may be provided by a financial advisor, as designated by Client, that may be registered as a securities agent of Raymond James Financial Services, Inc. ("RJFS"), an investment adviser representative of Raymond James Financial Services Advisors, Inc. ("RJFSA"), or an independent investment adviser representative affiliated with RJFS. RJFSA is a registered investment adviser and RJFS is a registered broker-dealer with the Securities and Exchange Commission and both are corporate affiliates of RJA. RJA, RJFSA and RJFS will be hereafter collectively referred to as "Raymond James".

RJA, a subsidiary of Raymond James Financial, Inc., ("RJF") shall provide Client with investment advisory services in accordance with the following terms and conditions:

**Appointment**. Client appoints RJA, through its Asset Management Services division ("AMS"), to act as Client's investment adviser, assist Client in selecting a compatible investment strategy developed by the AMS Investment Committee, and upon Client's selection of an investment strategy, in recommending and monitoring open-end mutual funds with whom Raymond James has entered into a selling agreement with the fund company, which may include affiliates of Raymond James, and/or exchange traded funds (hereinafter referred to collectively as "funds").

**Freedom Program**. Client has chosen to participate in the Program, through which RJA provides certain asset allocation investment strategies (the "Strategy" or "Strategies"). Client understands that AMS develops the Strategies, establishes the respective target allocations, and selects and monitors fund investments in the Strategies. It is important to review investment objectives, risk tolerance, tax objectives and liquidity needs before choosing a Strategy. In making an investment decision Client understands they may utilize other information sources and the advice of their financial, legal, or tax advisors.

**Establishment of Account**. Upon Client's selection of a Strategy, RJA shall establish an account(s) in Client's name to be managed by AMS ("Account(s)") in accordance with the terms of this Agreement. Client will complete the attached Account Information and Profile ("Client Profile") setting forth any investment objectives, management restrictions, and additional instructions, if any. AMS is entitled to rely on the financial and other information provided by Client.

**Duties of AMS**. Client hereby authorizes AMS to assume all investment duties with respect to assets held in the Account and to exercise sole investment authority with respect to such assets. AMS shall invest and reinvest the assets of the Account in such funds whose shares can be purchased at net asset value (however, such purchases will not be subject to the imposition of any type of sales charge or commission), or other property of any kind as it deems in the best interest of Client in order to achieve the investment objective(s) identified in the Client Profile, without regard to holding period, portfolio turnover or resulting gain or loss. AMS will exercise its discretion and deal in and with such assets exactly as fully and freely as Client might do as owner, with or without further consent or authority from Client, except that AMS is not authorized to withdraw any money, securities, or other property either in the Client's name or otherwise, unless expressly authorized by Client. Although Strategies are generally comprised of fund investments, the Client should understand that AMS may decide to invest a certain portion of the Account's assets in alternative securities to maintain trading flexibility and/or market exposure, or to enhance diversification.

Client understands that the target allocation of the Strategy or Strategies selected by Client applies at the time the Account is established. Additions to and withdrawals from the Account will generally be invested based on the target allocation. Fluctuations in the market value of securities held in the Account, as well as other factors, however, will affect the actual asset allocation in the Account at any given time.

# RAYMOND JAMES®
FREEDOM ACCOUNT


REDACTED **6318**
Account #

AMS will annually rebalance Client's Account, based on the anniversary date of its establishment, if at such time the actual asset allocation varies by more than certain predetermined percentages from the target allocation, as established by AMS. Client understands that AMS may rebalance the Account upon Client's request.

AMS has established workflow processes for managed accounts to improve the efficiency of processing activities such as the opening of new Accounts, Strategy changes, investment of cash contributions, disbursement requests and Account terminations. Processing times may differ based on paperwork requirements, the types of securities being bought or sold and the level of complexity involved in each of these processes. The turnaround time necessary for AMS to process Client instructions or requests involving such activities may require several business days to complete under normal market conditions and will generally be processed in the order in which they are received by AMS. As a result, Client understands that any instruction or request submitted by Client involving such activities is not considered a market order, but that AMS will process such instruction or request in an efficient and timely manner.

If the security or property held in the Account is accompanied by voting rights, Client has the right to retain the authority to exercise or delegate such voting rights to a third party, as they may choose. Unless otherwise indicated by Client, AMS shall exercise such voting rights in the manner it deems appropriate. AMS shall have no responsibility to exercise voting rights with respect to securities for which the proxy materials are not available to AMS. AMS shall take receipt of prospectuses and will provide Client copies of such prospectuses upon request. AMS shall have no responsibility to exercise investment duties with respect to assets that have not been deposited in the Account. AMS will not be obligated to render any advice or take any action on Client's behalf with respect to securities held in the Account, or the issuers thereof, which become the subject of any legal proceedings, including bankruptcies and shareholder litigation. The right to take any actions with respect to legal proceedings, including without limitation bankruptcies and shareholder litigation, and the right to initiate or pursue any legal proceedings with respect to securities held in the Account shall be expressly reserved to Client and Client will not be obligated to join other parties as a condition precedent to initiating such a proceeding.

**Investment Strategy**. Client shall designate the Strategy of each Account. In order to change the Strategy of an Account, Client must submit a verbal or written request satisfactory to AMS, subject to verification. AMS will provide Client written confirmation of a change to the Strategy of the Account when initiated by Client via verbal request.

**Execution Services**. Client instructs AMS to direct Account execution services to RJA. Client understands that mutual fund redemption transactions may have tax consequences that should be discussed with Client's financial or tax advisor. Client further understands that any securities used to fund the Account or that are later deposited to the Account may be sold by AMS, thus creating a capital gain or loss depending on the cost basis of the securities. Client should consult their tax advisor for advice on the tax implications of such transactions.

**Fees**. Client shall pay AMS an annual asset-based fee in accordance with the attached Asset-Based Fee Schedule. Client understands the asset-based fee includes compensation paid to Client's Raymond James financial advisor and RJA for its execution, custodial and advisory services. Client agrees that the allocation of the asset-based fee between Client's Raymond James financial advisor and RJA may be changed at any time without Client's consent; however, in no event will the total asset-based fee charged to Client's Account be increased without Client's consent. Client understands the asset-based fees are negotiable. Factors Raymond James considers in negotiating asset-based fees may include the size of Client's Account, Raymond James's policy with respect to discounts, and Client's relationship with their Raymond James financial advisor. Client acknowledges the fees and charges payable under this Agreement may be higher than the aggregate amount of fees and charges Client would pay if Client were to negotiate the fees and charges of each service provider separately, if available. Until paid, any asset-based fee due AMS shall constitute a lien upon the assets of the Account. Client understands the asset-based fee includes all execution charges except certain dealer-markups and odd lot differentials, taxes, exchange fees and any other charges imposed by law with regard to any transactions in the Account. Client understands that the Account may also incur charges for other services provided by RJA not directly related to the execution and clearing of transactions including, but not limited to, IRA custodial fees, safekeeping fees, interest charges on margin loans, and fees for legal or courtesy transfers of securities. Client understands the asset-based fee does not include mutual fund management fees and operating expenses or other charges resulting from principal transactions associated with the funding of the Account, if any.

**RAYMOND JAMES®**
FREEDOM ACCOUNT



**REDACTED** 6318
Account #

**Billing**. The annual asset-based fee is assessed quarterly in advance. When the Account is opened, the asset-based fee is billed for the remainder of the current billing period based on the initial contribution. Thereafter, the quarterly asset-based fee is based on the Account Value as of the last business day of the previous calendar quarter, and becomes due the following business day. If cash or securities, or a combination thereof, amounting to at least $100,000 are deposited to or withdrawn from Client's Account on an individual business day in the first two months of the quarter, Client authorizes AMS to: (i) assess Advisory Fees to the deposited assets based on the value of the assets on the date of deposit for the pro rata number of days remaining in the quarter, or (ii) refund prepaid Advisory Fees based on the value of the assets on the date of withdrawal for the pro rata number of days remaining in the quarter. No additional Advisory Fees or adjustments to previously assessed Advisory Fees will be made in connection with deposits or withdrawals that occur during the last month of the quarter unless requested by Client. Notwithstanding the above, RJA reserves the right, in its sole discretion, to process or not process fee adjustments, as applicable, when the source and destination of deposits and withdrawals involve Client's other fee-based advisory accounts.

In addition, RJA may, in its sole discretion, take any action it considers fair and reasonable with respect to the application of fee adjustments based upon its review of the timing and amounts of deposits to and withdrawals from Client's Account. Client authorizes and directs RJA to deduct asset-based fees from the Account. RJA shall provide Client a statement, not less than quarterly, which shows all amounts disbursed from the Account. The statement will show the amount of the asset-based fee, the Account Value on which the fee was based, and the manner in which the fee was calculated. For the purposes of this Agreement, the term "Account Value" shall mean the total absolute value of the securities in the Account, long or short, plus all credit balances, with no offset for any margin or debit balances. Cash reserve balances which exceed 20% of the Account Value at the time of billing will be included for fee purposes only if such balances did not exceed 20% of the Account Value at the end of the prior two quarterly valuation dates. Otherwise, the balance in excess of 20% will not be included in the Account Value for purposes of calculating the asset-based fee. Please refer to RJA's Wrap Fee Program Brochure for additional information.

**Withdrawal from Accounts**. Client may withdraw cash or securities from the Account upon request, subject to verification. Withdrawals will be taken from cash balances to the extent it is available. When cash is depleted the Account will be re-balanced to the target allocation. Client understands that any withdrawals (periodic or otherwise) requiring a liquidation of securities will affect the model asset allocation, and thereby affect the performance of the Account. Client hereby authorizes the financial advisor designated under Financial Advisor Information of this Agreement (or the financial advisor's successor) to effect withdrawals from the Account pursuant to Client's request and on Client's behalf, except that such withdrawals may not reduce the Account balance below the Account minimum. All efforts will be made by AMS to process the withdrawal request in an efficient and timely manner. However, any such request is not considered a market order and Client understands that delays may result due to factors including, but not limited to, the volume of similar requests received by AMS and open trades as of the date of the withdrawal request. Client understands that the turnaround time necessary for AMS to process Client's withdrawal request may require several business days to complete under normal market conditions, and will generally be processed in the order in which it is received by AMS. Resulting trades, if any, will be executed at market prices. AMS is not responsible for changes in market prices that occur between its receipt of a request to withdraw cash and trade execution. If Client withdraws cash or securities from the Account prior to delivering proper notice to AMS, AMS shall not be responsible, nor liable to Client, for losses in Client's Account that may result from the need to reverse transactions in the Account for which the cash was to be utilized. Where the total value of cash and securities in the Account falls substantially below the minimum initial investment requirement, AMS may terminate the Client's Account. Client understands that the Account is not intended as a short-term investment vehicle and that such withdrawals from the Account may impair the achievement of Client's stated investment objective(s).

**Successors and Assigns**. No party may assign any of its rights, powers or duties under this Agreement without the other party's written consent. Notwithstanding the foregoing, RJA may assign its rights, responsibilities and obligations to a parent (direct or indirect), subsidiary or an affiliate thereof. Successors of an entity may assume the obligations, rights or responsibilities under this Agreement without written consent of all parties if there is no change in actual control or management of the entity and no material change in the ability to perform services contemplated under the Agreement.

**RAYMOND JAMES®**

FREEDOM ACCOUNT



REDACTED **6318**
Account #

**Termination of Participation in the Freedom Program**. AMS may terminate this Agreement at any time by providing notice of such election to Client. Client may terminate this Agreement by providing AMS verbal or written notice, subject to verification. Client hereby authorizes the financial advisor designated under Financial Advisor Information of this Agreement (or the financial advisor's successor) to terminate the Agreement pursuant to Client's request and on Client's behalf. AMS will provide Client written confirmation of termination of this Agreement when initiated by Client via verbal request. All efforts will be made by AMS to process the termination request in an efficient and timely manner. However, any such request is not considered a market order and Client understands that delays may result due to factors including, but not limited to, the volume of similar requests received by AMS and open trades as of the date of the termination request. Client understands that the turnaround time necessary for AMS to process Client's termination request may require several business days to complete under normal market conditions, and will generally be processed in the order in which it is received by AMS. Resulting trades, if any, will be executed at market prices. AMS is not responsible for changes in market prices that occur between its receipt of the termination request and trade execution. Upon termination, Client acknowledges that Raymond James will have no further obligation to recommend or take any action with respect to the securities or cash in the Account. Upon termination, Client shall receive a refund of the unearned portion of the prepaid asset-based fee. Termination shall not affect Client's responsibility for transactions initiated prior to AMS's receipt of Client's termination notice. All fees or costs accruing prior to termination of this Agreement will be deducted from the assets of the Account.

**Liability**. AMS shall not be liable to Client for any loss incurred in connection with recommendations made or actions taken on Client's behalf, or in connection with errors of judgment in managing an Account, with the exception of losses resulting from AMS's willful misconduct, bad faith or gross negligence of its duties hereunder. AMS shall not be liable to Client for any loss resulting from any act initiated by Client or by Client's omission. The assessment of suitability of investments made by AMS on Client's behalf is based on information Client has provided to AMS and their financial advisor. Client understands that AMS will notify Client in writing, at least quarterly, to contact AMS if there have been any changes to Client's financial situation or investment objectives, or any other changes which would affect the Client Profile. Although AMS will, at least annually, contact Client to determine whether there have been any changes to Client's financial situation or investment objectives, or any changes that would otherwise affect the Client Profile, Client acknowledges that Client is solely responsible for notifying AMS in writing of any material change in the information provided in the Client Profile or in Client's financial circumstances that may affect the manner in which Client's Account assets are invested. To the extent Client fails to inform AMS of his/her particular financial circumstances, including providing information to AMS about investments held by Client through an investment adviser and/or brokerage firm other than RJA, AMS is limited in its ability to ensure that investments it makes on Client's behalf are appropriate for Client in light of Client's overall financial circumstances and investment objectives. Federal and state securities laws impose liability in certain circumstances on persons who act in good faith, and nothing in this Agreement shall constitute a waiver or limitation of any rights which the Client may have under applicable state or federal laws.

**Disclosure**. AMS is a division of RJA, which is registered as an investment adviser and broker-dealer with the Securities and Exchange Commission. Obligations, rights, duties, responsibilities, and limitations on the scope of services and liability of AMS as described herein shall be construed as obligations, rights, duties, responsibilities, and limitations on the scope of services and liability of RJA. Please refer to RJA's Wrap Fee Program Brochure for further information regarding RJA's business relationships with affiliated entities, and its custodial services with respect to cash reserves of investment management accounts. With respect to cash reserves of the Account, the custodian of the Account assets will determine where cash reserves are held. If the Account assets are held by a custodian other than RJA, such custodian's reserve program will determine where cash reserves are held. Where RJA acts as custodian, Clients may be offered one or multiple options based on their Account type.

Eagle Asset Management, Inc., RJA, RJFSA and RJFS are wholly-owned subsidiaries of Raymond James Financial, Inc., a publicly owned corporation. Eagle Boston Investment Management, Inc. is a wholly owned subsidiary of Eagle Asset Management, Inc. Entities associated with the Eagle Family of Funds are affiliates of Raymond James. The participation of affiliated funds may create an incentive for AMS to recommend an affiliated fund over a similarly qualified and suitable non-affiliated fund. However, AMS does not receive additional compensation for recommending an affiliated fund over a non-affiliated fund. Please note that each Strategy available in the Program has been constructed by the AMS Investment Committee to offer an alternative that does not contain an affiliated fund. Clients may select a Strategy that does not invest in funds affiliated with Raymond James, as Client may choose.



# RAYMOND JAMES®

FREEDOM ACCOUNT


REDACTED 6318
Account #

Tax-qualified retirement Accounts will be automatically invested in the Strategy selected by Client that does not invest in affiliated funds, as federal regulations prohibit affiliated funds from being purchased in tax-qualified retirement advisory accounts. For non-retirement Accounts, if no selection is made by Client in the Agreement, Client should understand that the Strategy selected will serve as Client's authorization to utilize affiliated funds, where applicable. Client may revoke this authorization at any time by providing AMS written notice to such effect.

**Acknowledgement of Receipt of Disclosure Brochure**. As required by Rule 204-3 under the Investment Advisers Act of 1940, Client acknowledges receipt of RJA's Wrap Fee Program Brochure and applicable Brochure Supplements.

**Arbitration and Dispute Resolution**. All disputes and controversies that may arise between Client and Raymond James concerning any transaction, or the construction, performance or breach of this or any agreement between Client and Raymond James, shall be resolved in accordance with the "Arbitration and Dispute Resolution" provisions of the separate Raymond James Client Agreement signed by Client. Nothing in this Agreement shall constitute a waiver or limitation of any rights which the Client may have under applicable state or federal law to pursue remedies against Raymond James in other forums, including state and federal courts.

**Representations by Client**. Client represents that the terms hereof do not violate any obligation by which Client is bound, whether arising by contract, operation of law, or otherwise. If acting as a fiduciary, Client represents that: (a) the investment objective(s) designated by Client is within the scope of the investments and policies authorized by the governing instrument; (b) Client is authorized by the governing instrument to delegate discretionary investment management authority to AMS, as set forth in this Agreement; and (c) Client will deliver to AMS such evidence of Client's authority to act as it may reasonably require, whether by way of certified resolution, trust agreement, or otherwise.

**Notices**. All written notices from Client shall be deemed effective when received by AMS at Asset Management Services, 880 Carillon Parkway, St. Petersburg, FL 33716. Written notices required from AMS to Client shall be deemed effective when sent to Client at the address shown in the Client Profile. Each party shall be entitled to presume the correctness of such addresses until notified to the contrary. Receipt of a telegram, electronic mail message or facsimile transmission by either party will constitute receipt of written notice. AMS shall not be liable to Client for any action reasonably taken by AMS in reliance upon receipt of instructions from Client, including those communicated by the financial advisor designated under Financial Advisor Information of this Agreement (or the financial advisor's successor) pursuant to Client's request and on Client's behalf. Client authorizes AMS to electronically record telephone communications between Client and AMS.

**Death or Disability**. In the event of Client's death, disability, or incompetence, this Agreement shall continue in full force and effect, until terminated either by AMS, or by a properly qualified or appointed successor, representative, or heir of Client.

**Governing Law**. This Agreement shall be construed and interpreted in accordance with the laws of the State of Florida, without the application of the principles of choice of law. This Agreement is also intended to conform to the requirements of, and to be construed and interpreted in accordance with, the Employee Retirement Income Security Act of 1974, when applicable.

**Severability**. It is understood by the parties hereto that if any term, provision, duty, obligation or undertaking herein contained is held by the courts to be unenforceable or illegal or in conflict with the applicable state law, the validity of the remaining portions shall not be affected, and the rights and obligations of the parties shall be construed and enforced as if such invalid or unenforceable provision were not contained herein.

**Amendment**. This Agreement may be amended by (1) AMS upon thirty days' advance written notice and by providing notice of such election to Client, or (2) by a writing approved and executed by the parties hereto.



**RAYMOND JAMES®**

FREEDOM ACCOUNT



REDACTED **6318**

Account #

**Other Expenses**. Certain open-end mutual funds ("fund" or "funds") which may be acquired in Client's Account, may, in addition to assessing management fees, assess other internal expenses such as distribution, shareholder service and/or 12b-1 fees, administrative fees and "other expenses". To the extent that Raymond James may receive shareholder service and/or 12(b)-1 fees from funds, Client will receive a credit to the Account in an amount equal to such fees received from the funds held in Client's Account. The foregoing fees are generally included in the calculation of operating expenses of a fund and are disclosed in the fund prospectus. In addition, RJA and/or its affiliates may enter into arrangements with funds or their affiliates in connection with the sale and/or maintenance of assets in funds that may result in additional compensation being paid to RJA and/or its affiliates. These arrangements may create a financial incentive for RJA and its affiliates to acquire certain funds over other funds on Client's behalf. These additional compensation arrangements may not necessarily be reflected in a fund's expenses and may be paid solely out of the assets of an affiliate of the fund.

Client should understand that the annual asset-based fee charged in the Freedom Program is in addition to the management fees and operating expenses charged by funds. To the extent that Client intends to hold fund shares for an extended period of time, these internal fund expenses should be added to the annual asset-based fee charged to Client's Account when evaluating the costs of a Program Account. In addition, certain mutual fund families impose short-term trading charges (typically 1% to 2% of the original amount invested) which may not be waived for fee-based accounts.

**Effective Date**. This Agreement will be effective upon execution by both Client and Raymond James.

**RAYMOND JAMES®**
FREEDOM ACCOUNT



REDACTED 6318
Account #

## What You Should Know About Exchanged Traded Funds and Mutual Funds

The Freedom Program offers investors asset allocation investment portfolios investing primarily in Exchange Traded Funds ("ETFs") and mutual funds. Clients should be aware that exchange traded funds and mutual funds have unique distinguishing characteristics and their cost structures differ, sometimes significantly.

A mutual fund is a type of investment company that pools money from many investors and invests the money in stocks, bonds, short-term money-market instruments, or other securities. Investors purchase mutual fund shares from the fund, but are not able to purchase the shares from other investors on a secondary market. Mutual fund shares are "redeemable." This means that when mutual fund investors want to sell their fund shares, they sell them back to the fund at their approximate NAV, minus any fees the fund imposes at that time (such as redemption fees, if applicable).

An ETF is a type of investment company whose investment objective is to achieve the same or similar return as a particular market index. An ETF is similar to an index fund in that it will primarily invest in the securities of companies that are included in a selected market index. An ETF will invest in either all of the securities or a representative sample of the securities included in the index. ETFs may be bought or sold throughout the day in the secondary market, but are generally not redeemable by retail investors for the underlying basket of securities they track.

Mutual funds are typically actively managed, and as a result, the underlying management fees and operating expenses assessed by the fund companies are typically higher than those for ETFs (generally 1% to 1.5% for mutual funds versus .20% to .40% for ETFs, although individual mutual funds and ETFs may have higher or lower expense ratios). Only those mutual funds or ETFs whose shares can be purchased at net asset value will be eligible for investment in the Freedom Program; such purchases will not be subject to the imposition of any type of sales charge or commission. Clients most appropriate for the mutual fund version of Freedom are those willing to pay more for the potential to outperform the market or benchmark indices over the long term, but should be aware the potential to underperform is just as great. Clients most appropriate for the ETF version of Freedom are those willing to achieve market-like returns, less management fees and operating expenses, with little potential for the individual ETFs outperforming the respective indices they track. The hybrid versions of Freedom include allocations to both mutual funds and ETFs. ETFs are typically utilized in market sectors considered more efficient (such as the domestic U.S. and international large capitalization core equity and domestic U.S. corporate, government and securitized bond markets). Mutual funds are utilized in market sectors where the investment styles are focused on growth or value segments and in less liquid market sectors (such as domestic U.S. and international, small-/mid-capitalization and emerging markets equity and alternative strategies such as managed futures).

Certain exchange traded funds may be classified as partnerships for U.S. federal income tax purposes, which may result in unique tax treatment, including Schedule K-1 reporting. Please consult your tax adviser for additional information regarding the tax consequences associated with the purchase, ownership and disposition of such investments.

Additional information regarding the funds' investment objectives, risks, charges and expenses, and other matters of interest is available in the fund's prospectus, which may be obtained from your financial advisor.

## Important Information About Opening a New Account

Federal law requires all financial institutions to obtain, verify, and record certain personal information -- including name, street address, social security number, and date of birth among other information -- that will be used to verify identity. If you do not provide us with this information, we will not be able to open the account. If we are unable to verify your identity, we reserve the right to close the account.

## Tax Considerations

*IRS Circular 230 Disclosure*: RJA, its affiliates, agents and employees are not in the business of providing tax, regulatory, accounting or legal advice. These materials and any tax-related statements are not intended or written to be used, and cannot be used or relied upon, by any such taxpayer for the purpose of avoiding tax penalties. Any such taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

# RAYMOND JAMES®

### FREEDOM ACCOUNT

REDACTED **6318**
Account #

| Personal Information |
|---|

| FACTS | WHAT DOES RAYMOND JAMES DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security number and investment experience<br>• Assets and income<br>• Account balances and account transactions<br><br>When you are no longer our customer, we continue to share your information as described in this notice. |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Raymond James chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Raymond James share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes -**<br>such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes -**<br>to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes -**<br>information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes -**<br>information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you** | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

| Questions? | Call 1-800-647-7378 or go to www.raymondjames.com |
|---|---|



# RAYMOND JAMES®
## FREEDOM ACCOUNT

REDACTED**6318**
Account #

| Who we are | |
|---|---|
| **Who is providing this notice?** | See the Raymond James U.S. legal entities noted below. |

| What we do | |
|---|---|
| **How does Raymond James protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does Raymond James collect my personal information?** | We collect your personal information, for example, when you<br><br>• open an account or perform transactions<br>• make a wire transfer or tell us where to send money<br>• tell us about your investment or retirement portfolio<br><br>We also collect your personal information from others, such as credit bureaus, affiliates and other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br><br>• sharing for affiliates' everyday business purposes - information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• Our affiliates include companies with a Raymond James or an Eagle name. |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• Raymond James does not share with nonaffiliates so they can market to you. |
| **Joint marketing** | A formal agreement between non-affiliated financial companies to provide or market financial products or services to you.<br>• Our joint marketing partners may include banks and credit unions. |

## Other important information

Financial advisors ("FA") may change brokerage and/or investment advisory firms and the nonpublic personal information collected by us and your FA may be provided by your FA to the new firm so your FA can continue to service your account(s). If you do not want your FA to take or receive this information, please call 800-647-7378 to opt out of this sharing. Opt-in states such as California and Vermont and others, require your affirmative consent to share your nonpublic information with the FA or the new firm, and in those states you must give your written consent before the FA can take or receive your nonpublic information. You can withdraw this consent at any time by contacting 800-647-7378.

California: In accordance with California law, we will not share information we collect about you with companies outside of Raymond James, unless the law allows. For example, we may share information with your consent, to service your accounts, or to provide rewards or benefits you are entitled to. We will limit sharing among our companies to the extent required by California law.

Vermont: In accordance with Vermont law, we will not share information about Vermont residents with companies outside of our corporate family, except as permitted by law, such as with your consent, to service your accounts or to other financial institutions with which we have joint marketing agreements. We will not share information about your creditworthiness within our corporate family except with your authorization or consent, but we may share information about our transactions or experiences with you within our corporate family without your consent.

## Raymond James U.S. legal entities

Raymond James U.S. legal entities that utilize the names: Raymond James Financial, Inc., Raymond James & Associates, Inc., Raymond James Financial Services, Inc., Raymond James Financial Services Advisors, Inc., Eagle Asset Management, Inc., Eagle Fund Distributors, Inc., Eagle Family of Funds, Eagle Fund Services, Inc., and Raymond James Insurance Group, Inc.. This notice does not apply to Raymond James Bank, N.A., and Raymond James Trust, N.A., as these affiliates deliver their own privacy notices.

# RAYMOND JAMES®
## FREEDOM ACCOUNT

REDACTED 6318
Account #

---

## Client Information & Profile

*Agreement will not be processed if all answers are not provided. This information will enable Raymond James, as required by investment advisory regulations, to confirm that the Strategy you have chosen is appropriate for your circumstances.*

**Complete Account Title(s):**
(Mr., Mrs., Ms., Dr., etc)

**Kimberly Nguyen**

Trustee Name(s):

Address: **(Post Office Box not acceptable for Primary address)**

REDACTED

REDACTED

City                          State          Zip
Phone # (Residence):

Phone # (Business):

**Duplicate Mailing Address:**
(Trustee, Bank, CPA, Joint, etc.)

City                                        State        Zip
Additional Joint Address (if different from main address):
◯ (Check if you want duplicate statements sent)

City                                        State        Zip
Phone # (Residence):

Phone # (Business):

---

## For Personal Accounts Only:

| **(Individual):** | Retired*: | | **(Joint):** | Retired*: | |
|---|---|---|---|---|---|
| Date of Birth : | 10+ Years | ◯ | Date of Birth : | 10+ Years | ◯ |
| REDACTED | Under 10 Years | ◯ | | Under 10 Years | ◯ |

Name of Employer/ Address:
REDACTED

Name of Employer/ Address:

Occupation:
**Owner**

Occupation:

---

## Tax Information

| | | |
|---|---|---|
| Taxable: | ☑ | Social Security or Tax ID # (*individual*): | Social Security or Tax ID # (*joint*): |
| Non-Taxable: | ◯ | REDACTED | |
| ERISA: | ◯ | (Please use Social Security # for IRAs) | |
| Gov't/Public Entity | ◯ | | |

*If retired for less than 10 years, please provide your previous Employer and Occupation

1 10M 1452  9/15

10



**RAYMOND JAMES®**
FREEDOM ACCOUNT

REDACTED **6318**
Account #

---

## Client Information & Profile

*This section must be completed by Client. Agreement will not be processed if all answers are not provided. This information will enable Raymond James, as required by investment advisory regulations, to confirm that the Strategy you have chosen is appropriate for your circumstances.*

| Combined Annual Income | Combined Net Worth (Excluding Personal Residence(s)) |
|---|---|
| ○ $0-$19,999 | ○ $50,001-$100,000 |
| ○ $20,000-$50,000 | ○ $100,001-$250,000 |
| ☑ $50,001-$100,000 | ○ $250,001-$500,000 |
| ○ $100,001-$200,000 | ○ $500,001-$1,000,000 |
| ○ $200,001-$500,000 | ☑ $1,000,001-$5,000,000 |
| ○ $500,001-$1,000,000 | ○ Over $5,000,000 |
| ○ Over $1,000,000 | |

**Investment Experience**
Provide your experience, if any, with the following investment types

| | None | Limited | Moderate | Extensive |
|---|---|---|---|---|
| **Equities** | ○ | ☑ | ○ | ○ |
| **Bonds** | ○ | ☑ | ○ | ○ |
| **Options/Futures** | ☑ | ○ | ○ | ○ |
| **Mutual Funds** | ○ | ☑ | ○ | ○ |
| **Annuities** | ☑ | ○ | ○ | ○ |
| **Margin Trading** | ☑ | ○ | ○ | ○ |

**Primary Objective and Associated Risk Tolerance**
Select Only One Objective and Associated Risk Tolerance

| Income | ○ Low | ○ Medium | ○ High |
|---|---|---|---|
| Growth | | ☑ Medium | ○ High |

**Secondary Objective and Associated Risk Tolerance**
Select Only One Objective and Associated Risk Tolerance

| Income | ○ Low | ☑ Medium | ○ High |
|---|---|---|---|
| Growth | | ○ Medium | ○ High |

**Primary Time Horizon**

○ < 3 years     ○ 3 - 5 years     ☑ > 5 years

**Secondary Time Horizon**

○ < 3 years     ○ 3 - 5 years     ☑ > 5 years

**Please note:** Because an alternative investments or equity investor should be willing to tolerate short-term volatility, an alternative investments or equity investor's time horizon should generally be long-term (> 5 years). Conversely, because of the less volatile nature of a fixed income investment objective, a fixed income investor may have a shorter time horizon than an investor in alternative investments or equities, although the objective can accommodate investors with longer time horizons as well. Based on this statement, and providing that Raymond James meets your expectations, please indicate the length of time you would consider keeping your Account(s) invested in the Freedom Program.

| Additional Instructions: |
|---|
| |

What percentage of your total investment portfolio do the assets currently being invested in the selected Freedom Strategy represent? **Please note that allocations to the Alternative Strategy Completion Portfolio should generally comprise no more than 20% of an investor's total investment portfolio.**

○ Under 20%     ○ 20% - 40%     ○ 40% - 60%     ○ 60% - 80%     ○ Over 80%

Do you anticipate any significant withdrawals from your managed account(s) in the next 1 - 3 years?

○ Yes     ☑ No

# RAYMOND JAMES®
## FREEDOM ACCOUNT

Account # REDACTED**6318**

---

## Financial Advisor Information

Financial Advisor: **Dax Seale**     Branch/Financial Advisor # REDACTED

Firm Name / Address:     **Raymond James / 2001 Ross Ave. Suite 4500, Dallas, TX 75201**

Telephone Number:     REDACTED

If the financial advisor ceases to be affiliated with Raymond James, or does not maintain the necessary regulatory registration to service Client's Account(s), Raymond James may appoint another duly registered financial advisor to service this Agreement. In such an event, AMS will continue to effect transactions for the Account(s) through RJA until Client instructs otherwise.

---

## Selection of Trade Confirmation Option

***Please select one. If no selection is made, Option 1 (Quarterly Trade Confirmation Summary) will be applied.***

Client may change the trade confirmation option from Immediate to Monthly or Quarterly at any time by providing proper written notice. In addition, upon request Raymond James will provide Client Immediate trade confirmations for all transactions made during the prior twelve months at no additional cost. The wrap fee will not change as a result of this election and Client's decision to make this election is not a condition to entering into, or continued participation in the Freedom program.

- ☑ Option 1.   *Quarterly Trade Confirmation Summary.*   Client agrees to forego the receipt of an immediate trade confirmation, provided that Raymond James supplies Client with a *quarterly* summary, which contains all of the information that would otherwise be required to appear on the trade confirmation.

- ○ Option 2.   *Monthly Trade Confirmation Summary.* Client agrees to forego the receipt of an immediate trade confirmation, provided that Raymond James supplies Client with a *monthly* summary, which contains all of the information that would otherwise be required to appear on the trade confirmation.

- ○ Option 3.   Client wishes to receive trade confirmations immediately upon execution of trades.

---

## Dividend / Systematic Withdrawal Options

**Income/Capital Gains Options:**

○ All Cash     ○ Dividends Cash/Gains Reinvest     ☑ Reinvest All

Income/Capital Gains reinvestment is not available for ETF strategies. If no selection is made, all dividends and capital gains distributions will be paid in cash for the High Income and Retirement Income Solution strategies. All other strategies will reinvest dividends and capital gains distributions if no selection is made.

**Systematic Option:**

- ○ Systematic withdrawal:

  Total Withdrawal Amount $ _____     Start Date: _____     Day of Month: _____

  Frequency: ○ Weekly   ○ Semi-monthly   ○ Monthly   ○ Quarterly   ○ Semi-annually   ○ Annually

**Payment Option:**

- ○ Hold in Account          ○ Mail Check to address of record* ($100.00 dollar minimum)
- ○ ACH*                          ○ Sweep to another Raymond James Account* _____

\*   **Investors in taxable accounts may supply Raymond James with standing instructions to send accrued income to another like-registered Raymond James account or have a check mailed to the address of record. This standing instruction option is not available for tax-qualified accounts. However, both taxable and tax-qualified accounts may distribute the income periodically via ACH to an external financial institution. All necessary Raymond James ACH, distribution paperwork and requirements apply.**

# RAYMOND JAMES®
FREEDOM ACCOUNT

REDACTED 6318
Account #

## Asset-Based Fee Schedule

**Fees are incremental. The fee schedule breakpoints and rates may not be modified. Any modifications to the schedule will not be accepted by AMS, except when noted in the "Additional Instructions" section below.**

| FREEDOM FEE SCHEDULE | |
|---|---|
| **Aggregate Account Value** | **Annualized Fee** |
| First     $500,000 | 2.25% |
| Next     $500,000 | 1.75% |
| Next   $4,000,000 | 1.25% |
| Amounts over $5,000,000 | 1.00% |

**Additional Instructions:**

Cap at 1.35%  fee

For the purposes of determining Freedom fees, Freedom, Ambassador, Passport and Russell Model Strategies ("Russell") accounts which meet the criteria for related accounts will be combined to determine if a lower fee will apply. Related accounts will be combined for fee purposes so that each account will pay a fee which is calculated on the basis of the total of all aggregated accounts.

"Related" accounts are accounts of an individual, his or her spouse, and their children under the age of 21, and include individually owned accounts, individual IRAs, self-directed accounts (i.e., directed by individual participants) under an employee benefit pension plan ("ERISA plan"), and ERISA plans in which an individual is the sole participant. Furthermore, accounts of the same corporation or business entity are normally deemed as "related." For example, if ABC Manufacturing has both a profit sharing plan and a pension plan (non-directed), these two accounts will be "related." However, corporate accounts such as corporate cash would not be related to such retirement plan accounts.

**Client understands and agrees that it is Client's responsibility to include all applicable related accounts for purposes of qualifying for an aggregated account fee discount. While AMS may attempt to identify related accounts, it shall not be held responsible for failing to consider any related accounts not listed by Client.**

Please list other related Freedom, Ambassador, Passport or Russell accounts:

| Account Registration/Name | Account Number | Account Registration/Name | Account Number |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# RAYMOND JAMES®
### FREEDOM ACCOUNT

REDACTED 6318
Account #

---

## Funding of Managed Account

**Managed accounts may be funded with cash, securities, or a combination of both. The information provided below should reflect the complete funding of all managed accounts on the Client Agreement.**

1. **Funding with Cash:**

   A) ○  Deposit attached check (payable to Raymond James & Associates) in the amount of $ _____

   B) ○  Transfer $ _____ from Account # _____

          Account Name _____

   C) ○  Funds in amount of $ _____ to be wired (date) _____

2. **Funding Account with Securities *:**

   A) Transfer securities from Account Name **Kimberly Nguyen**      Account # REDACTED _____

        ☑  All securities (attach copy of most recent brokerage statement.)

        ○  Partial transfer (attach list of securities to transfer)

   B) ○  Securities are being transferred from another brokerage firm (ACAT or non-automated ACAT form and current statement are attached).

   C) ○  Securities have been deposited (certificates and stock powers delivered to branch).

   **Additional Instructions:**

   | |
   |---|
   | **Cash has already been transferred.** |

---

**\* NOTE:** For Accounts funded with securities, a statement of the cost basis of the securities should be provided to AMS so that it can provide accurate gain/loss information. Securities that are deposited to fund an Account are subject to AMS's decision to keep or sell the securities at the discretion of AMS. Additionally, AMS' review of securities may delay initial investing of the Account. Client, by funding the Account with securities, authorizes the sale of these securities to purchase mutual fund or exchange traded fund shares. Certain funding transactions may be handled by RJA on a principal basis for trade execution and clearing, and are not considered investment advisory services of AMS. RJA may be unable to sell a security used to fund an Account, on either an agency or principal basis, due to a lack of liquidity in the security or the lack of a willing buyer. In such circumstances, the Client will be advised and the security must be held in a non-managed account for the Client to sell at a later date at their discretion.

Client represents that any information provided regarding the original cost basis of securities is accurate to the best of Client's knowledge and belief. Client is responsible for accurately reporting gains and losses on tax returns. Client understands that in the event that no cost basis is provided, AMS will record a zero cost basis for such securities; and in such an event, realized and unrealized gains reported by AMS on such securities may be overstated.

Mutual fund shares transferred from the funding account into a Freedom Account for redemption may result in a delay of several days due to the re-registration of the mutual fund shares with the fund company.

1 10M 1452  9/15

14

# RAYMOND JAMES®

## FREEDOM ACCOUNT

REDACTED 6318
Account #

## Strategy Selection

**Please Indicate Investment Style(s) Selected**

**Approximate Inception Value**

Strategy 1: __Balanced with Growth (Hybrid)__      K

Strategy 2: _____     _____

Strategy 3: _____     _____

Strategy 4: _____     _____

## List of Available Investment Strategies

The target equity and fixed income allocations established for each strategy apply at the time the Account is opened or rebalanced, which will fluctuate from the actual allocation as a result of the capital appreciation or depreciation of the underlying funds. AMS reserves the right to modify the target allocation based on changes to its capital markets outlook. Fund investments and target allocation weights (by %) are available upon request from your financial advisor.

### Mutual Fund Strategies
(Minimum Investment $50,000)

- Defensive Conservative
- Conservative
- Conservative Municipal ^
- High Income
- Conservative Balanced

- Conservative Balanced Municipal ^
- Equity Income Balanced
- Defensive Balanced
- Flexible Balanced
- Balanced

- Balanced Municipal ^
- Balanced with Growth
- Balanced with Growth Municipal ^
- Equity Income
- Defensive Growth

- Growth Equity
- Flexible Equity
- Flexible Equity Plus
- Aggressive Equity
- Global Equity

### ETF Strategies
(Minimum Investment $50,000)

- Conservative
- Conservative Municipal ^
- Conservative Balanced *
- Conservative Balanced Municipal ^*

- Balanced *
- Balanced Municipal ^*
- Balanced with Growth *
- Balanced with Growth Municipal ^*

- Growth Equity *
- Aggressive Equity *
- Global Equity *

### Hybrid Strategies
(Minimum Investment $50,000)

- Conservative
- Conservative Balanced
- Balanced

- Balanced with Growth
- Growth Equity
- Aggressive Equity

- Global Equity

### Retirement Income Solution Strategies
(Minimum Investment $50,000)

- Early Retirement
- Mid Retirement
- Senior Retirement

### Completion Portfolios Strategies
(Minimum Investment $50,000)

- Fixed Income
- Alternative Investments †
- International Equity

### Foundation Strategies
(Minimum Investment $5,000)

- Conservative Balanced
- Equity Income

- Balanced
- Balanced with Growth

- Growth Equity

^   Municipal strategies are not available for investment in tax-qualified retirement Accounts. Municipal strategy selections made on behalf of tax-qualified retirement Accounts will be automatically invested in the non-Municipal fund strategy. For example, IRA and/or ERISA accounts that select the Balanced Municipal Strategy will be automatically invested in the Balanced Strategy.

*   Accounts will invest in exchange traded funds classified as partnerships for U.S. federal income tax purposes, which may result in unique tax treatment, including Schedule K-1 reporting. Please consult your tax adviser for additional information regarding the tax consequences associated with the purchase, ownership and disposition of such investments. Additional information is also available in the fund(s') prospectus(es), which is (are) available upon request.

†   Alternative Investments Strategy allocations should generally comprise no more than 20% of an investor's total investment portfolio.

**RAYMOND JAMES®**

FREEDOM ACCOUNT

REDACTED 6318
Account #

## Program Client Acknowledgments

I understand that I may select a Strategy that does not invest in funds affiliated with Raymond James, should I so choose. My selection indicates whether I authorize AMS to utilize such affiliated funds in my Account. Tax-qualified retirement Accounts will be automatically invested in the selected Strategy that does not invest in affiliated funds, as federal regulations prohibit affiliated funds from being purchased in tax-qualified retirement advisory accounts. For non-retirement Accounts, if no selection is made, I understand that the Strategy I select below will serve as my authorization for AMS to utilize affiliated funds in certain Strategies, where applicable.

Please choose ONE.

○ I authorize AMS to utilize AFFILIATED funds in my Account. I understand that I may revoke this authorization at any time by providing AMS written notice to such effect.

☑ I instruct AMS to exclusively utilize NON-AFFILIATED funds in my Account. I understand that I may change this instruction at any time by providing AMS written notice to such effect.

| Individual, or Minor | | Joint Owner, or Custodian | | |
|---|---|---|---|---|
| ○ I am | ☑ I am not | ○ I am | ○ I am not | an associated person or related to an associated person within the Raymond James Financial Group. Specify to whom and relationship: |
| ○ I am | ☑ I am not | ○ I am | ○ I am not | an employee of or related to an employee of any exchange or a member firm of any exchange or member of the Financial Industry Regulatory Authority (FINRA), or an officer of a bank, trust company, or insurance company. Employee/related person employer:<br><br>in the position of: |
| ○ I am | ☑ I am not | ○ I am | ○ I am not | a director, corporate officer, or a 10% shareholder of a publicly traded company. Indicate the name of the company and relationship: |
| ○ You may | ☑ You may not | ○ You may | ○ You may not | disclose my name, address, and security position to requesting companies in which I hold securities under rule 14b(c)-1 of the Securities and Exchange Commission. |

1 10M 1452  9/15

16



# RAYMOND JAMES®

## FREEDOM ACCOUNT

REDACTED 6318

Account #

## Signatures

By signing below, I acknowledge that I have received, read, understand, and agree to abide by all the terms and conditions set forth in the Freedom Investment Management Agreement with RJA. I further acknowledge that I have reviewed my investment objectives, Raymond James's recommendations regarding the Program and the recommended Strategy, and my options regarding affiliated funds that may participate in the Program.

### ***I have received the Investment Management Client Agreement for my records. ***

RJFSA and RJFS are affiliates of Raymond James Bank, N.A. Unless otherwise specified, products purchased through RJFS, or held at RJA, are not insured by the FDIC, are not deposits or other obligations of Raymond James Bank, N.A., and are not guaranteed by Raymond James Bank, N.A., an affiliate of RJA, and are subject to investment risks, including possible loss of principal invested.

| Program Client's Signature | Date | Program Client's Signature (if applicable) | Date |
|---|---|---|---|
| DocuSigned by: *Kimberly...* | 1/29/2016 | | |
| Program Client's Signature (if applicable) | Date | Program Client's Signature (if applicable) | Date |
| | | | |
| Financial Advisor's Signature | Date | Financial Advisor's Signature (if applicable) | Date |
| DocuSigned by: Dax Seale | 1/29/2016 | | |
| Financial Advisor's Signature (if applicable) | Date | Branch Office Manager Approval | Date |
| | | DocuSigned by: Paul Elger 5761997399AC4B4... | 1/29/2016 |

