# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

KIMBERLY NGUYEN,

     Plaintiff,

v.                              Case No: 8:20-cv-195-CEH-AAS

RAYMOND JAMES & ASSOCIATES,
INC.,

     Defendant.

_____/

# **O R D E R**

This matter comes before the Court upon Defendant Raymond James & Associates, Inc.'s Motion to Dismiss the Second Amended Complaint and Incorporated Memorandum of Law [Doc. 122], Plaintiff's Opposition [Doc. 131], and Defendant's Notice of Supplemental Authority [Doc. 134]. Defendant argues that the complaint is pleaded in shotgun form, fails to state claims for breach of fiduciary duty and negligence, and that the claims are barred by the independent tort doctrine and precluded from being asserted as class action claims by the Securities Litigation Uniform Standards Act. The Court, having considered the motion and being fully advised in the premises, will **DENY** Defendant Raymond James & Associates, Inc.'s Motion to Dismiss the Second Amended Complaint and Incorporated Memorandum of Law.

## I.   BACKGROUND[1]

*The Facts*

Plaintiff, Kimberly Nguyen, has been a client of Defendant Raymond James & Associates, Inc. since June 2015. [Doc. 117 ¶ 25]. Raymond James operates as a registered broker-dealer with the Financial Industry Regulatory Authority (FINRA) and as a registered investment advisor firm with the United States Securities and Exchange Commission (SEC). *Id.* ¶ 26. It engages in most aspects of securities distribution and investment banking, and operates as a wealth management firm, offering portfolio management, financial planning, and advisory services. *Id.* It offered commission-based accounts for which it charged clients a modest fee per trade and fee-based accounts which attracted an annual fee based on a percentage of the assets in the client's account. *Id.* ¶¶ 2, 4.

Plaintiff and the putative class members' assets were originally placed in commission-based accounts by Raymond James. *Id.* ¶¶ 2, 27. Plaintiff's investment strategy was to buy and hold, and she paid modest commissions for the few trades that were executed. *Id.* ¶ 29. In January 2016, Raymond James' registered representative, without conducting any suitability analysis, advised Plaintiff to transfer her assets, including shares in various mutual funds, into a fee-based account. *Id.* ¶¶ 30, 27. This was done even though the registered representative knew Plaintiff's investment

---

[1] The following statement of facts is derived from Plaintiff's Amended Complaint (Doc. 46), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

strategy, and at no time was Plaintiff advised that the fee-based account was not suitable for her. *Id.* ¶ 30.  Raymond James' policies and practices were designed to strongly encourage its registered representatives to solicit and recommend that clients transfer to fee-based accounts, and transitioning smaller clients to Freedom Accounts was profitable for registered representatives. *Id.* ¶¶ 59, 60, 65-67, 71-74.

Based on the advice of the registered representative, Plaintiff executed a Client Freedom Account Agreement. *Id.* After the Agreement was executed, Plaintiff chose a portfolio model. *Id.* at ¶ 31. Raymond James then liquidated the assets in her commission-based account, transferred the funds to her fee-based Freedom Account, and reinvested the funds. *Id.* Plaintiff did not base her decision to enroll in the Freedom Account program on the purchase or sale of a particular security. *Id.* As is the case with Plaintiff, Raymond James transferred the assets of members of the putative class without conducting any suitability analysis. *Id.* ¶ 33. After switching Plaintiff's and putative class members' assets to the Freedom Account, Raymond James maintained those assets in the fee-based accounts without monitoring the accounts to determine—via an account suitability analysis—whether it should transfer the assets back into a commission-based account in view of the limited trading activity. *Id.* ¶¶ 51, 56. It also did so without supervising its broker-dealers to ensure the required monitoring was being performed. *Id.* In failing to conduct account-type suitability analyses before transferring clients into fee-based accounts and having processes and procedures in place to do so, and in allowing the assets to remain in those accounts without proper monitoring, Raymond James was negligent and breached its fiduciary obligations to

3

Plaintiff and putative class members, as well as duties under state law. *Id.* ¶ 35, 57, 58, 86.

As a result of the switch in account types, Plaintiff and putative class members were charged far higher fees than the modest per-transaction commissions for commission-based accounts and Raymond James profited significantly at their expense. *Id.* ¶¶ 32, 34, 52-54, 77. Following its class-wide transfer of assets, Raymond James reported significant increases in the value of assets in fee-based accounts. *Id.* ¶¶ 78-84. Its stock doubled from $41 per share to more than $90 per share due to its growth in fee-based accounts over the relevant time period. *Id.* ¶ 83.

*The Lawsuit*

Plaintiff commenced this action against Raymond James on January 24, 2020. [Doc. 1 at p. 1]. The Second Amended Complaint alleges that Raymond James breached its fiduciary duties of care and loyalty to Plaintiff and class members by transferring their assets from commission-based accounts to fee-based accounts without conducting any suitability analysis (**Count I**) and by failing to conduct any ongoing suitability analysis or otherwise monitoring these accounts after the transfer of assets to ensure that fee-based accounts were still suitable (**Count II**). [Doc. 117 ¶¶ 107-113, 114-120]. Plaintiff also alleges that Raymond James was negligent in failing to conduct suitability analysis prior to recommending and transferring clients' assets from commission to fee-based accounts and in failing to have supervisory measures and procedures in place to do so (**Count III**). *Id.* ¶¶ 121-127. Lastly, Plaintiff alleges

that Raymond James' failure to monitor or otherwise conduct suitability reviews of fee-based accounts and failure to have procedures in place to do so after the transfer of assets fell below the standard of care expected and was negligent (**Count IV**). *Id.* ¶¶ 128-134. According to the complaint, the standards of care expected of broker-dealers such as Raymond James are set forth in the rules of the Financial Industry Regulatory Authority (FINRA). *Id.* ¶¶ 123-126, 130-133. Those rules impose a number of obligations on broker-dealers including duties to: undertake reasonable diligence to ascertain the customer's investment profile; have a reasonable basis to believe that a recommended transaction or investment strategy involving securities is suitable for the customer; and make only those recommendations that are consistent with the customer's best interest. *Id.* ¶¶ 37-50.

Raymond James has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id.* at p. 7.  It argues that the complaint is a legally incoherent shotgun pleading, fails to state a claim for breach of fiduciary duty or negligence, and states class action claims that are precluded by the Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb(f)(1) ("SLUSA" or "the Act"). *Id.* It also contends that the claims asserted are subject to dismissal based on the independent tort doctrine. *Id.* at p. 28-29.

## II.   LEGAL STANDARD

In its complaint, "[a] party must state its claims . . .  in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P.

10(b). Additionally, each claim founded on a separate transaction or occurrence must be stated in a separate count if doing so would promote clarity. *Id.* Complaints that violate this rule are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Pleading claims in such form fails to give defendants adequate notice of the claims against them and the grounds upon which each claim rests. *Id.* at 1323. A shotgun pleading is an unacceptable form of establishing a claim for relief and warrants striking of a complaint. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 984 (11th Cir. 2008) (collecting cases), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

A court may also dismiss an action if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). It is well established that "[a] complaint must not be dismissed unless it is shown that plaintiff can prove no set of facts in support of this claim, which would entitle him to relief." *Jackam v. Hosp. Corp. of Am. Mideast*, 800 F.2d 1577, 1579 (11th Cir. 1986).

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the

elements of a cause of action are not sufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

In ruling on a motion to dismiss, "[a] court is generally limited to reviewing what is within the four corners of the complaint." *Austin v. Modern Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir.2006)). This includes attachments or exhibits provided with the complaint. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes "part of the pleading for all purposes," Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss."); *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (noting that attached exhibits to a complaint can be considered on a motion to dismiss). "[W]hen exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.' " *Gill*, 941 F.3d at 514.  A document outside the four corners of the complaint may still be considered if it is

central to the plaintiff's claims and is undisputed in terms of authenticity. *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1297 n.15 (11th Cir. 2011) (citing *Maxcess, Inc. v. Lucent Techs., Inc.,* 433 F.3d 1337, 1340 n. 3 (11th Cir.2005)).

## III.   DISCUSSION

### a.  <u>Shotgun Pleading</u>

Defendant argues that the complaint should be dismissed as a shotgun pleading. [Doc. 122 at pp. 29-31]. It identifies the following reasons as to why the complaint is a shotgun pleading: (i) complete overlap between the paragraphs incorporated into Counts I and III and those incorporated into Counts II and IV; (ii) every Count incorporates the new "scheme" allegations in ¶¶ 59-93 without regard to pre-transfer and post-transfer distinctions; and (iii) Counts III and IV each cover multiple purported grounds for relief; and (iv) that inconsistent theories, which are not pleaded in the alternative, pervade the complaint and cannot simultaneously be true. *Id.*

In opposition, Plaintiff explains that the complaint asserts two categories of claims distinguished by periods of time—before and after transfer of assets—and that factual allegations have been separated based on the two relevant timeframes and incorporated into appropriate claims. [Doc. 131 at p. 17].  She contends that this is permitted by the Federal Rules and provides Raymond James "adequate and fair notice" of the claims against it and the grounds upon which each claim rests. *Id.* at p. 18. She also contends that the Federal Rules permit the pleading of alternative claims based on the same facts and that the same facts form the bases for both its negligence and breach of fiduciary duty claims.

The Eleventh Circuit has identified four general types of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). "The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. Another recognized type of shotgun pleading is a complaint that "commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) ("A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'").

The arguments raised by Defendant as to shotgun defects lack merit. First, as Plaintiff points out, the complaint alleges claims based on two relevant time periods—prior to transfer of Plaintiff's and putative class members' assets to fee-based accounts *and* after transfer to these accounts. The resulting separation of allegations, based on relevant time period, and incorporation into counts based on the time period at issue does not run afoul of the rules of pleading. In fact, it makes it clear that Plaintiff is asserting claims based on what Defendant did or did not do *both* before *and* after the

transfer of assets and change in accounts. Additionally, the incorporation of the "new scheme allegations in ¶¶ 59-93" does not muddle the claims, nor does it diminish the clarity of the claims asserted. Next, the fact that each negligence claim is premised on a "failure to conduct suitability analyses and/or have procedures in place to determine the suitability of fee-based accounts" does not render those claims improperly pleaded. This does not raise two separate claims as Defendant suggests. Instead, it sets forth two means of proving Defendant's negligence in switching Plaintiff and putative class members to fee-based accounts. Lastly, the Court agrees with Plaintiff that pleading in the alternative is allowed by the Federal Rules. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). The Court therefore rejects the arguments presented by Defendant as to why the complaint is a shotgun pleading.

### b. Preclusion by Securities Litigation Uniform Standards Act

Raymond James argues that Plaintiff cannot bring the claims as class action claims as they are barred by the Securities Litigation Uniform Standards Act. "Congress enacted the Securities Litigation Uniform Standards Act to ensure that securities fraud class actions were brought under federal law and in federal court." *Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1344 (11th Cir. 2008). The Act grew out of concerns that plaintiffs and their attorneys, in order to avoid the

hurdles of the Private Securities Litigation Reform Act of 1995, were bringing securities fraud class actions under state law, often in state court. *Id.* As such, the Act contains the following core provision:

> **Class action limitations**
>
> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> > **(A)** a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
> > **(B)** that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C.A. § 78bb(f)(1). Raymond James argues that both subsections apply to preclude Plaintiff's claims because the state claims are predicated on material misstatements or omissions and the complaint alleges that the transition between accounts is part of an institutional, undisclosed deceptive scheme aimed at increasing Raymond James' profits at the expense of its clients. [Doc. 122 at p. 13]. Plaintiff responds that Raymond James' attempt to recast her common law claims as statutory securities claims is wrong, and that regardless, the Act does not apply because a lack of suitability analysis that affects the choice of account type is not "material" or "in connection with" the purchase or sale of covered securities. [Doc. 13 at p. 10]. There is no dispute that the complaint alleges a covered class action and asserts state law claims, as Raymond James contends, thus satisfying two of the elements for SLUSA

preclusion. [Doc. 122 at p. 21]. The issue presented is whether the allegations bring the lawsuit within the scope of either subsection (A) or (B) of the Act.

    i.    *Misrepresentation or omission of a material fact*

Raymond James argues that the most obvious omission alleged by the complaint is that it failed to inform customers that it was not determining whether the account was suitable, either before or after transferring the customer's assets into a fee-based account. *Id.* at pp. 17-18. However, the allegation cited does not support Raymond James' contention. Instead, that allegation states that the registered representative knew that Plaintiff's investment strategy was buy-and-hold, did not conduct the suitability analysis, advised Plaintiff to transfer assets, and did not advise Plaintiff that the account was not suitable for her. [Doc. 117 ¶ 30]. The Court will not infer, from this allegation, that Raymond James did not inform Plaintiff that it was not conducting a suitability analysis. *See Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) ("When ruling on a motion to dismiss, we "accept[ ] the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor.").

Raymond James also argues that the complaint alleges that it falsely represented in the Freedom Agreement that it would conduct an "assessment of suitability" upon transferring clients into the Freedom Account. *Id.* at p. 18. Raymond James fails to identify which paragraph of the Second Amended Complaint contains the allegation that it made misrepresentations to Plaintiff. Rather, it cites to the Freedom Agreement, which is attached to its motion to dismiss. Upon review, the agreement plainly references "[t]he assessment of suitability of investment," not account types, which is

the issue raised by Plaintiff in this action. [Doc. 122-2 at p. 5]. As such, Raymond James has not identified any allegation made by Plaintiff that Raymond James engaged in misrepresentations. But even if the Second Amended Complaint contains allegations of misrepresentation, a misrepresentation that would only influence an individual's choice of broker, or account type, as is the case here, is not "material" for purposes of SLUSA. *Brink v. Raymond James & Assocs., Inc.*, 892 F.3d 1142, 1148 (11th Cir. 2018). "[F]or SLUSA to preclude a state law class action the misrepresentation must make[] a significant difference to someone's decision to purchase or to sell a covered security." *Id.* (quotation omitted). Raymond James has failed to show that the purported misrepresentation is of a material fact.

ii. *Manipulative or deceptive device or contrivance*

The Court agrees with Raymond James that the complaint alleges a deceptive device or contrivance. The complaint alleges that Raymond James had a practice of strongly encouraging its registered representatives to transfer clients into fee-based Freedom Accounts and that transitioning smaller clients to Freedom Accounts was more profitable for the registered representative. [Doc. 117 ¶¶ 60, 65, 76, 71]. The Freedom Account charged asset-based fees that were far higher than the per transaction fees for commission-based accounts and was not suitable for buy and hold investors like Plaintiff and the putative class members. *Id.* ¶32, 30. In spite of this knowledge and its fiduciary duties, and without conducting any suitability analysis, Raymond James' registered representatives advised Plaintiff and putative class members to transfer their assets from commission-based accounts to fee-based

accounts. *Id.* 30, 33.  At no time was Plaintiff advised that the fee-based account was not suitable for her. *Id.* ¶ 30. After switching accounts, upon the advice of the Raymond James representative, Plaintiff and putative class members paid substantial fees to Raymond James. *Id.* ¶ 34. Raymond James profited significantly at the expense of its clients. *Id.* ¶ 77. The complaint essentially alleges a scheme by Raymond James to transfer clients to fee-based accounts, in order to increase its profits, at the clients' expense.

*iii.    In connection with the purchase or sale of a covered security*

For SLUSA to apply the deceptive scheme must be "[i]n connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). This means that the manipulative or deceptive device or contrivance must make a significant difference to someone's decision to purchase or to sell a covered security. *Anderson v. Edward D. Jones & Co., L.P.*, 990 F.3d 692, 703 (9th Cir. 2021) (quoting *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014)).[2]

Like here, the plaintiffs in *Anderson* were buy and hold clients of an investing firm. *Id.* at 696. They alleged, among other things, that the defendant had violated its state law fiduciary duties by failing to conduct a "suitability analysis" before inviting them to move their assets from per trade commission-based accounts to fee-based

---

[2] The Court notes that a petition for writ of certiorari was filed in the *Anderson* case on October 15, 2021 and remains pending. *See* Supreme Court of the United States*, Search Results for Case No. 19-17520*, https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/21-552.html (last visited Dec. 23, 2021).

accounts for which the defendant charged a flat annual asset management fee. *Id.* at 696-697. The appellate court found that the state law fiduciary duty claims were not barred as a class action by SLUSA because the alleged failure to conduct a suitability analysis was not material to the decision to buy or sell any covered securities, such that the state law claims were not based on alleged conduct that is "in connection with" the purchase or sale of any covered securities. *Id.* at 709.

The court reasoned, among other things, that "[c]hoosing a broker or specific type of account is fundamentally different than choosing to buy or sell a covered security" and that Plaintiffs did not allege they would have purchased or sold different covered securities had the defendant conducted a suitability analysis, which might have resulted in them remaining in commission-based accounts. *Id.* at 705, 706. The court further noted that the claims were based on the allegation that the switch itself was improper without a suitability analysis. *Id.* at 708.

The same is true in this case. The complaint pleads a deceptive scheme that affected Plaintiff's and the putative class members' choice as to the vehicle for investing their assets. This is not intrinsic to the investment decision itself. *Brink*, 892 F.3d at 1148–49. That securities in Plaintiff's commission-based accounts were sold upon her transfer to the fee-based account, and then new securities were subsequently purchased for that account, is too remote a connection to satisfy the requirements of SLUSA. In fact, there is no allegation as to whether or not these purchases or sales would still have been made had a suitability analysis been conducted or had Plaintiff remained in

commission-based accounts. As such, the complaint does not allege a connection between the deceptive scheme and the sale or purchase of securities.

### c.  Application of the Independent Tort Doctrine

Raymond James then argues that all four counts are barred by the independent tort doctrine as each depends entirely on Plaintiff's contracts with Raymond James. [Doc. 122 at pp. 28-29]. The Court, however, does not agree. "Under Florida's independent tort doctrine, 'it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims.' " *Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*, No. 8:20-CV-VMC-JSS, 2020 WL 5350303, at *5 (M.D. Fla. Sept. 4, 2020) (quoting *Spears v. SHK Consulting and Dev., Inc.*, 338 F. Supp. 3d 1272, 1279 (M.D. Fla. 2018)).

> The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract.

*HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996); *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 742 (11th Cir. 1995) ("Although the economic loss rule bars recovery for tort claims arising from breach of a contract, the doctrine does not preclude a claim for damages occasioned by an independent tort.").

This Court has frequently applied this doctrine when barring tort claims which are grounded in and do not go beyond a contract. *See, e.g.*, *Spears*, 338 F. Supp. 3d at 1279 (barring constructive fraud claim as to one defendant on the basis of the independent tort doctrine as Plaintiff alleged no conduct separate from the Licensing Agreement upon which that claim could be based); *CMR Constr. & Roofing LLC v. Orchards Condo. Ass'n, Inc.*, No. 2:20-CV-422-JES-MRM, 2021 WL 597728, at *3 (M.D. Fla. Feb. 16, 2021) (finding that negligent acts attributed to CMR—in counterclaim—are not independent of those acts which breached the contract, but are instead premised upon a duty that arises from the agreements between CMR and The Orchards, and thus barred by the independent tort doctrine); *Nafta Traders, Inc. v. Corkcicle, LLC*, No. 6:19-CV-1672-WWB-GJK, 2020 WL 7422060, at *3 (M.D. Fla. May 27, 2020) (claim for fraud barred by independent tort doctrine based on determination that it was not independent of the conduct or injury alleged with respect to claim for breach of contract claim); *Developmental Techs., LLC v. Mitsui Chemicals, Inc.*, No. 8:18-CV-1582-JDW-TGW, 2019 WL 1598808, at *6 (M.D. Fla. Apr. 15, 2019) (fraudulent inducement claims subject to dismissal under independent tort doctrine as Plaintiff failed to allege conduct beyond and independent of the contract).

This Court has also declined to apply the doctrine where it determined that the tort claim was not based solely on a contract between the parties. *See George & Co. LLC v. Spin Master Corp*, No. 2:18-CV-154-SPC-MRM, 2018 WL 5268754, at *4 (M.D. Fla. Sept. 13, 2018) (independent tort doctrine did not bar claims for breach of fiduciary

duty where amended complaint pleaded breaches of fiduciary duty that were independent from breaches of the License Agreement where—among other things— the Agreement was not the sole basis for the fiduciary relationship); *Cont'l 332 Fund, LLC v. Kozlowski*, No. 2:17-CV-41-SPC-MRM, 2020 WL 1234808, at *5 (M.D. Fla. Mar. 13, 2020) (reasoning that fraud allegations were separate and distinct from defendants' performance under the contract in holding that fraudulent inducement claim, as alleged, was independent of a breach of contract claim and thus not barred by independent tort doctrine), *reconsideration denied*, No. 2:17-CV-41-SPC-MRM, 2020 WL 2573292 (M.D. Fla. May 21, 2020); *Robinson v. Madison Bank*, No. 8:07-CV-139-EAK-EAJ, 2007 WL 9723948, at *2 (M.D. Fla. Apr. 23, 2007) (denying motion to dismiss as to independent tort argument on the basis that Plaintiff's allegations of Defendant's misconduct arose independently from the Pledge Agreements); *CMR Constr. & Roofing*, 2020 WL 6273740, at *3 (M.D. Fla. Oct. 26, 2020) ("[T]he fraud allegations are separate and distinct from defendants' performance under the contract. The fraud allegations concern representations about the Assignment and the authority to enter into an assignment, not performance of the Contract for Services. The Contract for Services contains no statements about either. Such fraud and negligence claims therefore could not form the basis of a breach of contract claim, and are not barred under Florida law.") (internal quotation and citation omitted).

Plaintiff's Second Amended Complaint asserts two counts for breach of fiduciary duty and two counts for negligence. [Doc. 117]. It alleges that Raymond James is a registered broker-dealer with FINRA and that FINRA rules reflect the

accepted norms of practice for broker-dealers. *Id.* ¶¶ 26, 37-50. Raymond James allegedly violated these norms by not determining what type of account was most suitable for buy and hold investors before transferring their assets from commission-based to fee-based accounts and by not monitoring these accounts to determine whether the clients' assets should have been moved back. *Id.* ¶¶ 29, 30, 35, 49-50, 51, 56, 112, 119, 125, 133. Additionally, Raymond James failed to have processes and procedures in place to determine the suitability of fee-based accounts per client before and after transferring the clients' assets into these accounts and negligently supervised its registered representatives in connection with its failure to conduct such suitability analyses and monitoring. *Id.* ¶¶ 126, 133. These acts were purportedly in breach of Raymond James' duty to act in accordance with the standard of care used by other professionals in the community and the duty of care and loyalty under state law. *Id.* ¶¶ 35, 37, 45, 57-58, 87-93.

The claims raised in this action do not depend on the contract between Raymond James and its clients. Rather, they hinge on industry standards and practices, evidenced by FINRA rules, which set the obligations imposed on Raymond James in its capacity as a broker-dealer to clients including Plaintiff and putative class members. *Id.* ¶¶ 37-50, 57-58, 87-93. Several allegations of the complaint make this apparent. For example, Plaintiff generally alleges that:

> FINRA prohibits broker-dealers from disclosing away their suitability obligations. . . . Thus, the Freedom Account Agreements and any related agreements entered into between [Raymond James] and its clients cannot discharge [Raymond James']

> duty to perform a suitability analysis before transferring its clients' assets from commission-based accounts into Fee-Based Accounts and or allowing these assets to remain in fee-based Freedom Accounts.

*Id.* ¶ 93. Allegations specific to each of the four counts are also consistent with the theory of liability, i.e., that the claims are grounded in duties that go beyond any contract with Raymond James. Specifically, Count I—premised on conduct occurring before Plaintiff agreed to the Freedom Agreement—states that Raymond James breached its duties under Florida law as a broker-dealer selling securities. *Id.* ¶¶ 109-112. In Count II—addressing conduct occurring after the execution of the Freedom Agreement—Plaintiff described Raymond James' fiduciary relationship with Plaintiff as an "existing" one under Florida law. *Id.* ¶ 118. Counts III and IV both allege Raymond James owed a duty of care based on its role as a broker-dealer and that this required it to exercise the standard of care used by similar professionals in the community under similar circumstances. *Id.* ¶¶ 123, 130. Based on Plaintiff's allegations, the claims are grounded in facts that go beyond the parties' agreement and thus not barred by the independent tort doctrine.

### d.  Failure to State Claims

Raymond James presents two additional arguments as to why the claims are not legally sufficient. First, it argues that Plaintiff cannot state a claim for violation of a fiduciary or common-law duty based on alleged differences in the accounts' costs to Plaintiff. [Doc. 122 at p. 23-24]. It explains that the claims are facially implausible because the Freedom Account was a wholly different investment program from the

commission account, and a claim of differing fees is only actionable if the higher-fee account provides "the same services and benefits to the customer" as the lower-fee alternative. *Id.* at pp. 25-27. Second, Raymond James argues that the claims are implausible because they are inconsistent with the Client Agreement and Freedom Agreement. *Id.* at pp. 27-28. Specifically, it states that Plaintiff's allegations that it "failed to conduct any suitability analysis" are inconsistent with the account-opening documents and Plaintiff's own allegations confirming that it indeed monitored Plaintiff's Freedom Account. *Id.* at p. 28. The Court agrees with Plaintiff that such fact-based arguments should not be considered at this stage of the litigation. Whether Plaintiff and putative class members paid higher fees for additional benefits and whether Raymond James conducted a suitability analysis through use of client questionaries may be relevant at the summary judgment stage. Such issues are not properly before the Court at this time, as the Court must accept the well-pleaded factual allegations in the Second Amended Complaint.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Taking the allegations as true, Plaintiff has plausibly alleged claims for breach of fiduciary duty and negligence. "[T]o establish a breach of fiduciary duty under Florida law, a plaintiff must prove three elements: the existence of a fiduciary duty, a breach of that duty, and that the plaintiff's damages were proximately caused by the breach." *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 989 (11th Cir. 2020). Sufficient facts have been alleged as to

Raymond James' duty, the source of that duty, and its relationship with its clients, so as to render the claim plausible. In detail, the complaint explains that Raymond James served Plaintiff and putative class members as a broker-dealer, and based on Florida law, had certain fiduciary obligations to Plaintiff and these putative class members, which it failed to carry out resulting in damages to Plaintiff and the putative class members. "[T]o succeed on a claim of negligence, a plaintiff must establish the four elements of duty, breach, proximate causation, and damages." *Limones v. Sch. Dist. of Lee Cty.*, 161 So. 3d 384, 389 (Fla. 2015) (citing *U.S. v. Stevens,* 994 So.2d 1062, 1065–66 (Fla.2008)). Upon review of the Second Amended Complaint, Plaintiff has alleged sufficient facts to plausibly state a claim based on Raymond James' failure to engage in certain acts and employ the use of certain safeguards in its role as broker/dealer.

## IV.   CONCLUSION

In sum, Plaintiff has sufficiently pleaded causes of actions for breach of fiduciary duty and negligence against Raymond James. The claims are not barred by the independent tort doctrine as they are grounded in facts that go beyond the parties' agreement. Additionally, they are not precluded from being litigated as class action claims by SLUSA, as the Second Amended Complaint does not allege that the acts at issue are material or in connection with the purchase or sale of covered securities.

Accordingly, it is hereby **ORDERED**:

1. Defendant Raymond James & Associates, Inc.'s Motion to Dismiss the Second Amended Complaint and Incorporated Memorandum of Law [Doc. 122] is **DENIED**.

2. Defendant shall answer the Second Amended Complaint in accordance with the Federal Rules of Civil Procedure.

**DONE AND ORDERED** in Tampa, Florida on December 23, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any