## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KIMBERLY NGUYEN,

      Plaintiff,

v.                                  Case No: 8:20-cv-195-CEH-AAS

RAYMOND JAMES & ASSOCIATES,
INC.,

      Defendant.

_____

## **ORDER**

This matter comes before the Court on the following motions: Defendant's *Daubert* Motion to Exclude Opinions and Testimony of Douglas J. Schulz (Doc. 160), Defendant's *Daubert* Motion to Exclude Opinions and Testimony of Arthur Olsen (Doc. 161), Plaintiff's respective responses in opposition (Docs. 171, 172), Plaintiff's *Daubert* Motion to Exclude Reports and Opinions of Peter J. Klouda (Doc. 174), and Defendant's response in opposition (Doc. 187).   A hearing on the motions was conducted on February 28, 2022, and March 3, 2022.[1]  The Court, having considered the motions, heard argument of counsel, and being fully advised in the premises, will

---

[1] The hearing also addressed Plaintiff's *Daubert* motion to Exclude Reports and Opinions of Joseph J. Thomas (Doc. 173), Plaintiff's Motion to Strike the Declaration of Alfred Caudullo (Doc. 175), and Defendant's respective responses in opposition (Docs. 186, 185).  The Court entered oral orders on these motions (Docs. 173, 209).  The hearing also addressed Plaintiff's Motion for Class Certification (Doc. 147), Defendant's response in opposition (Doc. 162), and Plaintiff's reply (Doc. 170).  The Order resolving the class certification motion will be entered separately.

**grant** the motions to exclude the opinions of Schulz and Olsen (Docs. 160, 161), and **grant-in-part** and **deny-in-part** the motion to exclude the opinions of Klouda (Doc. 174).

## I.    BACKGROUND

### A. Factual Allegations

Plaintiff Kimberly Nguyen brings this action on behalf of herself and all similarly-situated individuals against Defendant Raymond James & Associates, Inc. (RJA), for breach of fiduciary duty and negligence (Doc. 117).

Plaintiff has been a client of RJA, a broker-dealer and investment advisor firm that is registered with the Financial Industry Regulatory Authority (FINRA) and the United States Securities and Exchange Commission (SEC), since 2015. *Id.* ¶¶ 25-26. Plaintiff's assets with RJA were initially held in a commission-based account that charged a modest fee per trade. *Id.* ¶¶ 2, 27. Because her investment strategy was to "buy and hold," meaning she did not execute many trades, she paid very little in commissions. *Id.* ¶¶ 2, 27, 29. In 2016, RJA's registered representative advised Plaintiff to transfer her assets into a fee-based "Freedom Account." *Id.* ¶¶ 30. Freedom Accounts charge an annual fee based on the percentage of assets in the account rather than the number of transactions; the fee is therefore the same regardless of trading activity. *Id.* ¶ 4. Plaintiff alleges that the RJA registered representative did not conduct an analysis of the suitability of this type of account for her investment profile before advising her to switch or at any time thereafter. *Id.* ¶¶ 30, 51. Because of her low

trading activity, Plaintiff was charged substantially more in fees once she switched to a Freedom Account than she would have been if her assets had remained in a commission-based account. *Id.* ¶¶ 52-55.

Plaintiff further alleges that RJA's policies and practices were designed to strongly encourage its registered representatives to advise clients to switch to Freedom Accounts regardless of suitability. *Id.* ¶¶ 59-85.  Consequently, a number of other RJA customers with low trading activity, like Plaintiff, were transferred into Freedom Accounts that were inherently unsuitable for them, resulting in the customers paying much higher fees than they would have otherwise. *Id.* ¶¶ 33-34.  Plaintiff asserts that RJA's actions constituted negligence and a breach of its fiduciary and regulatory duties as to her and to all similarly-situated individuals. *Id.* ¶¶ 8-11.

### B.  *Expert Opinions Regarding Class Certification*

Plaintiff has moved for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure (Doc. 147).  Defendant opposes this motion (Doc. 162).  Each party seeks to offer expert opinions in support of their respective positions (Docs. 148-44, 148-50, 160-11).

First, Plaintiff seeks to offer the expert opinion of Douglas J. Schulz. Docs. 148-44, 148-48.  Schulz has served as an expert in more than 1100 securities-related disputes, including many related to the specific issues raised in the instant action. *Id.* at 9-14.  He carries the highest-level certification in securities regulations offered by FINRA, and has previously held licenses as a Registered Investment Advisor, a FINRA series 7 registered stockbroker, and a General Principles license series 24

supervisor. *Id.* at ¶¶ 7, 9.   In addition to his experience as a stockbroker, money manager, and vice president of major investment firms, Schulz has owned his own investment advisor firm. *Id.* ¶¶ 7-8.  He is also a published author. *Id.* ¶¶ 9, 11, 12, 17.

Schulz explains that minimum industry standards require broker-dealers to ensure and document that an account type is and remains suitable for a particular customer. *Id.* ¶ 20(a).  He asserts that account-type suitability can be determined using two objective metrics that calculate an investor's trading volume. *Id.* ¶ 20(c).  For customers who are low trading volume, or "buy and hold," a fee-based account such as the Freedom Accounts is inherently unsuitable. *Id.* ¶ 20(b).  Schulz developed an objective formula which he contends can identify the putative class members of the instant action: those RJA customers who were transferred to Freedom Accounts that were unsuitable to them. *Id.* ¶ 20(j).  He also developed a formula to calculate class members' damages, which are the excessive fees incurred in the fee-based accounts that would not have been incurred if the customers had remained in commission-based accounts. *Id.* ¶ 20(k).

Plaintiff's second proposed expert, Arthur Olsen, is a database expert and data analyst with over 25 years of experience in the field of information technology. Doc. 148-50 ¶ 3.  Along with providing database consulting services for companies, he has served as a data expert in class action lawsuits. *Id.* ¶¶ 7-9.  Olsen was instructed by Schulz to analyze the data RJA produced in connection with the instant litigation and apply Schulz's formulas for identification of class members and damages. *Id.* ¶ 12. Applying the formula for class member identification to a sample of 34,000 Freedom

Accounts that were opened with assets from commission-based accounts, Olsen identified over 70% of the sample as meeting the standard for inclusion in the class (Doc. 147 at 21). He projected that the total class likely exceeds 25,000 members. *Id.* at 22.

Olsen then applied the damages formula to Plaintiff and to a sample of other putative class members. Doc. 148-50 ¶¶ 31, 36. He determined that Plaintiff's annual damages amounted to $2,702 and the average class member's were $3,768 per account. *Id.* Olsen also applied the formula to a larger data set to verify that the sample was representative of the larger population. *Id.* ¶ 37. He concluded that he would be able to calculate damages programmatically once he received the full data set and the appropriate return metric. *Id.* ¶ 38.

Based on Schulz's and Olsen's expertise, Plaintiff argues in her motion for class certification that she satisfies the Rule 23 factors of numerosity, commonality, and typicality. Doc. 147 at 22-24.

In opposing class certification, Defendant seeks to offer the expert opinion of Peter J. Klouda (Doc. 160-11). Klouda is a financial services consultant with over 20 years of experience in the financial services arena. *Id.* at 14-15. After previously working for a broker-dealer, he is now a director at an expert services firm. *Id.* He has consulted on thousands of FINRA-related matters and offered expert testimony in more than 30 matters. *Id.* at 15.

Klouda reviewed Plaintiff's motion for class certification, Schulz's reports, and the second amended complaint. He concluded that Schulz's test for account-type

suitability and class membership is "not recognized as a legitimate test for suitability in the securities industry," describing it as "fabricate[d]." *Id.* at 5-6.  Moreover, he asserts that the test is over-inclusive, improperly encompassing "many purported class members for whom a Freedom Account was and is suitable." *Id.* at 6.

Turning to Schulz's damages model, Klouda describes it as "novel and unsupportable" because it is based on "pure speculation" regarding what fees or commission an individual investor would have incurred in a commission-based account. *Id.* at 3.  He asserts that the window Schulz used to derive the hypothetical future trading numbers is too short to be able to predict future activity. *Id.* at 4.  Klouda further points out that the model fails to account for any class members who would have zero damages because their Freedom Accounts outperformed the hypothetical performance of a commission-based account. *Id.* at 6-7.

### *C.* **Daubert** *Motions*

Each party argues that the other's experts should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) (Docs. 160, 161, 174).

First, Defendant argues that Schulz does not satisfy any prong of the *Daubert* standard (Doc. 160).  He is unqualified, in Defendant's view, because he has not worked for a broker-dealer or held a license for over 30 years, and he has no expertise or training in statistics or data analytics that would qualify him to create the models in the instant case. *Id.* at 12-13.  Defendant next argues that Schulz's opinions are

unreliable for a number of reasons, including that they are contradicted by the myriad authorities holding that suitability requires an individualized determination. *Id.* at 14-16. To demonstrate the unreliability of his conclusions, Defendant points to several instances in which Schulz allegedly erred in his analysis, his underlying assumptions, or his understanding of the situation. *Id.* at 17-19, 20-25. The lack of peer review or scientific methodology in the creation of these formulas further diminishes their reliability. *Id.* at 19-20. For similar reasons, Defendant also asserts Schulz's expertise is not helpful to the Court. *Id.* at 25.

Responding in opposition, Plaintiff first explains that Schulz is fully qualified to develop these models and to provide his expertise in the instant action. Doc. 171 at 5-6. Contrary to Defendant's assertions, Schulz has both supervisor qualifications and extensive experience analyzing data. *Id.* Further, Defendant's own expert, Klouda, agreed that the formulas on which Schulz's models are based are often used in securities litigation. *Id.* at 6.

Plaintiff next responds to the reliability arguments. According to Schulz, while suitability is inherently individual, *un*suitability may be determined through objective metrics. *Id.* at 7-8; Doc. 148-48 ¶¶ 28-81. Nor did the authorities Defendant relies on concern account type suitability, versus the suitability of an individual investment; Plaintiff argues that the caselaw is otherwise inapposite to the instant litigation. Doc. 171 at 6-13. Plaintiff further disagrees with Defendant's claims that Schulz has erred, and points out that peer review and error rate are not applicable to all forms of expert testing. *Id.* at 13-20.

Defendant also seeks to exclude the opinions of Arthur Olsen, Plaintiff's data expert (Doc. 161). Defendant argues that Olsen's opinions are neither relevant nor reliable because they are exclusively based on Schulz's opinions, which Olsen has not analyzed for their validity. *Id.* at 12-17. Defendant further asserts that Schulz's and Olsen's opinions are so interlinked that each must be excluded, even if it could independently withstand *Daubert* scrutiny, purely because the other is excludable. *Id.* at 18-22. Defendant also identifies a second ground for exclusion under Federal Rule of Civil Procedure 26, because Olsen's report does not fully disclose the materials on which Olsen relied. *Id.* at 22-24.

Opposing the motion, Plaintiff contends that Olsen's application of mathematical formulas to multiple fields of data is beyond the ken of the average layperson, and is therefore relevant and helpful to the question of class certification even though Olsen does not have independent knowledge of the formulas' validity. Doc. 172 at 11-16. In fact, courts have routinely permitted Olsen to testify as a data expert to accompany an underlying subject-matter expert whose expertise Olsen does not share. *Id.* at 5, 13-14. Contrary to Defendant's arguments, Plaintiff asserts that Olsen has demonstrated that the method of calculating damages is not speculative and is both reliable and reasonable, able to be adapted to any data set. *Id.* at 18, 20-21. Plaintiff agrees, however, that Schulz's and Olsen's respective admissibility goes hand in hand with the other's. *Id.* at 18-19, 22. Finally, Plaintiff disagrees that Olsen's report violated Rule 26, but argues that any error would be harmless because Defendant was not prejudiced and did not try to resolve the error in good faith. *Id.* at 22-24.

In turn, Plaintiff seeks to exclude the opinions of Defendant's expert, Peter Klouda, regarding the damages calculations, the reasonableness of the charged fees, and the value of account rebalancing (Doc. 174). Plaintiff first argues that Klouda is unqualified to offer these opinions because his primary experience is in being an expert witness, and he does not possess any experience or training in the subtopics about which he opines. *Id.* at 9-10, 20-21. Klouda's conclusions are unreliable and unhelpful because they are premised on his flawed or incomplete understanding of topics in the field, such as the prevalence of the disgorgement model of damages for breach of fiduciary duty claims or the burden of proof in an offset analysis. *Id.* at 13-16, 22-23. Overall, Plaintiff contends his opinions are not helpful because, at best, they lack foundation and amount to arguments that Defendant's attorneys could make; at worst, they are misleading to the court. *Id.* at 18-19, 24-25, 28-29. Plaintiff also notes that a declaration by Klouda should be stricken because it is untimely. *Id.* at 6 n.1; *see* Docs. 162-9, 161-4, 160-8.

In opposition, Defendant argues that Klouda is fully qualified because he has not only conducted tens of thousands of forensic reviews of investment accounts, but also conducted suitability analyses in his previous role at Merrill Lynch. Doc. 187 at 6-7, 10-12. An expert may be qualified even if their experience does not precisely match the matter at hand, and Klouda's lack of familiarity with class action matters and legal standards does not detract from the expertise he provides. *Id.* at 9, 13-14. Defendant asserts that Klouda's experience alone establishes the reliability of his opinions, and that Plaintiff's arguments largely relate to the merits rather than the

reliability of Klouda's methodology. *Id.* at 15-16. In any event, his opinions are not lacking or misleading, and will help the court understand the evidence. *Id.* at 16-23. Finally, Defendant contends that Klouda's declaration should not be stricken because it contains no new information and did not prejudice Plaintiff. *Id.* at 23-24.

## D. LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 is a codification of the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court described the gatekeeping function of the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Id.* at 589; *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*). The Supreme Court extended its reasoning in *Daubert* to non-scientist experts in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

In performing its gatekeeping function, the Court must consider whether:

(1) the expert is qualified to testify competently regarding the matters he intends to address, (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*, and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Thus, the three discrete inquiries to determine the admissibility of expert testimony are qualifications, reliability, and relevance. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1341 (11th Cir. 2003). Although there is some overlap among these inquiries, they are distinct concepts that the Court and litigants must not conflate. *Id.*

"The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1261 (11th Cir. 2004) (citation omitted). "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1113 (11th Cir. 2005). The admission of expert testimony is a matter within the discretion of the district court, which is afforded considerable leeway in making its determination. *Frazier*, 387 F.3d at 1258.

The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury: "[v]igorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311–12 (11th Cir. 1999).

### E. DISCUSSION

The Court first concludes that, although Douglas Schulz is well-qualified, the opinions he has offered with respect to class certification are not sufficiently reliable and must be excluded.  Plaintiff concedes that the Court's ruling as to Schulz renders Arthur Olsen's opinions inadmissible as well.   Evaluating Peter Klouda independently, the Court concludes that his opinions regarding damages are admissible, but that his opinions regarding the reasonableness of the account fees must be stricken.

### A. Defendant's Motion to Exclude Opinions and Testimony of Douglas Schulz

Douglas Schulz is Plaintiff's main expert witness, offering opinions about both liability and damages in the context of class certification.  Initially, the Court finds that Schulz is qualified to render his opinions.  Defendant does not make a serious challenge to Schulz's qualifications.  It is undisputed that Schulz has spent 40 years working in and studying the securities industry, including as a Vice President of Merrill Lynch and Bear Sterns, and has testified as an expert hundreds of times. *See*, *e.g.*, Doc. 171 at 7-8.  His background also includes a supervisory license as well as experience

in analyzing data, *see id.* at 9-10; *cf.* Doc. 160 at 17-18, in addition to the myriad qualifications Defendant does not challenge. Schulz is fully qualified to render expert opinions in this action.

Similarly, Defendant does not make a substantive challenge to the question of helpfulness, instead simply reciting a summary of its arguments regarding reliability. Doc. 160 at 30. Schulz's opinions are relevant and helpful to the Court on the issue of class certification because they are beyond the ken of the average non-expert. In order for an expert opinion to assist the trier of fact, it must "concern[] matters that are beyond the understanding of the average lay person." *U.S. v. Frazier,* 387 F.3d 1244, 1262 (11th Cir. 2004). Expert opinions that offer nothing more than what lawyers for the parties can argue in closing arguments generally do not assist the trier of fact. *Id.* Here, Schulz's opinions draw on his extensive experience to provide methods of identification of the prospective class of individuals impacted by RJA's alleged breach of duty and calculation of their damages. If his opinions are reliable, then they are undoubtedly relevant and helpful to the Court in rendering its determination on the motion for class certification.

The reliability of Schulz's opinions is the topic of true contention between the parties. The inquiry into a proffered expert's reliability is "flexible"; the Court must focus on the expert's principles and methodology, not on his conclusion. *Chapman v. Procter & Gamble Distributing, LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014). However, "conclusions and methodology are not entirely distinct from one another." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "[W]hen an expert purports to apply

principles and methods in accordance with professional standards, and yet reaches a conclusion that other experts in the field would not reach, the trial court may fairly suspect that the principles and methods have not been faithfully applied." Fed. R. Evid. 702 advisory committee's note to 2000 amendment; *see also Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1316 (11th Cir. 1999) (district court did not abuse its discretion in excluding conclusions in studies that were out of sync with the conclusions in the overwhelming majority of the studies presented); *Wheat v. Sofamor, S.N.C.*, 46 F.Supp.2d 1351, 1359 (N.D. Ga. 1999) (excluding expert conclusions that were based on generally accepted methods but were not shared by any other expert). The reliability analysis therefore applies to all aspects of an expert's testimony, including the methodology, the facts underlying the expert's opinion, and the link between the facts and the conclusion. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354–355 (5th Cir. 2007); *see also General Elec. Co.*, 522 U.S. at 146 ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Here, Defendant asserts that Schulz's opinions regarding class certification are not reliable because account suitability cannot be determined by an objective, two-factor test. Doc. 160 at 19-22.  Plaintiff responds that it is possible to determine account *un*suitability in such a manner. Doc. 171 at 7-8; 148-48 ¶¶ 28-81.  The parties agree, and the Court finds, that suitability is an inherently individualized analysis, whether applied to an investment or an account type.  Under FINRA Rule 2111(a), "[s]uitability…must be determined on an investor-by-investor basis, with reference to

the specific facts and circumstances of each investor."   Similarly, the SEC has recommended adding a provision of the Securities Exchange Act of 1934 regarding broker-dealers' obligation to act in their customers' best interest, which emphasizes that recommendations—expressly including account type recommendations—must be based on the customer's "investment profile," a holistic term that encompasses a variety of factors. *See* SEC Release No. 34-86031, 2019 WL 2420297, *279-80 (June 5, 2019) (text of future §§ 240.15/-1(a)(1), (a)(2)(ii)(B), (b)(2)).   Explaining the new provision, the SEC instructed that "cost is only one of many important factors to be considered regarding the recommendation… we are emphasizing the need to consider costs in light of other factors and the retail customer's investment profile." *Id.* at *13. The FINRA and SEC rules are not consistent with a theory that conclusively determines suitability *or* unsuitability by considering only the cost of fees and the customer's past trading history.

In light of this contrary authority, the singularity of Schulz's unsuitability model undermines its reliability.   Plaintiff is correct that the lack of peer-reviewed methodology and error rate is irrelevant to expert opinions that, like these, do not apply the scientific method. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999); Doc. 171 at 20; *cf.* Doc. 160 at 24-25.   However, Plaintiff has not offered external support for Schulz's models from any source.   While the metrics Schulz applied may be "standard formulas," *see* 171 at 20-21, his application of those metrics in the context of an unsuitability test is novel and unsupported by any authority other than Schulz himself. *See Allison*, 184 F.3d at 1316; *Wheat*, 46 F.Supp.2d at 1359, *supra*.

Plaintiff argues that the settlement proceedings in a 2018 SEC matter and 2005 NASD (now FINRA) matter buttress Schulz's methodology because they involved "substantially similar if not identical" methodologies in the context of account-type suitability. Doc. 171 at 17. Schulz states in his rebuttal report that both agencies' conclusions demonstrate it is possible to make findings regarding unsuitability without performing an individual analysis. Doc. 148-48 at 9-10. The Court does not agree. Both the SEC and the NASD concluded that RJA had failed to review their customers' accounts for suitability, which was of particular concern for low-trading customers because "fee-based accounts *may not* have been appropriate for them." *Id.* (emphasis added). The theory of liability in those proceedings was similar to Plaintiff's theory in this action, *see* Doc. 117 at, *e.g.*, ¶¶ 6-13, but it is not clear that the methodology aligned with Schulz's. Neither agency concluded that the accounts were *per se* unsuitable because of the customers' trading history. Rather, they concluded that low-trading customers *might* be unsuitable for these accounts, and RJA was obligated to conduct a review of their suitability. *See also* Doc. 217 at 115 (Plaintiff's counsel explaining NASD recommendation that a broker provide documentation when a customer opts for a higher-fee account for reasons other than cost). Based on the limited information that is available regarding these proceedings, they do not provide support for Schulz's opinion that *per se* unsuitability may be calculated in the aggregate using only a two-factor test.

Defendant also contends that the SEC and NASD matters are inapposite because they involved different account types than the Freedom Accounts at issue

here. Doc. 160 at 22-23.  Although Plaintiff argues that there is no material difference between the accounts, Doc. 171 at 18-19, the Magistrate Judge previously recognized that a distinction may exist. *See* Doc 92 (denying motion to compel production of documents related to SEC proceedings because, among other reasons, the SEC proceedings involved different types of accounts and were subject to different claims). Overall, in the absence of external support, the Court concludes that Schulz's opinions regarding the two-part test for liability are unreliable and will be excluded from consideration with respect to the class certification issue.

For similar reasons, Schulz's opinions regarding damages must also be excluded from consideration on the motion for class certification.  His damages model stems from his conclusion that Freedom Accounts were *per se* unsuitable for the group of customers identified by his two-factor test, which the Court finds is unreliable. Moreover, the damages model relies on additional assumptions, including that no putative class member would have opted for a Freedom Account despite the increased fees, and that they would have continuously engaged in the same volume of trading had they not switched to a Freedom Account. But these assumptions are speculative and unsupported by external authority. *See* Doc. 217 at 84-86; Doc. 160 at 17-18, 23, 25.  The Court will therefore strike Schulz's opinions regarding class-wide liability and damages for the purpose of the motion for class certification.

**B. Defendant's Motion to Exclude Opinions and Testimony of Arthur Olsen**

Arthur Olsen's expertise is offered by Plaintiff in order to apply Schulz's models regarding liability and damages to databases of Defendant's clients. The parties agree that Olsen's opinions are inextricably linked with those of Schulz, such that if Schulz's opinions are inadmissible, then Olsen's opinions based on Schulz's formulas are also not admissible. Doc. 161 at 18-21; Doc. 172 at 18-19. Accordingly, because the Court finds that Schulz's opinions must be excluded as unreliable, it will exclude Olsen's opinions as well.[2]

**C. Plaintiff's Motion to Exclude Reports and Opinions of Peter Klouda**

Peter Klouda is Defendant's damages expert. Plaintiff objects to three aspects of Klouda's opinions: damages, the reasonableness of fees, and the value of account rebalancing.[3] The Court need not determine whether Klouda's opinions regarding Schulz's damages model or the value of account rebalancing are admissible, because they were offered only in rebuttal to Schulz's opinions that have been excluded. *See* Doc. 160-11 3-10, 18-20. But Klouda's opinions regarding the damages suffered by Plaintiff and other putative class members and the reasonableness of the fees Plaintiff was charged are offered independently of Schulz, and will therefore be analyzed

---

[2] The Court's ruling as to the inadmissibility of Olsen's opinions renders Defendant's allegation of a Rule 26 violation moot. *See* Doc. 161 at 22-24. For the same reason, the Court need not make a finding as to Olsen's qualifications and the relevance of his opinions.

[3] The Court declines to strike Klouda's declaration as belated. *See* Doc. 174 at 6 n.1. Defendant states that the declaration is merely a summary of his reports, Doc. 187 at 23-24, and Plaintiff has not identified any information in the declaration that is "new or inconsistent with his reports and deposition testimony." Doc. 174 at 6 n.1.

independently. *See* Doc. 160-11 at 1 (in addition to assessing the validity of Schulz's damages model, Klouda was tasked with opining on "whether Ms. Nguyen and any purported class members may have suffered damages while invested in Freedom Accounts at RJA").

First, as with Schulz, the Court finds that Peter Klouda is qualified to provide expert testimony in this action. As other courts have noted, "[t]he qualification standard for expert testimony is 'not stringent' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009). While Plaintiff takes issue with the fact that Klouda worked as a broker-dealer for only three years, 20 years ago, *see* Doc. 174 at 9-10, Klouda has spent the intervening decades doing work that is highly relevant to his opinions in the instant action: conducting quantitative analyses of investment accounts. Doc. 187 at 6-7. Defendant is also correct that an expert may be qualified even where his experience does not precisely match the matter at hand. *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F.Supp.2d 1126, 1129 (M.D. Fla. 2007) (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001) (the subject matter of expert's testimony was sufficiently within his expertise; objection to lack of other experience "goes more to the foundation for [his] testimony than…to his qualifications")); *see* Doc. 187 at 9; *cf.* Doc. 174 at 20-21. Klouda's qualifications therefore surpass the minimal standard under *Daubert*.

With respect to reliability, the Court will first consider Klouda's opinions regarding any damages that Plaintiff and other prospective class members experienced.[4] Plaintiff's objections to Klouda's conclusions on these topics largely go to the weight that should be given to them rather than their admissibility. *See, e.g., Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) ("[I]n most cases, objections to the inadequacies of [expert evidence] are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." (internal quotation marks omitted)); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004) ("The factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."); *Hurst v. United States*, 882 F.2d 306, 311 (8th Cir. 1989) ("Any weaknesses in the factual underpinnings of [the expert's] opinion go to the weight and credibility of his testimony, not to its admissibility."). For example, Plaintiff criticizes Klouda for not offering his own damages model or addressing the issue of offsets to Plaintiff's disgorgement model. Doc. 174 at 11-12, 15-17. Plaintiff also objects to Klouda's application of a benefit-of-the-bargain lens to damages rather than adopting Plaintiff's disgorgement theory. *Id.* at 14. But these arguments primarily constitute disagreement with his conclusions

---

[4] The Court disagrees with Plaintiff's characterization of Klouda's opinions about damages as being based—impermissibly and "solely"—on his conclusion that the fees charged to Plaintiff were not excessive. *See* Doc. 174 at 18, 9 n.7. Further, because his opinions clearly relate to the issue of damages, the Court need not decide whether Klouda is permitted to opine about liability. *See id.*; Doc. 187 at 18 n.17.

rather than a grounded attack on the reliability of his methodology.  The Court is not permitted to compare the persuasiveness of the proffered evidence, only ensure that its foundation is sound. *See, e.g.*, *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

Here, Klouda applied his experience and knowledge of investment accounts to opine that a client's damages must be assessed based on the fee they agreed to pay in addition to the services they received, an analysis he characterized as highly individual.  Doc. 160-11 at 14-20, 23-27.  He further explained that the services provided by RJA's Freedom Accounts likely impacted the trades that were made, meaning that it is impossible to assume the same trading activity would have occurred in a commission-based account. *Id.*  The Court concludes that Klouda's opinions regarding damages are sufficiently reliable.  His opinions are also relevant and helpful to the question of class certification, addressing topics that are inaccessible to a layperson such as the nature and comparative value of services that are offered in various types of investment account. *Id.*; *see, e.g.*, *U.S. S.E.C. v. Big Apple Consulting USA, Inc.*, 6:09-cv-1963-Orl-28GJK, 2011 WL 3753581, *4 (M.D. Fla. Aug. 25, 2011) (the ability to understand and synthesize investment records is helpful to the trier of fact).  Klouda's opinions regarding damages are admissible.

On the other hand, Klouda's opinions about the reasonableness of the account fees must be struck because they are neither reliable nor helpful to the trier of fact. Klouda concludes that the account fees charged to Plaintiff were not excessive solely because she received a discount from the maximum fee rate RJA could have charged

her. Doc. 160-11 at 11-12, 22.  Klouda offers no basis for his conclusion that a discount is the only factor in determining whether account fees are excessive—contrary to Defendant's statements, he does not base his conclusion on his experience with other accounts or the services rendered. *Cf.* Doc. 187 at 18; *see Yellowpages Photos, Inc. v. YP, LLC*, 8:17-cv-764-T-36JSS, 2019 WL 6033084, *6-7 (M.D. Fla. Nov. 14, 2019) (Honeywell, J.) (excluding expert who did not provide any explanation of the underlying analysis or methodology for his opinions).  The Court cannot find that his opinions on this topic result from reliable methodology or are outside of the ken of the average layperson such that they add to the arguments Defendant's attorneys could make from the same evidence. *See Frazier*, 387 F.3d 1244, 1262-63.  The Court will therefore disregard Klouda's opinions regarding the reasonableness or excessiveness of the account fees when considering the motion for class certification.

## F. CONCLUSION

Accordingly, it is **ORDERED**:

1. Defendant's *Daubert* Motion to Exclude Opinions and Testimony of Douglas J. Schulz (Doc. 160) is **granted**;

2. Defendant's *Daubert* Motion to Exclude Opinions and Testimony of Arthur Olsen (Doc. 161) is **granted**, and

3. Plaintiff's *Daubert* Motion to Exclude Reports and Opinions of Peter J. Klouda (Doc. 174) is **granted-in-part and denied-in-part**.  Klouda's opinions regarding the reasonableness of the account fees will be stricken,

and thus, not considered by the Court.  The motion is in all other respects denied.

**DONE** and **ORDERED** in Tampa, Florida on August 1, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties