UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIMBERLY NGUYEN,

     Plaintiff,

v.                                                                 Case No: 8:20-cv-195-CEH-AAS

RAYMOND JAMES & ASSOCIATES,
INC.,

     Defendant.

_____

## ORDER

This cause comes before the Court on Defendant Raymond James &
Associates, Inc.'s Motion to Compel Arbitration and Stay Proceedings (Doc. 231),
Plaintiff Kimberly Nguyen's Response in Opposition (Doc. 236), and Defendant's
Reply (Doc. 239).  In the motion, Defendant argues that a binding agreement requires
the claims in this breach of fiduciary duty and negligence action to be resolved through
arbitration.  Also before the Court is Plaintiff's Motion for a Status Conference and to
Defer Briefing on Defendant's Motion to Compel Arbitration (Doc. 232).  Upon
review and consideration, the Court will grant the Motion to Compel Arbitration and
deny the Motion for Status Conference.

### I.    BACKGROUND

On January 24, 2020, Plaintiff Kimberly Nguyen filed a lawsuit against
Raymond James & Associates, Inc. ("RJA") on behalf of herself and all similarly-

situated individuals. Docs. 1, 117.  A client of RJA since 2015, she asserts claims of breach of fiduciary duty and negligence. *Id.*

Nguyen alleges that in 2016, her RJA financial advisor recommended that she transfer her assets into a fee-based investment account but failed to conduct an analysis of the account's suitability for her investment strategy. Doc. 117 at ¶¶ 30, 51.  She previously held her assets in a commission-based account that charged a small fee per trade, and paid very little in commissions because she did not execute many trades. *Id.* ¶¶ 2, 27, 29.  In a fee-based account, the fee is the same regardless of trading activity. *Id.* ¶ 4.  Nguyen was charged substantially more in fees once she switched to the fee-based account than she would have been if her assets had remained in a commission-based account. *Id.* ¶¶ 52-55.  As a result, she argues that the new account was unsuitable for her. *Id.* ¶ 13.  Moreover, she alleges that RJA's policies and practices were designed to strongly encourage its representatives to advise clients to switch to fee-based accounts regardless of suitability. *Id.* ¶¶ 59-85.  This practice resulted in a number of low-trading customers, like her, being transferred into fee-based accounts that were inherently unsuitable for them. *Id.* ¶¶ 33-34.

On August 12, 2022, this Court issued an Amended Order denying Plaintiff's Motion for Class Certification (Doc. 230).  The Court first concluded that the proposed class was not adequately defined or clearly ascertainable, as the definition included individuals who did not experience the harm alleged in the complaint. *Id.* at 15-21. Further, the Court found Plaintiff did not establish the Rule 23(a) requirements of commonality, typicality, or adequacy, because the question of account suitability is

highly individualized, and because Plaintiff had not refuted Defendant's evidence that her RJA representative *had* performed a suitability analysis before recommending that she switch to a fee-based account. *Id.* at 23-31.  Regarding the Rule 23(b) factors, the Court concluded that common questions of fact and law would not predominate with respect to the governing choice of law, evidence, or damages, and that a class action was not a superior method of adjudicating the claims because of the inherently individualized nature of a suitability analysis. *Id.* at 31-39.  Incorporated into the Court's predominance ruling was its finding that Florida law would not necessarily apply to all class members' claims, because the choice of law provisions in the relevant RJA agreements did not cover the tort claims at issue in the instant action. *Id.* at 33-35.  The Court also granted Defendant's *Daubert* motions to exclude the testimony, opinions, and reports of Plaintiff's experts with respect to class certification (Doc. 228), and granted-in-part and denied-in-part Plaintiff's *Daubert* motion to exclude the reports and opinions of Defendant's expert with respect to class certification. *Id.*

Defendant has now filed a Motion to Compel Arbitration (Doc. 231).  The motion points out that the Client Agreements Plaintiff signed for her RJA accounts in 2015 and 2016 contain a mandatory arbitration clause requiring the parties to submit to FINRA arbitration "any dispute or controversy, either arising in the future or in existence now, between [them]." *Id.* at 3-4, 7-8, citing Doc. 231-1 at 9-10.  Defendant therefore asserts that Plaintiff's individual claims against RJA fall squarely within the arbitration provision. *Id.* at 8-9.  Moreover, Defendant argues it has not waived its right to compel arbitration, because the arbitration clause expressly prohibited it from

exercising the right to compel arbitration until class certification was denied. *Id.* at 9-10.

Plaintiff raises three arguments in opposition to Defendant's motion to compel arbitration (Doc. 236).  First, Plaintiff asserts that there are no remaining claims to arbitrate because the Court's Order denying class certification already adjudicated the claims at issue. *Id.* at 5-7.  Because, as Plaintiff argues, the Court "determined that Florida law does not apply to Plaintiff's tort claims," and all of Plaintiff's claims are exclusively brought under Florida law, she asserts that her "Florida tort claims are extinguished" and "RJA is entitled to judgment as a matter of law." *Id.* at 6. Moreover, Plaintiff contends that the Court's finding in the Order denying class certification that it was unrefuted that Plaintiff's RJA advisor conducted the required assessment of suitability constitutes a conclusion that there is no genuine dispute of material fact regarding a critical issue necessary to all four of Plaintiff's individual claims. *Id.* at 6-7.  Plaintiff therefore argues that, instead of sending the claims to arbitration, the Court should "finalize its two merits holdings from its class certification decision into a judgment on the merits against Plaintiff on the individual claims." *Id.* at 7.  Plaintiff has also moved for a status conference "to discuss a procedural vehicle to finalize the Court's holdings as to Plaintiff's individual claims" on the same basis. Doc. 232.  Plaintiff proposes an expedited summary judgment process or a grant of summary judgment *sua sponte*. *Id.* at 4.[1]

---

[1] In addition, Plaintiff sought to defer briefing on Defendant's motion to compel arbitration until the resolution of this issue. Doc. 232 at 3.  Instead, the Court directed Plaintiff to respond

Second, Plaintiff argues that her tort claims do not fall under the scope of the arbitration provision or contract, because the Court found that the same contract's choice of law provision does not govern the tort claims. Doc. 236 at 8-9.  Lastly, Plaintiff contends that Defendant has waived its right to compel arbitration by actively litigating the action for nearly three years. *Id.* at 9-12.

In a brief reply, Defendant asks the Court to reject all three arguments. Doc. 239.  The Court's class certification order considered the merits only to the extent necessary to conduct a rigorous analysis under Rule 23, and did not enter judgment on Plaintiff's individual claims. *Id.* at 2.  Further, Defendant argues that the Court's choice of law ruling is irrelevant to the scope of the arbitration clause because they are two separate provisions, just as the Court held in the Order. *Id.* at 3-4.  Defendant also contends that the waiver caselaw on which Plaintiff relies is inapposite here, because Plaintiff's claims only became arbitrable after the denial of class certification. *Id.* at 4-5.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, codifies a "liberal federal policy favoring arbitration" and requires the courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625–26 (1985) (internal quotation marks omitted).  However, the federal policy "is about treating arbitration contracts like all others, not about fostering

---

to the Motion to Compel Arbitration and stayed Defendant's response to Plaintiff's motion. Doc. 235.

arbitration." *Morgan v. Sundance*, 142 S.Ct. 1708, 1713 (2022).   The "principal

purpose" of the FAA is to ensure "that private arbitration agreements are enforced

according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior

Univ.*, 489 U.S. 468, 478 (1989).

Three sections of the FAA "play particularly important roles" in the FAA's

purpose of overcoming judicial resistance to arbitration and declaring a national policy

enforcing contracts for arbitration just like other contracts. *Burch v. P.J. Cheese, Inc.*, 861

F.3d 1338, 1345 (11th Cir. 2017).  Section 2 of the FAA "makes arbitration agreements

'valid, irrevocable, and enforceable' as written (subject, of course, to [its] saving

clause)." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011), quoting 9 U.S.C.

§ 2.  Just like other contracts, arbitration contracts "may be invalidated by 'generally

applicable contract defenses, such as fraud, duress, or unconscionability.' " *Rent-A-

Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010), quoting *Doctor's Assocs., Inc. v. Casarotto*,

517 U.S. 681, 687 (1996).

Section 3 of the FAA "requires courts to stay litigation of arbitral claims

pending arbitration of those claims 'in accordance with the terms of the agreement.'"

*Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1370 (11th Cir. 2005), quoting 9

U.S.C. § 3.  Section 4 of the FAA provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal
> of another to arbitrate under a written agreement for
> arbitration may petition any United States district court
> which, save for such agreement, would have jurisdiction . .
> . in a civil action . . . of the subject matter of a suit arising
> out of the controversy between the parties, for an order

> directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  Upon receiving a motion to compel arbitration, the statute directs the court to "hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue … make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

## III.   DISCUSSION

Applying the above principles to the instant action, the Court concludes that Plaintiff's individual claims against RJA are subject to mandatory arbitration based on the plain terms of the parties' contract.  Contrary to Plaintiff's arguments, the Court's Order denying class certification did not constitute merits holdings as to Plaintiff's individual claims.  Moreover, the tort claims fall within the scope of the Client Agreement's arbitration clause, which is phrased far more broadly than the choice of law provision.  Finally, Defendant has not waived its right to compel arbitration because it was prohibited from doing so until class certification was denied.  The motion is therefore due to be granted.

### A. The Class Certification Order Did Not Resolve Plaintiff's Individual Claims.

Plaintiff argues that two findings in the Court's Order denying class certification constitute merits judgments of Plaintiff's individual claims, and that as a result there are no remaining claims to arbitrate. Doc. 236 at 5-7.  The first such finding is the Court's conclusion that the Florida choice of law provision in the Client Agreement

7

and other contracts does not govern the instant tort claims. *See* Doc. 230 at 33-35.

Because Plaintiff's individual claims are exclusively brought under Florida law, she

asserts that this finding extinguishes her claims and entitles RJA to judgment as a

matter of law. Doc. 236 at 7.  However, this argument is meritless, because Florida

law governs the substance of Plaintiff's tort claims in the instant action regardless of

the choice of law provision's applicability.

Federal courts sitting in diversity apply the substantive law of the forum state.

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Mesa v. Clarendon Nat. Ins. Co.*, 799 F.3d

1353, 1358 (11th Cir. 2015).  This Court has subject matter jurisdiction over the instant

action based upon diversity of citizenship, because the action was brought pursuant to

the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S. C. § 1332(d) (giving

federal district courts diversity jurisdiction over qualifying class actions); *Lowery v. Ala.*

*Power Co.*, 483 F.3d 1184, 1193 (11th Cir. 2007) (CAFA broadened federal diversity

jurisdiction over class actions with interstate implications); *see also Cherry v. Dometic*

*Corporation*, 986 F.3d 1296, 1305 (11th Cir. 2021) (a district court retains CAFA

jurisdiction even after it denies class certification); *Wright Transportation, Inc. v. Pilot*

*Corp.*, 841 F.3d 1266, 1271-72 (11th Cir. 2016) (same).  Florida is the forum state of

the instant action.  Therefore, Florida substantive law applies to Plaintiff's common

law claims, irrespective of the Court's finding that the choice of law provision in the

Client Agreement does not govern them.   Plaintiff's Florida claims are not

"extinguished" by that finding.

Plaintiff next contends that the Court's conclusion about her financial advisor's suitability analysis equates to a summary judgment finding for RJA on the question of whether it conducted the required suitability analysis, and thereby precludes her individual claims. Doc. 236 at 6-7.  In the Order, the Court found that Defendant had provided unrefuted evidence that Plaintiff's financial advisor had conducted an individual suitability analysis, which the Court described as "the required suitability analysis," before recommending that she transfer to the fee-based account. Doc. 230 at 27.  As a result, the Court concluded that Plaintiff's claims, interests, and injury were not typical of all class members. *Id.*

Plaintiff's characterization that the Court "held that there is no genuine dispute of material fact" on the question of whether RJA conducted a suitability analysis, Doc. 236 at 6, is incorrect.  Before the Court was a motion for class certification and the evidence submitted in relation to it, not a motion for summary judgment.  The Court therefore was not answering the question of whether any genuine disputes of material fact existed.  Nor could it do so on the incomplete record before it: the motion was submitted in July 2021, while the Fourth Amended Case Management and Scheduling Order provides that discovery will be ongoing until April 2023.  The Court's conclusion therefore addressed only the evidence before it as it pertained to class certification—and was intended to reach no further than the class certification issue.  *See Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013) (at the class certification stage, "[m]erits questions may be considered…only to the extent [] that they are relevant to determining whether the Rule 23 prerequisites for class

certification are satisfied."); *see also Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) (factual findings made when resolving a class certification motion are not binding on the ultimate factfinder of the action).

Moreover, the Court observes that two of Plaintiff's claims, Counts II and IV, allege the failure to conduct an ongoing review of the suitability of the fee-based account *after* transfer, *see* Doc. 117 ¶¶ 117-119, 131-134, a topic that did not arise at all in the Order on class certification. Even if Plaintiff were correct about the breadth and repercussions of the Order, they would not extend to Counts II and IV.

The Court concludes that its Order denying class certification did not resolve Plaintiff's individual claims, and that the Order's findings did not constitute merits holdings as to the individual claims. For the same reasons, to the extent Plaintiff asks the Court to grant summary judgment for Defendant *sua sponte* under Rule 56(f), Doc. 236 at 7, the Court declines to do so.

Accordingly, Plaintiff's Motion for a Status Conference "to discuss a procedural vehicle to finalize the Court's holdings as to Plaintiff's individual claims" (Doc. 232) is also due to be denied.

## B. The Tort Claims Fall Within the Scope of the Arbitration Clause.

Next, Plaintiff argues that her tort claims do not fall within the scope of the arbitration provision because the Court found that they did not fall within the scope of the choice of law provision of the same contract. Doc. 236 at 8-9. Despite the broad language of the arbitration clause, Plaintiff argues it must be read in the context of the

remainder of the Client Agreement—which she asserts the Court has already held does

not encompass tort claims. *Id.*, citing Doc. 230 at 34-35.

The provisions of the arbitration clause in the 2015 and 2016 Client Agreements

related to its scope read as follows:

> (1) All parties to this Agreement are giving up the right to sue each
> other in court, including the right to a trial by jury, except as
> provided by the rules of the arbitration forum in which a claim is
> filed.
> …
> **Arbitration and Dispute Resolution**
> (a) Any dispute or controversy, either arising in the future or in
> existence now, between me and you (including your officers,
> directors, employees or agents and the introducing broker, if
> applicable) will be resolved by arbitration[.]

Doc. 231-1 at 10-11.

In the Court's Order denying class certification, it held that the choice of law

provision in the same contract did not govern the instant action because tort claims

were not within its scope.  The choice of law provision reads:

> **Choice of Law**
> This agreement and any accounts opened hereunder shall be
> construed, interpreted, and the rights of the parties shall be
> determined in accordance with the internal laws of the State of
> Florida[.]

*Id.* at 10.  The Court concluded that the provision was too narrow to encompass tort

claims because it related only to claims involving the agreement. Doc. 230 at 34, citing

*Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009).  Plaintiff now

argues that the scope of the arbitration provision is similarly restricted because both

provisions are part of the same contract, which states that it "govern[s]" the

"relationship" between RJA and Nguyen. Doc. 231-1 at 7.  In Plaintiff's view, if the contract does not encompass tort claims then its arbitration clause cannot either.

However, as the Court noted in its Order, the arbitration requirement "is a separate issue from what law will govern" the parties' disputes. Doc 230 at 35 n.13. Moreover, the phrasing of the two provisions is very different: the choice of law provision states that it governs only disputes relating to the agreement itself, while the arbitration clause makes clear that it is all-encompassing of any dispute between the parties. *Cf. Gamble v. New England Auto Finance, Inc.*, 735 F. App'x 664, 666 (11th Cir. 2018) (arbitration clause covering "any claim…that in any way arises from or relates to this Agreement" did not encompass claim alleging a violation of the Telephone Consumer Protection Act that was not directly related to the contract).  After all, "it is the language of the contract that defines the scope of disputes subject to arbitration." Doc. 236 at 8, citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  Here, the plain language of the arbitration clause encompasses *all* disputes between the parties, without limitation, and therefore includes the instant tort claims.

**C. Defendant Did Not Waive Its Right to Compel Arbitration.**

Plaintiff's argument that Defendant waived its right to compel arbitration by waiting until the denial of class certification is also belied by the plain language of the arbitration clause.  The clause contains the following provision:

> No person shall bring a putative or certified class action to arbitration, nor seek to enforce any predispute arbitration agreement against any person who has initiated in court a putative class action or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by

> the putative class action <u>until</u> (i) <u>the class certification is denied</u> or (ii) the class is decertified or (iii) the client is excluded from the class by the court. <u>Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement</u> except to the extent stated herein.

Doc. 231-1 at 11 (emphasis added); *see* FINRA Rule 2268(f) (requiring the inclusion of this language in FINRA members' arbitration clauses).

Plaintiff's argument that Defendant waived its right to arbitrate by failing to invoke it until now entirely ignores this provision.[2]  Indeed, absent this provision, the Court would likely agree that three years of active litigation constitutes the intentional relinquishment of the right to arbitrate the claims. *See* Doc. 236 at 9-11.  But, as Plaintiff points out, arbitration is a creature of contract. *See id.* at 8, citing *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2001); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 ("courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms") (citations omitted).  And here, the parties' contract not only did not permit Defendant to invoke its right to arbitrate until the denial of class certification, but expressly stated that

---

[2] Because of this provision, *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708 (2022), does not impact the question of whether Defendant waived its right to compel arbitration. *Cf.* Doc. 236 at 9-11.  In *Morgan*, the Supreme Court rejected an arbitration-specific rule employed in most circuits, including the Eleventh Circuit, that a plaintiff must show prejudice before a defendant would be found to have waived its right to arbitrate. 142 S.Ct. 1708.  Instead, the Court held that the rule employed outside the arbitration context—whether the party has intentionally relinquished or abandoned a known right—must apply to arbitration as well. *Id.* at 1713.  Here, however, Defendant does not ask the Court to apply an arbitration-specific procedural rule, but rather to enforce the plain terms of the parties' contract.  As the *Morgan* Court emphasized, "[t]he federal policy is about treating arbitration contracts like all others[.]" *Id.*  The Court will therefore do so.

waiting to enforce its right to arbitrate until that time would not constitute a waiver. Defendant has not waived its right to compel arbitration by abiding by the terms of the contract.

## IV.    CONCLUSION

As Defendant notes, Plaintiff does not dispute that the arbitration clause in the Client Agreement is valid, enforceable, and binding. Doc. 239 at 5.  The Court further concludes that Plaintiff's individual tort claims fall within its scope and have not been resolved by the Order denying class certification.  Further, Defendant has not waived its right to compel arbitration.   Therefore, the parties are compelled to arbitrate Plaintiff's individual claims against Defendant.

Accordingly, it is **ORDERED**:

1.  Plaintiff's Motion for a Status Conference and to Defer Briefing on Defendant's Motion to Compel Arbitration (Doc. 232) is **DENIED**.

2.  Defendant Raymond James & Associates, Inc.'s Motion to Compel Arbitration and Stay Proceedings (Doc. 231) is **GRANTED**.

3.  The Parties are compelled to arbitrate Plaintiff Kimberly Nguyen's claims against Raymond James & Associates, Inc.

4.  This case is **STAYED** pending the arbitration of Plaintiff Kimberly Nguyen's claims against Raymond James & Associates, Inc.

5.  The parties shall file a notice informing the Court that the arbitration has been concluded, or that their dispute has otherwise been resolved, within ten days of either of such events.

6.  The Clerk is directed to terminate all pending motions and deadlines and administratively close this file.

**DONE** and **ORDERED** in Tampa, Florida on December 19, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

15